## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Emilee Carpenter, LLC d/b/a Emilee Carpenter Photography** and **Emilee Carpenter**, | |
| Plaintiffs, | Case No. 6:21-cv-06303 |
| v. | **Memorandum of Law in Support of Plaintiffs' Preliminary Injunction Motion** |
| **Letitia James**, in her official capacity as Attorney General of New York; **Jonathan J. Smith**, in his official capacity as Interim Commissioner of the New York State Division of Human Rights; and **Weeden Wetmore**, in his official capacity as District Attorney of Chemung County | Oral Argument Requested |
| Defendants. | |

# Table of Contents

Table of Authorities ...................................................................................ii

Introduction and Summary of Facts ..........................................................1

Argument ...................................................................................................4

I.   The Accommodations and Discrimination Clauses violate the First
     Amendment because they compel Emilee to speak and they infringe her
     editorial judgment..............................................................................5

     A.   Emilee's photographs and blogs are protected speech...........................6

     B.   The Accommodations and Discrimination Clauses compel Emilee to
          speak. ......................................................................................8

     C.   The Accommodations and Discrimination Clauses compel Emilee to
          speak messages she objects to. ..............................................11

     D.   Forcing Emilee to speak creates a dangerous and limitless principle. 14

II.  The Accommodations and Discrimination Clauses violate the First
     Amendment because they compel Emilee to speak based on content and
     viewpoint. .......................................................................................15

III. The Clauses violate the First Amendment because they restrict speech based
     on content and viewpoint...................................................................17

IV.  The Accommodations and Discrimination Clauses violate the First
     Amendment because they compel Emilee to participate in and celebrate
     religious ceremonies she objects to....................................................19

V.   The Clauses violate the First Amendment because they are neither neutral
     nor generally applicable and restrict a hybrid of historically protected
     rights................................................................................................21

VI.  The Clauses fail strict scrutiny as applied to Emilee's expression and
     participation. ...................................................................................22

VII. The remaining preliminary-injunction factors favor an injunction................25

**Conclusion**................................................................................................25

# Table of Authorities

## Cases

*Anderson v. City of Hermosa Beach*,
621 F.3d 1051 (9th Cir. 2010). ............................................................ 7

*Anderson v. Laird*,
466 F.2d 283 (D.C. Cir. 1972) ........................................................ 20

*Andrews v. Blick Art Materials, LLC*,
268 F. Supp. 3d 381 (E.D.N.Y. 2017) ............................................... 9

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
564 U.S. 721 (2011) ..................................................................... 17

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) .................................................................... 23

*Athenaeum v. National Lawyers Guild, Inc.*,
No. 653668/16, 2018 WL 1172597 (N.Y. Sup. Ct. Mar. 06, 2018) .................. 15

*Barr v. American Association of Political Consultants, Inc*,
140 S. Ct. 2335 (2020) ................................................................. 18

*Battaglia v. Buffalo Niagara Introduction, Inc.*,
No. 10138581 (N.Y. State Div. of Human Rights Jan. 28, 2012) .................... 23

*Bery v. City of New York*,
97 F.3d 689 (2d Cir. 1996) ......................................................... 6, 7

*Billups v. City of Charleston*,
961 F.3d 673 (4th Cir. 2020) ......................................................... 24

*Boy Scouts of America v. Dale*,
530 U.S. 640 (2000) .................................................................... 14

*Brown v. Entertainment Merchants Association*,
564 U.S. 786 (2011) ............................................................. 6, 7, 22

*Brush & Nib Studio, LC v. City of Phoenix*,
448 P.3d 890 (Ariz. 2019)................................................... 10, 11, 13, 18

*Burns v. Martuscello*,
890 F.3d 77 (2d Cir. 2018) ......................................................... 8, 11

*Chelsey Nelson Photography LLC v. Louisville/Jefferson County Metro Gov't,*
   479 F. Supp. 3d 543 (W.D. Ky. 2020) .................................................. 10, 13, 18

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993) ........................................................................... 21

*Claybrooks v. American Broadcasting Companies,* Inc.,
   898 F. Supp. 2d 986 (M.D. Tenn. 2012).......................................... 10

*Cressman v. Thompson,*
   798 F.3d 938 (10th Cir. 2015) ........................................................... 6

*Cut 'N Dried Salon v. Department of Human Rights,*
   713 N.E.2d 592 (Ill. App. Ct. 1999) ................................................. 24

*DeStefano v. Emergency Housing Group, Inc.,*
   247 F.3d 397 (2d Cir. 2001) ............................................................. 19

*Doe v. Phillips,*
   81 F.3d 1204 (2d Cir. 1996) ............................................................. 19

*Elrod v. Burns,*
   427 U.S. 347 (1976) ............................................................................ 5

*Employment Division, Department of Human Resources of Oregon v. Smith,*
   494 U.S. 872 (1990) ..................................................................... 21, 22

*Evergreen Association, Inc. v. City of New York,*
   740 F.3d 233 (2d Cir. 2014) ..................................................... 6, 8, 16

*Fair Housing in Huntington Community, Inc. v. Town of Huntington,*
   316 F.3d 357 (2d Cir. 2003) ............................................................... 4

*Fields v. City of Philadelphia,*
   862 F.3d 353 (3d Cir. 2017) ............................................................... 7

*Freedom Watch, Inc. v. Google Inc.,*
   816 F. App'x 497 (D.C. Cir. 2020)................................................... 25

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
   546 U.S. 418 (2006)........................................................................... 22

*Gordon v. PL Long Beach, LLC,*
   74 A.D.3d 880 (N.Y. App. Div. 2010).............................................. 3

*Hsu By and Through Hsu v. Roslyn Union Free School District No. 3,*
   85 F.3d 839 (2d Cir. 1996) .............................................................. 14

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) .................................................................................*passim*

*Illiano v. Mineola Union Free School District*,
    585 F. Supp. 2d 341 (E.D.N.Y. 2008) ................................................ 3

*Janus v. American Federation of State, County, & Municipal Employees
    Council 31*,
    138 S. Ct. 2448 (2018) ..................................................................... 11

*Kaahumanu v. Hawaii*,
    682 F.3d 789 (9th Cir. 2012) .......................................................... 20

*Kaplan v. California*,
    413 U.S. 115 (1973) .......................................................................... 6

*Lee v. Weisman*,
    505 U.S. 577 (1992) .................................................................. 19, 20

*Leebaert v. Harrington*,
    332 F.3d 134 (2d Cir. 2003) ........................................................... 22

*Marrero-Mendez v. Calixto-Rodriguez*,
    830 F.3d 38 (1st Cir. 2016) ............................................................ 20

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
    138 S. Ct. 1719 (2018) ............................................................. 14, 19

*Mastrovincenzo v. City of New York*,
    435 F.3d 78 (2d Cir. 2006) ............................................................ 6, 8

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ........................................................................ 17

*Miami Herald Publishing Co. v. Tornillo*,
    418 U.S. 241 (1974) ......................................................... 5, 10, 11, 16

*Mitchell v. Cuomo*,
    748 F.2d 804 (2d Cir. 1984) ............................................................. 5

*New Hope Family Services, Inc. v. Poole*,
    966 F.3d 145 (2d Cir. 2020) ........................................................... 14

*New York Progress and Protection PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013) ........................................................ 5, 25

*Obergefell v. Hodges,*
    135 S. Ct. 2584 (2015) ............................................................................. 13, 20

*Pacific Gas & Electric Company v. Public Utilities Commission of California*
    475 U.S. 1 (1986)............................................................................................ 6, 16

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015)............................................................................. 15, 17, 22

*Reno v. American Civil Liberties Union,*
    521 U.S. 844 (1997)..................................................................................... 7

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
    487 U.S. 781 (1988)................................................................................. 7, 16

*Rosenberger v. Rector & Visitors of University of Virginia,*
    515 U.S. 819 (1995)............................................................................... 16, 19

*Telescope Media Group v. Lucero,*
    936 F.3d 740 (8th Cir. 2019)...................................................................*passim*

*Tucker v. California Department of Education,*
    97 F.3d 1204 (9th Cir. 1996) ....................................................................... 19

*Tunick v. Safir,*
    209 F.3d 67 (2d Cir. 2000) ............................................................................ 25

*Turner Broadcasting System, Inc. v. F.C.C.,*
    512 U.S. 622 (1994)......................................................................................... 17

*Turner v. Safley,*
    482 U.S. 78 (1987) .......................................................................................... 20

*Vejo v. Portland Public Schools,*
    204 F. Supp. 3d 1149 (D. Or. 2016) ............................................................. 24

*Warner v. Orange County Department of Probation,*
    115 F.3d 1068 (2d Cir. 1996) ....................................................................... 19

*Washington v. McManus,*
    944 F.3d 506 (4th Cir. 2019)......................................................................... 24

*West Virginia State Board of Education v. Barnette,*
    319 U.S. 624 (1943)....................................................................................... 15

*Western Watersheds Project v. Michael,*
    869 F.3d 1189 (10th Cir. 2017).................................................................... 7

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ............................................................................... 5

*World Peace Movement of America v. Newspaper Agency Corp.,*
    879 P.2d 253 (Utah 1994) .................................................................... 14

*Yang v. Kosinski,*
    960 F.3d 119 (2d Cir. 2020) .................................................................. 4

*Zhang v. Baidu.com, Inc.,*
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ........................................ 5, 10, 15

**Statutes, Codes, and Regulations**

29 C.F.R. § 1604.2 ................................................................................... 23

29 C.F.R. § 1604.7 ................................................................................... 18

42 U.S.C. § 2000a(b) ............................................................................... 25

42 U.S.C. § 2000e–2(e)(1) ...................................................................... 23

Colorado Revised Statutes § 24-34-601(3) ............................................ 23

Florida Statute § 760.02(11) .................................................................. 25

Mississippi Code § 11-62-5(5)(a) ........................................................... 24

New York Civil Rights Law § 40-c(2) ........................................... 3, 8, 18

New York Civil Rights Law § 40-d .......................................................... 4

New York County Law § 700 .................................................................... 4

New York Domestic Relations Law § 10-b ....................................... 20, 24

New York Executive Law § 63(10) ............................................................ 4

New York Executive Law § 63(12) ............................................................ 4

New York Executive Law § 292.9 ........................................................... 24

New York Executive Law § 296.1(d) ....................................................... 23

New York Executive Law § 296.2(a) ................................................................... 3, 8, 18

New York Executive Law § 296.2(b) ..................................................................... 23, 24

New York Executive Law § 296.2(c) ......................................................................... 23

New York Executive Law § 297.4(c) ........................................................................... 4

New York Executive Law § 297.4(e) ........................................................................... 4

New York Executive Law § 299 .................................................................................. 4

South Carolina Code Annotated § 45-9-10(B) .......................................................... 25

**Other Authorities**

Susan Selasky, Lesbian baker in Detroit got homophobic cake order: Why she
        made it anyway, Detroit Free Press (Aug. 13, 2020),
        http://bit.ly/freeparticle ...................................................................... 15

Brief of Massachusetts. et al. in Support of Respondents, *Masterpiece
        Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
        138 S. Ct. 1719 (No. 16-111) (U.S. Oct. 30, 2017) ............................................ 21

Brief for Massachusetts, et al. as Amici Curiae Supporting Defendants, *303
        Creative LLC v. Elenis*, No. 19-1413 (10th Cir. April 29, 2020) .................... 23

Certify with the City, https://on.nyc.gov/2OgG8f7 .................................................. 24

## Introduction and Summary of Facts

Plaintiff Emilee Carpenter is a professional photographer with a passion for telling stories through beautiful photographs. She is also a Christian who prides herself on being willing to serve clients of all backgrounds, including those in the LGBT community. Consistent with these same religious beliefs, Emilee cannot use her talents to create photographs or blog posts that convey messages she disagrees with, such as those promoting sexist or vulgar content. But through its public-accommodations laws, New York requires Emilee to provide more than equal treatment regardless of status. New York demands special treatment for certain messages—requiring Emilee to photograph and write blogs celebrating and to participate in same-sex weddings. This result has drastic consequences not only for Emilee, who risks losing her business, large fines, and jail time, but for all speakers who want the freedom to control what they say. So Emilee asks for a preliminary injunction to stop this ongoing threat and chill on her First Amendment rights so that she can speak only those messages and participate in only those ceremonies consistent with her faith.

Emilee got her first camera as a senior in high school and began photographing weddings in college. Decl. of Emilee Carpenter in Supp. of Pls.' Prelim. Inj. Mot. (Decl.) ¶¶ 13-30. Later, her passion turned into a profession. She formed Emilee Carpenter, LLC where she offers various types of photography services, such as branding photography for businesses. *Id.* at ¶¶ 34-41, 63. She specializes, however, in wedding and engagement photography and also blogging on her business's website about the weddings she photographs. *Id.* ¶¶ 64-192.

Emilee's faith motivates her photography. She believes that God gives every person gifts and talents to use for His glory. Verified Complaint (VC) ¶ 22. For Emilee, this is photography. *Id.* at ¶ 24. Through her wedding and engagement photography and blogging, Emilee uses her artistic talents to convey uplifting

messages about God's design for marriage between a man and a woman. *See* VC ¶¶ 55-60, 97-108; Decl. ¶ 77; Appendix (App.) at 105-53. Not only does her work celebrate the couple's union, it also publicly testifies about marriage as an inherent good that should be pursued and preserved. VC ¶¶ 90-93, 106-08; Decl. ¶¶ 132-34.

Since Emilee cannot separate her beliefs from her vocation, Emilee will not create, promote, or participate in anything that dishonors God. VC ¶ 113. For example, Emilee will not create works that denigrate others, condone racism, or contradict biblical principles. *Id.* at ¶ 114. Likewise, Emilee will not promote all messages about marriage or participate in all wedding ceremonies, such as vampire-themed weddings. *See* Decl. ¶¶ 198, 264-67, 273. Nor will she create photographs or blogs celebrating same-sex weddings. VC ¶¶ 117-21. This does not mean that Emilee will not serve those in the LGBT community. In fact, Emilee's Christian beliefs compel her to love and serve all people. *Id.* at ¶¶ 43-45, 140. And she is happy to provide photography services to LGBT persons; she simply will not create photographs or write blogs promoting same-sex weddings, no matter who asks her to do so. *Id.* at ¶¶ 128-40.

And people have asked. In the last year, Emilee has received at least seven requests to photograph same-sex weddings. *Id.* at ¶ 266. So to ensure her company speaks consistent with her beliefs, Emilee wants to take certain steps. First, Emilee wants to offer and create engagement and wedding photographs and blogs celebrating only opposite-sex weddings. *Id.* at ¶¶ 118-23. Second, Emilee wants to promote only opposite-sex weddings on her business's website and social media. *Id.* at ¶¶ 91-97, 112, 104-08. Third, Emilee wants to be transparent about her editorial judgment by publishing a statement on her website explaining her inability to celebrate same-sex weddings and making similar statements to prospective clients. *Id.* at ¶¶ 246-51; VC Ex. 2. Fourth, Emilee wants to bind her company and future owners and employees to follow a policy of celebrating weddings only between one

man and one woman by adopting this policy into her LLC's operating agreement. VC ¶¶ 229-31; VC Ex. 1. Fifth, Emilee wants to ask prospective clients if they want her to create content that would violate her religious beliefs. VC ¶ 236.

But New York forbids all of this. *Id.* at ¶¶ 160-73. As applied to Emilee, New York's Human Rights Law (NYHRL) and Civil Rights Law (NYCRL) dictate not just what Emilee *does* but what she *says*. First, the NYHRL's Accommodations Clause makes it unlawful for public accommodations to deny someone "accommodations, advantages, [and] privileges" because of sexual orientation. N.Y. Exec. Law § 296.2(a). The NYCRL's Discrimination Clause operates the same way by prohibiting any person or business from "discriminat[ing]" against anyone "because of … sexual orientation."[1] N.Y. Civ. Rts. Law § 40-c(2). These two clauses force Emilee to tell positive stories about and participate in same-sex wedding ceremonies because she does so for opposite-sex weddings. *See, e.g.*, VC ¶¶ 162, 172. These clauses also prohibit Emilee from amending her operating agreement to bind her company to operate according to her religious beliefs. *Id.* at ¶¶ 160, 257.

Second, the NYHRL's Publication Clause makes it unlawful to "publish" or "display" "any written or printed communication" to the effect that any of the "advantages" or "privileges" of a public accommodation (i) "shall be refused, withheld from or denied" to anyone because of sexual orientation (Denial Clause) or (ii) "that the "patronage" of any person, because of sexual orientation is "unwelcome, objectionable or not acceptable, desired or solicited" (Unwelcome Clause). N.Y. Exec. Law § 296.2(a). Together, the three clauses prevent Emilee from posting a policy statement on her website explaining her religious beliefs

---

[1] "[F]acts sufficient to sustain a cause of action under Executive Law § 296 will support a cause of action under Civil Rights Law § 40–c." *Gordon v. PL Long Beach, LLC*, 74 A.D.3d 880, 885 (N.Y. App. Div. 2010). *See also Illiano v. Mineola Union Free Sch. Dist.,* 585 F. Supp. 2d 341, 352-53 (E.D.N.Y. 2008) (same).

about marriage and why she only creates content for opposite-sex weddings and asking what type of ceremony clients want photographed. VC ¶¶ 251-53, 258.

Almost anyone who claims to be "aggrieved" or suspects a violation can enforce these laws against Emilee at any time—from the Attorney General, to the Division, to Division "testers," to private individuals who request Emilee's services or come across her website. VC ¶¶ 176-93. All of this puts Emilee in the crosshairs.

The consequences are devastating too. Public accommodations that violate New York's laws may be ordered to "cease and desist," provide the "privilege" at issue, pay compensatory damages, file compliance reports, or pay civil fines up to one hundred thousand dollars. N.Y. Exec. Law § 297.4(c), (e). The Attorney General and the District Attorney may also criminally prosecute anyone who violates a Division order or the Discrimination Clause and seek jailtime for up to a year. N.Y. Exec. Law § 63(10); N.Y. County Law § 700; N.Y. Exec. Law § 299; N.Y. Civ. Rts. Law § 40-d. And the Attorney General can cancel an LLC's certificate in a civil action. N.Y. Exec. Law § 63(12).

These penalties threaten Emilee's rights and chill her speech. Emilee requests a preliminary injunction to protect her from these threats and to free her to contribute her views to the marketplace of ideas.

## Argument

Emilee seeks a preliminary injunction to stop the ongoing violation of her First Amendment rights. For this relief, Emilee must show (1) irreparable harm, (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions on the merits, (3) public interest weighing in the injunction's favor, and (4) equities tipping in her favor. *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020). *See also Fair Hous. in Huntington Comm., Inc. v. Town of Huntington,* 316 F.3d 357, 365 (2d Cir. 2003). Because even temporary "loss of First Amendment freedoms …

unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), most "courts hold that no further showing of irreparable injury is necessary," *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984). So courts focus on likelihood of success—"the dominant, if not the dispositive, factor"—when evaluating a preliminary injunction motion "in the First Amendment context …." *N.Y. Progress and Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013).

Under either the likelihood-of-success or serious-question standard, Emilee deserves her requested injunction for seven reasons: (I) New York's laws compel her to speak a message she disagrees with, (II) the laws compel speech based on content and viewpoint, (III) the laws restrict speech based on content and viewpoint, (IV) the laws force her to celebrate and participate in religious ceremonies she objects to, (V) the laws regulate a hybrid of rights, (VI) New York's actions trigger and fail strict scrutiny, and (VII) these First Amendment violations satisfy the remaining preliminary-injunction factors.

## I.   The Accommodations and Discrimination Clauses violate the First Amendment because they compel Emilee to speak and they infringe her editorial judgment.

The First Amendment protects "the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). This right means speakers have "editorial control and judgment" over the content of their speech. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Because speakers deserve this "editorial judgment[]," the government "may not tell a private speaker what to include or not to include in speech about matters of public concern." *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014) (cleaned up). These rules exist to protect people's individual autonomy and "individual freedom of mind." *Wooley*, 430 U.S. at 714 (cleaned-up).

A compelled-speech claim has three elements: (1) speech, (2) the government compels, (3) and the speaker objects to. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 572-73 (1995) (applying elements); *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015) (identifying elements). New York's law compels Emilee to speak messages she disagrees with by requiring her to create and post photographs and blogs promoting same-sex weddings. This triggers strict scrutiny. *See Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.* (*PG&E*), 475 U.S. 1, 19 (1986) (plurality) (applying strict scrutiny to law compelling speech); *Evergreen Ass'n, Inc. v. City of New York* (*Evergreen*), 740 F.3d 233, 245 (2d Cir. 2014) (noting "general rule" that such laws trigger strict scrutiny).

### A.      Emilee's photographs and blogs are protected speech.

The First Amendment protects mediums like "books, plays, and movies [that] communicate ideas." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011). To determine if a medium receives protection, this Court "examine[s] objective features of the merchandise itself," i.e. the final expressive work. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 91 & n. 9 (2d Cir. 2006). This standard covers Emilee's photographs and blogs.

*Photographs*: The Supreme Court has repeatedly "applied … First Amendment standards … to photographs." *Kaplan v. California*, 413 U.S. 115, 119-20 (1973). The Second Circuit agrees. "[P]hotographs … always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection." *Bery v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996). They "automatically trigger First Amendment review…." *Mastrovincenzo*, 435 F.3d at 93. Emilee's photographs are no exception; they seek to celebrate the couple and tell a story about the beauty and romance of marriage as a sacrificial relationship between one man and one woman. Decl. ¶¶ 147-82; App. at 123-153.

*Blog Posts:* After Emilee creates and edits her wedding photographs, she posts some of them on her website and includes encouraging text about the wedding to celebrate the couple and communicate her views honoring marriage between a man and woman. VC ¶¶ 88-94; Decl. ¶¶ 116-18, 132-34; App. at 105-122. This written post deserves protection too. *See Bery*, 97 F.3d at 695 (visual art like "writing … is similarly entitled to full First Amendment protection."). The First Amendment protects ideas communicated online through "traditional print" or "audio, video, and still images" as any other expressive medium. *Reno v. Am. C.L. Union*, 521 U.S. 844, 870 (1997).

*Creating Photographs and Blogs*: Because Emilee's photographs and blogs deserve protection, the process of creating these works deserves protection too. VC ¶¶ 46-108 (describing process). "Whether government regulation applies to creating, distributing, or consuming speech makes no difference." *Brown*, 564 U.S. at 792 n.1. The reason is simple. "Although writing and painting can be reduced to their constituent acts, and thus described as conduct, we have not attempted to disconnect the end product from the act of creation." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010). We don't "disaggregate Picasso from his brushes," or divide "Beethoven" from his "strings and woodwinds." *Id*. (protecting tattooing under First Amendment). The same logic applies to creating photographs. *Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017) (protecting photography creation); *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) (protecting photography and note-taking creation).

What's more, it doesn't matter that clients pay Emilee for her services. "It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 (1988). And "[t]he sale of protected materials is also protected." *Bery*, 97 F.3d at 695. *See also*

*Mastrovincenzo*, 435 F.3d at 92 (same). Emilee's photographs and blogs convey messages whether she is paid or not. *See, e.g.*, VC ¶ 104-06. That means these works and the process of creating them receive First Amendment protection.

> **B.   The Accommodations and Discrimination Clauses compel Emilee to speak.**

Because Emilee's photographs and blogs are speech, New York cannot compel them. Compelled speech occurs when the government infringes a speaker's "autonomy to choose the content of his own message." *Hurley*, 515 U.S. at 572. Forcing someone to speak "is a severe intrusion on the liberty and intellectual privacy of the individual." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018).

For example, the government cannot force pregnancy centers to address abortion at the point of contact with potential clients because that "alters the centers' political speech" on "the morality … of contraception" by "mandating the manner in which the discussion of these issues begins." *Evergreen*, 740 F.3d at 249.

The Accommodations and Discrimination Clauses likewise intrude on Emilee's "liberty and intellectual privacy." *Burns*, 890 F.3d at 84. The Accommodations Clause makes it an "unlawful discriminatory practice" for public accommodations "because of the … sexual orientation … of any person" to "refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296.2(a). Similarly, the Discrimination Clause states that "no person shall, because of … sexual orientation … be subjected to any discrimination in his or her civil rights … by any other person or by a firm, corporation or institution." N.Y. Civ. Rts. Law § 40-c(2).[2]

But New York interprets these provisions to require more than equal access regardless of status. New York uses these provisions to require special access for

---

[2] New York interprets these provisions in the same way. *See* footnote 1, *supra*.

certain content—that Emilee must create the same celebratory content (photographs and blog posts) for same-sex weddings because she does so for opposite-sex weddings. *See, e.g.*, VC ¶¶ 160, 262, 286-98. These equal-access requirements also cover Emilee's website and social media sites, which New York also considers public accommodations. *See Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 399 (E.D.N.Y. 2017) (website a "public accommodation" under N.Y. Exec. Law § 292.9 and citing *U.S. Power Squadrons v. State Hum. Rts. Appeal Bd.*, 452 N.E.2d 1199 (N.Y. 1983)).

Practically, these rules mean Emilee must offer, create, and post photographs and blogs celebrating same-sex weddings because she does so for opposite-sex weddings. *See, e.g.*, VC ¶ 160.These rules also mean Emilee cannot amend her company's operating agreement to include a policy explaining her religious and artistic reasons for declining to celebrate same-sex weddings. *Id.* at ¶¶ 229-34; VC Ex. 1. Emilee desires to adopt this policy to bind her company to an editorial policy that is consistent with her beliefs. But doing so would be to deny accommodations contrary to New York's laws. This in turn transforms Emilee's photographs and website into public accommodations, strips Emilee of her editorial discretion to control what content she offers and creates, and thereby forces Emilee to convey messages that violate her core convictions. That is compelled speech.

The Supreme Court already said so in *Hurley*. 515 U.S. at 572-73. There, an LGBT group tried to apply a public accommodations law to a parade. *Id.* at 561. But *Hurley* rebuffed this effort because the parade was expressive. *Id.* at 578. The Court held that forcing the parade organizers to admit the LGBT group would alter the parade's content, infringe the organizers' right to speak their desired message, and treat "speech itself" as a public accommodation. *Id.* at 572-73.

The same logic applies here. New York may not constitutionally apply its public accommodations laws to Emilee's photographs and blog to force her to create

content celebrating same-sex weddings. This would alter the content of her photographs and blog and burden her editorial freedom to convey her desired message. *See Tornillo*, 418 U.S. at 258 (requiring newspapers to publish op-eds affected "[t]he choice of material to go into a newspaper" and "content of the paper," which stifled the paper's "editorial control and judgment").

Indeed, federal courts have repeatedly stopped anti-discrimination laws from burdening editorial freedom and compelling speech like this. *See, e.g.*, *Telescope Media Grp. v. Lucero* (*TMG*), 936 F.3d 740, 752 (8th Cir. 2019) (cannot force film studio to produce same-sex wedding films); *Brush & Nib Studio, LC v. City of Phoenix* (*B&N*), 448 P.3d 890, 898-900 (Ariz. 2019) (cannot force art studio to create invitations celebrating same-sex weddings); *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't* (*CNP*), 479 F. Supp. 3d 543, 559-60 (W.D. Ky. 2020) (cannot force photographer to photograph or blog about same-sex weddings); *Claybrooks v. Am. Broad. Cos.*, Inc., 898 F. Supp. 2d 986, 999 (M.D. Tenn. 2012) (cannot force television studio to cast certain actors); *Zhang*, 10 F. Supp. 3d at 437 (cannot force internet company to publish search-engine material from protected group). This Court should too.

To be sure, the laws in these cases did not facially target speech; their "focal point" was stopping "the act of discriminating." *Hurley*, 515 U.S. at 572. But that doesn't matter when those laws compel speech. When "applied to expressive activity," the law in *Hurley* still "require[d] speakers to modify the content of their expression to whatever extent beneficiaries of the law choose to alter it with messages of their own." *Id*. at 578. In other words, courts must look beyond a law's text or purpose to evaluate its effects *as applied* to the particular speech at hand.

Nor can New York avoid this conclusion by characterizing Emilee as a conduit for her client's speech. *See TMG*, 936 F.3d at 773-76 (Kelly, J., dissenting) (for this argument). Emilee retains editorial control over her art. VC ¶¶ 98-108;

App. at 68. She decides what content to capture, which photographs to discard, and what edits to make to tell a cohesive story about the "love, intimacy, and sacrifice" of marriage. Decl. ¶¶ 156-57. She also makes this story explicit by posting photos and blogs on her website about every wedding.

If New York could compel Emilee to speak because she speaks about and receives payment from others, then officials could compel every paid writer, lawyer, publisher, painter, printer, graphic designer, advertising firm, and newspaper to speak any message. That is not the law. *Hurley*, 515 U.S. at 573, 575 (rejecting conduit argument since parade organizers "choose the content" of speech and are "more than a passive receptacle" for another's message); *Tornillo*, 418 U.S. at 258 ("A newspaper is more than a passive receptacle or conduit for news, comment, and advertising."); *TMG*, 936 F.3d at 753 (rejecting conduit argument for film studio); *B&N*, 448 P.3d at 911-12 (rejecting conduit argument for art studio).

### C.     The Accommodations and Discrimination Clauses compel Emilee to speak messages she objects to.

But New York does not simply compel Emilee to speak. It compels her "to mouth support for views [she] find[s] objectionable." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). This "violates [a] cardinal constitutional command" which is almost "universally condemned." *Id*. Indeed, "compelled speech presents a unique affront to personal dignity." *Burns*, 890 F.3d at 85. "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning." *Janus*, 138 S. Ct. at 2464.

The same principle applies here. Emilee believes that God ordained marriage to be between one man and one woman. Decl. ¶¶ 66-76. She wants to create content celebrating this view. *E.g.*, VC ¶¶ 48, 105-08. But as applied to Emilee's photographs and website, New York laws force her to create and publish photographs celebrating same-sex weddings. This not only alters the formal

content in Emilee's photographs; it reverses their message—from celebrating opposite-sex marriage (Emilee's photographs, left) to celebrating same-sex marriage (other photographers, right). *Compare* App. at 129, 132, 146 *with id.* at 282, 291, 318. *See also* Decl. ¶¶ 340-46.



New York's laws change the content in Emilee's blog posts as well. Emilee's posts contain pictures of opposite-sex weddings and text honoring the covenantal nature of marriage. Forcing Emilee to say this or any other celebratory text about

same-sex weddings would force her to speak a completely different view. *Compare,
e.g.*,  App. at 105 ("…God joining them together as husband and wife ….") *with id.*
at 285 (referencing "grooms") *and* 287 (referencing "brides").

Just as those who photograph and blog to celebrate same-sex marriage
receive First Amendment protection, Emilee should too. "The First Amendment"
protects both "those who oppose same-sex marriage" and "those who believe
allowing same-sex marriage is proper or indeed essential." *Obergefell v. Hodges*,
135 S. Ct. 2584, 2607 (2015). Ending that debate by forcing one side to adopt the
other's view respects no one, and tramples the First Amendment.

So courts protect both sides, including Emilee's. In fact, courts have
specifically held that public accommodation laws cannot force paid speakers to
create content celebrating same-sex weddings when it alters their message and
compels their speech. *See TMG*, 936 F.3d at 753 (forcing filmmakers to create
same-sex wedding films forced them to "convey the same 'positive' message in their
videos about same-sex marriage as they do for opposite-sex marriage"); *B&N*, 448
P.3d at 909 (forcing art studio to write wedding invitations compelled speech
because "writing the names of two men or two women … clearly does alter the
overall expressive content of [studio's] wedding invitations"). And a Kentucky
federal court applied the same reasoning to protect a photographer who wants to
celebrate only opposite-sex weddings. *CNP*, 479 F. Supp. 3d at 557-60. As these
cases show, New York cannot force Emilee to create content and speak messages
she disagrees with.

And it is a message Emilee objects to expressing, not to serving any class of
persons. VC ¶ 140. Emilee will happily provide her services, like branding
photography, to LGBT clients. *Id.* at ¶ 130. And she will provide wedding
photography to LGBT clients too, whether that be LGBT wedding planners or
LGBT parents requesting photographs celebrating their child's opposite-sex

wedding. *Id.* at ¶¶ 131-34; Decl. ¶¶ 292-96. For Emilee, it's about the content requested, not the person requesting. Emilee will not create certain content *for anyone*, whether they are gay, straight, or anything else.

The Supreme Court drew the same message/status distinction in *Hurley*, which allowed parade organizers to exclude the message communicated by an LGBT group marching under its own banner when the organizers did not "exclude homosexuals as such" from the parade. 515 U.S. at 572, 574; *Hsu By and Through Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 856 (2d Cir. 1996) (interpreting *Hurley* same way). *See also Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1736 (2018) (Gorsuch, J., concurring) (when cake designer declined to create cake celebrating same-sex wedding "it was the kind of cake, not the kind of customer, that mattered"); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653 (2000) (affirming *Hurley*'s status/message distinction); *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 258 (Utah 1994) (newspaper could decline religious advertisement because "it was the message itself that [the newspaper] rejected, not its proponents"). Emilee has done nothing more here: serve people regardless of status, decline to speak certain messages. She deserves the same protection afforded others who also engage in expression.

## D. Forcing Emilee to speak creates a dangerous and limitless principle.

"At the heart of the First Amendment is the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *New Hope Family Services, Inc. v. Poole*, 966 F.3d 145, 170 (2d Cir. 2020) (cleaned up). If New York can violate this principle and force Emilee to speak messages about marriage she disagrees with, nothing stops New York from compelling other speakers as well. Compelling Emilee hurts speakers of all views and beliefs.

For example, if New York can use its laws to force Emilee to speak, it can also force progressive bar associations to publish advertisements promoting Israel in their magazine—as one New York court has already upheld.[3] Or force search engine providers to publish anti-Chinese (or pro-Chinese) material. *Zhang,* 10 F. Supp. 3d at 434-36. Or force LGBT cake artists to create cakes saying, "Homosexual acts are gravely evil. (Catholic Catechism 2357),"[4] or force a custom printing company to make a bumper sticker saying "White Lives Matter." New York could even make "political belief" a protected class tomorrow and then force Democratic speech writers to write speeches supporting Republican politicians. *TMG*, 936 F.3d at 756 (making this point).

Thankfully, New York lacks the power to start down this path. "[T]he First Amendment to our Constitution was designed to avoid these ends by avoiding these beginnings." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 641 (1943). In our pluralistic society, the First Amendment protects everyone's freedom of speech. That includes Emilee.

## II.   The Accommodations and Discrimination Clauses violate the First Amendment because they compel Emilee to speak based on content and viewpoint.

Emilee satisfies the three-part test for compelled speech, but the Accommodations and Discrimination Clauses go even further and compel her speech in a content and viewpoint-based way. This too triggers strict scrutiny. *Reed v. Town of Gilbert,* 576 U.S. 155, 164-65 (2015).

A regulation is content based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id*. at 163. As applied to Emilee,

---

[3] *Athenaeum v. Nat. Lawyers Guild, Inc.*, No. 653668/16, 2018 WL 1172597, at *3-5 (N.Y. Sup. Ct. Mar. 06, 2018).
[4] Susan Selasky, *Lesbian baker in Detroit got homophobic cake order: Why she made it anyway*, Detroit Free Press (Aug. 13, 2020), http://bit.ly/freearticle.

the Accommodations and Discrimination Clauses compel speech based on content and viewpoint in three ways. First, these Clauses compel Emilee to celebrate same-sex weddings, which changes the content of her desired speech, both in her photos and blog posts. *See supra* § I.C; *Riley*, 487 U.S. at 795; *Evergreen*, 740 F.3d at 244 ("We therefore consider laws mandating speech to be content-based regulations subject to strict or exacting scrutiny" (cleaned up)).

Second, the laws require Emilee to create content celebrating same-sex weddings because she creates content celebrating opposite-sex weddings. If Emilee only photographed wildlife instead of weddings, she'd be safe. It is only because Emilee creates photographs and blogs celebrating opposite-sex marriage that must she also create photographs promoting same-sex marriage. In this way, the laws are triggered by the content of Emilee's prior speech. That makes their application content-based. *See Tornillo*, 418 U.S. at 256 (statute "exacts a penalty on the basis of the content" by requiring newspapers to print editorial only if they printed editorial with particular content earlier); *PG&E*, 475 U.S. at 13-14 (law regulates based on content if it "condition[s] [access] on any particular expression" conveyed); *TMG*, 936 F.3d at 753 (law regulated based on content by treating filmmakers "choice to talk about one topic—opposite-sex marriages—as a trigger for compelling them to talk about a topic they would rather avoid—same-sex marriages").

Third, the laws confer access based on viewpoint. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("Viewpoint discrimination is … an egregious form of content discrimination."). If Emilee photographs opposite-sex weddings, the law does not require her to photograph every subject requested of her; the law only requires her to create photographs promoting one specific view— photographs celebrating same-sex weddings. That is a viewpoint-based access requirement that requires Emilee to speak views she disagrees with. *See PG&E*, 475 U.S. at 13 (law discriminates based on viewpoint when it awards access "only

to those who disagreed with the [speaker's] views"); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 654 (1994) (law in *PG&E* viewpoint-based because it "conferred benefits to speakers based on viewpoint, giving access only to a consumer group opposing the utility's practices"); *Az. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 742 n.8 (2011) (campaign finance law problematic because a candidate's speech triggered funds given "to his opponent" to speak hostile views).

## III. The Clauses violate the First Amendment because they restrict speech based on content and viewpoint.

Besides *compelling* speech based on content and viewpoint, New York's laws also *restrict* speech based on content and viewpoint.

To evaluate laws restricting speech, courts use a two-step inquiry. First, a law is content-based if "on its face [it] draws distinctions based on the message a speaker conveys." *Reed,* 576 U.S. at 163–64 (cleaned-up). Second, a facially content-neutral law may still regulate content as applied if it "cannot be justified without reference to the content of the regulated speech," or if the government adopted the law because it disagrees with the speaker's message. *Id.* (cleaned up). *See also McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (application content-based "if it required enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred.") (cleaned-up). New York's laws fail these requirements facially, as-applied, or both.

For example, the Publication Clause is facially content-based. The Clause makes it unlawful to "publish … any written or printed communication … to the effect that any of the … advantages … and privileges" of a public accommodation (1) "shall be refused, withheld from or denied to any person on account of … sexual orientation" or (2) "that the patronage or custom thereat of any person of … any particular … sexual orientation … is unwelcome, objectionable or not acceptable,

desired or solicited." N.Y. Exec. Law § 296.2(a). Statements saying, "no photographs of animals" are allowed; those saying, "no photographs of same-sex weddings" are forbidden. "That is about as content-based as it gets." *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2346 (2020) (robocall statute content-based because law's application turned on content in calls).

The Publication, Accommodations, and Discrimination Clauses also restrict Emilee's desired speech based on content as applied. Emilee wants to publish a statement on her website explaining that policy and make similar statements to prospective clients. VC ¶¶ 246-53; VC Ex. 2. But the laws forbid Emilee from posting or making these statements just because of their content: that marriage is only between a man and a woman and she will only create photographs consistent with this view. *See CNP*, 479 F. Supp. 3d at 560-61 (public accommodations law's application to photographer's statement was "content-based restriction on [her] expression," declining to create photographs celebrating same-sex weddings). *See also TMG*, 936 F.3d at 757 n.5 (public accommodations law could not "force [videographers] to remain silent" about their desire to celebrate opposite-sex weddings); *B&N*, 448 P.3d at 899, 926 (public accommodations law could not prevent calligraphers from posting website statement "announcing their intention to refuse requests to create custom artwork for same-sex weddings").

Additionally, the Accommodations, Publication, and Discrimination Clauses prevent Emilee from asking prospective clients whether they seek her services celebrating a same-sex wedding. VC ¶¶ 236-37; N.Y. Exec. Law § 296.2(a); N.Y. Civ. Rts. Law § 40-c(2) (banning "*any* discrimination"). *Cf.* 29 C.F.R. § 1604.7 (federal prohibition on sex discrimination in employment precludes "pre-employment inquiry … which expresses directly or indirectly any limitation, specification, or discrimination as to sex"). So Emilee can ask prospective clients whether they want photographs with racist or sexist content to ensure she does not

create this content, but she can't ask prospective clients whether they want photographs celebrating same-sex weddings. Again, this turns solely on the content of her questions.

In fact, the Discrimination, Accommodations, and Publication Clauses also act as viewpoint-based restrictions for the reasons described above. For example, Emilee is allowed to post a website statement supporting same-sex and opposite-sex marriage or showing a willingness to create speech celebrating same-sex and opposite-sex marriages. She just cannot express views supporting *only* opposite-sex marriage or stating that she will celebrate *only* opposite-sex marriages. These restrictions favor particular views over others. That is viewpoint discrimination. *Rosenberger*, 515 U.S. at 829; *Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1216 (9th Cir. 1996) (viewpoint discrimination to ban sign saying, "gay marriage is a sin" but allow sign advocating "person's right to choose whatever mate he or she wishes").

## IV.    The Accommodations and Discrimination Clauses violate the First Amendment because they compel Emilee to participate in and celebrate religious ceremonies she objects to.

The First Amendment "guarantees at a minimum that a government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 577 (1992). And "[t]he fulcrum of this inquiry … is individual conscience and free will." *DeStefano v. Emergency Hous. Grp., Inc.*, 247 F.3d 397, 412 (2d Cir. 2001). This principle comes from both the Establishment and Free Exercise Clauses. *Id.* (grounding principle in former); *Masterpiece*, 138 S. Ct. at 1727 (forcing clergy to officiate wedding ceremonies violates latter).

Just as officials may not compel someone to swear an oath in a church, *Doe v. Phillips*, 81 F.3d 1204, 1211-12 (2d Cir. 1996), attend a "group exercise [that] signifie[s]" participation in prayer, *Lee*, 505 U.S. at 593-94, or participate in Alcoholics Anonymous meetings with religious undertones, *Warner v. Orange Cnty.*

*Dept. of Prob.*, 115 F.3d 1068, 1074-75 (2d Cir. 1996), officials may not force someone to attend or participate in wedding ceremonies. *Cf. Anderson v. Laird*, 466 F.2d 283, 284 (D.C. Cir. 1972) (per curiam) (no forced participation in chapel services). Like many, Emilee believes that weddings are religious in nature because they solemnize an institution created by God. Decl. ¶¶ 196-215. Courts have recognized this unique quality of marriage and weddings. *See Obergefell*, 135 S. Ct. at 2594 (noting "the transcendent importance of marriage" that is "sacred" to many); *Turner v. Safley*, 482 U.S. 78, 96 (1987) ("[M]any religions recognize marriage as having spiritual significance ...."). So does New York (just not for Emilee). N.Y. Dom. Rel. Law § 10-b (exempting "religious entit[ies]" from providing "services," "advantages," or "privileges" for the "celebration of a marriage").

But here, the Accommodations and Discrimination Clauses require Emilee to treat same-sex weddings the same as opposite-sex weddings. *See supra*, § I.C (explaining this interpretation). This means Emilee must not only attend same-sex wedding ceremonies to take pictures, but she must also participate in same-sex weddings in the same ways she does for opposite sex weddings. Anything less violates New York's laws. So, because Emilee verbally encourages the wedding party to celebrate the wedding, follows the officiant's instructions, sings, and engages with the prayers at religious weddings between a man and woman, she would need to do the same at same-sex weddings. VC ¶¶ 69-74; Decl. ¶¶ 201-03.

But Emilee cannot possibly do this at same-sex wedding ceremonies without violating her belief (VC ¶¶ 118-21) that only opposite-sex marriages should be celebrated. *See Lee*, 505 U.S. at 593 ("[T]he act of standing or remaining silent was an expression of participation in the rabbi's prayer. That was the very point of the religious exercise."); *Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 44-45 (1st Cir. 2016) (forcing police officer to listen and stand still "in close proximity" to group praying violated First Amendment); *Kaahumanu v. Hawaii*, 682 F.3d 789,

799 (9th Cir. 2012) ("The core of the message in a wedding is a celebration of marriage and the uniting of two people in a committed long-term relationship."). So New York cannot force Emilee to participate in these events.

## V.     The Clauses violate the First Amendment because they are neither neutral nor generally applicable and restrict a hybrid of historically protected rights.

New York's laws are not neutral or generally applicable as applied to Emilee. *See* VC ¶¶ 346-47. Thus the laws must pass strict scrutiny, which they cannot do. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

The laws are not neutral because New York interprets its law to target Emilee's religious beliefs for adverse treatment. *Id.* at 537 (neutrality considers "effect of a law" and "the interpretation given" by state). *See also* VC ¶¶ 285-99; Br. of Mass. et al. in Supp. of Resp'ts at 26-29, *Masterpiece*, 138 S. Ct. 1719 (No. 16-111) (U.S. Oct. 30, 2017) (New York Attorney General approving secular reasons for declining to create message, but not religious reasons). The laws are not generally applicable either. They contain many exemptions that undermine New York's alleged interest in forcing Emilee to celebrate same-sex weddings. *See Lukumi*, 508 U.S. at 543 (underinclusivity cutting against general application); VC ¶¶ 314-16. And they permit "individualized governmental assessment[s] of the reasons for the [allegedly unlawful] conduct." *Lukumi*, 508 U.S. at 537 (quotations omitted). VC ¶¶ 291-92.

Laws that burden religious exercise along with other constitutional rights violate a hybrid of rights and trigger strict scrutiny. *See Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 881-82 (1990) (strict scrutiny for "hybrid situation[s]" where free-exercise claim is linked with "other constitutional protections, such as freedom of speech"). Although the Second Circuit has rejected

this hybrid-rights doctrine, *Leebaert v. Harrington*, 332 F.3d 134, 143-44 (2d Cir. 2003), other courts disagree and correctly interpret *Smith* as recognizing this doctrine. *TMG*, 936 F.3d at 753. Emilee wishes to preserve this issue for appeal.

**VI.    The Clauses fail strict scrutiny as applied to Emilee's expression and participation.**

Because New York's laws compel Emilee to speak, regulate her speech based on content and viewpoint, and violate her free exercise of religion in several ways, New York must prove that these applications are narrowly tailored to serve a compelling state interest. *Reed*, 576 U.S. at 163. New York cannot do so.

As for compelling interest, New York may invoke its need to stop discrimination. But that will go nowhere. Emilee does not discriminate. She merely declines to speak messages she disagrees with while she serves clients regardless of status. *See supra* § II.C (explaining message/status distinction). So New York cannot cite discrimination to justify regulating Emilee's editorial discretion. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006) (courts "look[] beyond broadly formulated interests" and consider "the asserted harm of granting specific exemptions to particular … claimants").

Just as problematic, New York cannot identify an "actual problem" that justifies regulating Emilee's photography. *Brown* 564 U.S. at 799. Many photographers in New York gladly provide services celebrating same-sex weddings. VC ¶¶ 301-03; App. 264-366. Forcing Emilee to do so despite so many alternatives makes little sense.

What's more, New York's law has several exceptions that undermine any basis for regulating Emilee. *See Brown*, 564 U.S. at 802 ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."). For one, New York allows public accommodations to discriminate on the basis of sex "based

on bona fide considerations of public policy" N.Y. Exec. Law § 296.2(b). For another, New York allows public accommodations to deny services based on legitimate secular reasons. *See Battaglia v. Buffalo Niagara Intro., Inc.*, No. 10138581, at 5-6 (N.Y. State Div. of Human Rights Jan. 28, 2012) (dismissing disability discrimination complaint because denial based on safety concerns). If New York allows these exceptions, it cannot justify compelling Emilee to convey messages or participate in ceremonies she disagrees with, especially since she does not discriminate against anyone.

For narrow tailoring, New York must prove that regulating Emilee is "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). While New York contends its laws must "comprehensively cover places open to the public" because "any exception … would frustrate the laws' very purpose," New York is wrong. Br. for Mass. et al. as Amici Curiae Supporting Defs. at 19, *303 Creative LLC v. Elenis*, No. 19-1413 (10th Cir. April 29, 2020). Many better options exist.

First, New York could apply its laws to stop actual status discrimination, not message-based objections when speaking. *Supra* § I.C. Courts around the country already do this without problem. *See supra* §§ I.B–C (citing cases in Arizona, Utah, Eighth Circuit, Kentucky, and elsewhere). Second, New York could allow exemptions for public accommodations asked to provide services that would "fundamentally alter the nature of" the services, like it in cases of disability discrimination. N.Y. Exec. Law § 296.2(c)(i).

Third, New York could create a "bona fide relationship" exception for public accommodations, like it already does for employment advertising and hiring. N.Y. Exec. Law § 296.1(d); Colo. Rev. Stat. § 24-34-601(3); *see also* 42 U.S.C. § 2000e–2(e)(1); 29 C.F.R. § 1604.2 (interpreting Title VII to allow production studios to make classifications for BFOQs when "necessary for the purpose of authenticity or

genuineness … e.g., [selecting] an actor or actress"). Or New York could expand its "bona fide … public policy" exemption to cover Emilee's editorial choices about her photographs and blogs. N.Y. Exec. Law § 296.2(b).

Fourth, New York could exempt individuals and small businesses that celebrate weddings, like it already does for religious entities. N.Y. Dom. Rel. Law § 10-b. *See also* Miss. Code § 11-62-5(5)(a) (exempting photographers that decline to provide wedding services based on sincere belief in marriage between a man and a woman). Fifth, New York could exempt businesses that fall below certain revenue thresholds or services provided per-year threshold. New York already does this for "distinctly private" accommodations with less than "one hundred members." N.Y. Exec. Law § 292.9. *See also Washington v. McManus*, 944 F.3d 506, 522 (4th Cir. 2019) (law too broad for failing "to distinguish between platforms large and small").

Sixth, New York could interpret its law to not apply to highly selective entities. *Vejo v. Portland Pub. Sch.*, 204 F. Supp. 3d 1149, 1168 (D. Or. 2016) (selective university programs), *rev'd and remanded on other grounds*, 737 F. App'x 309 (9th Cir. 2018); *Cut 'N Dried Salon v. Dep't of Hum. Rts.*, 713 N.E.2d 592, 595-96 (Ill. App. Ct. 1999) (selective insurance companies).

Seventh, New York could create a voluntary certification system where wedding photographers who are willing to photograph same-sex weddings could apply for certificates from the state. Certified photographers could then advertise themselves as certified. *See Billups v. City of Charleston*, 961 F.3d 673, 689-90 (4th Cir. 2020) (discussing similar option for tour guides). New York City, for example, just recently began certifying LGBT business enterprises.[5]

Finally, New York could define public accommodations narrowly to apply only to essential, non-expressive, or non-internet businesses like restaurants and

---

[5] Certify with the City, https://on.nyc.gov/2OgG8f7 (last visited on Apr. 2, 2021).

hotels. Many jurisdictions already do this. *See* 42 U.S.C. § 2000a(b) (defining public accommodations as hotels, restaurants, entertainment venues, and gas stations); Fla. Stat. § 760.02(11) (same); S.C. Code. Ann. § 45-9-10(B) (same); *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 501 (D.C. Cir. 2020) (interpreting public accommodation law to apply to physical places, not online businesses). New York has many options to achieve its goal without compelling Emilee.

## VII.   The remaining preliminary-injunction factors favor an injunction.

When plaintiffs prove a First Amendment violation, the remaining preliminary-injunction factors fall into place. "[V]iolations of First Amendment rights are presumed irreparable." *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000). And "securing First Amendment rights is in the public interest." *N.Y. Progress and Prot. PAC*, 733 F.3d at 488. Finally, New York suffers no harm from an injunction that requires it to apply its laws constitutionally to Emilee. *Id.* In contrast, Emilee suffers harm every day by the threatened enforcement of these laws and the chill they impose on her speech. Emilee cannot offer only her desired photography, adopt her desired policy, or post her statement on her website. She cannot ask potential clients certain questions about the photography they seek. And she continues to receive wedding requests from same-sex couples, which put her at risk for steep fines and penalties under the laws. All these factors justify Emilee's need for immediate relief.

## Conclusion

Forcing Emilee to celebrate weddings she disagrees with violates the First Amendment and ultimately threatens everyone's free speech and religious liberty. To stop this violation, Emilee asks this Court to grant her preliminary-injunction motion.

Respectfully submitted this 6th day of April, 2021.

By: s/Jonathan A. Scruggs

Raymond J. Dague
New York Bar No. 1242254
**Dague & Martin, P.C.**
4874 Onondaga Road
Syracuse, New York 13215
(315) 422-2052
(315) 474-4334 (facsimile)
rjdague@daguelaw.com

Jonathan A. Scruggs
Arizona Bar No. 030505
Bryan D. Neihart*
Arizona Bar No. 035937
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jscruggs@ADFlegal.org
bneihart@ADFlegal.org

ATTORNEYS FOR PLAINTIFFS

*Pro Hac Vice* Admission Forthcoming

26

## Certificate of Service

I hereby certify that on the 6th day of April, 2021, I electronically filed the foregoing document with the Clerk of Court using the ECF system. The foregoing document will be served via private process server with the Summons and Complaint to all defendants.

s/Jonathan A. Scruggs
Jonathan A. Scruggs

*Attorney for Plaintiffs*
