## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **Emilee Carpenter, LLC d/b/a Emilee Carpenter Photography** and **Emilee Carpenter**,<br><br>    Plaintiffs,<br><br>  v.<br><br>**Letitia James**, in her official capacity as Attorney General of New York; **Jonathan J. Smith**, in his official capacity as Interim Commissioner of the New York State Division of Human Rights; and **Weeden Wetmore**, in his official capacity as District Attorney of Chemung County,<br><br>    Defendants. | Case No. 6:21-CV-06303 |

### PROPOSED BRIEF OF AMICI CURIAE STATES OF NEBRASKA, ALABAMA, ARKANSAS, KANSAS, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, OKLAHOMA, SOUTH CAROLINA, TEXAS, UTAH, AND WEST VIRGINIA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Thomas Marcelle
61 Devonshire Dr.
Slingerlands, New York 12159
tjmarccelle88@gmail.com

Douglas J. Peterson
  Attorney General of Nebraska
David T. Bydalek
  Chief Deputy Attorney General
James A. Campbell*
  Solicitor General
OFFICE OF THE NEBRASKA ATTORNEY
  GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
jim.campbell@nebraska.gov

*Attorneys for Amici States*

***Pro hac vice application forthcoming*

## **Table of Contents**

Table of Authorities ...................................................................................ii

Introduction and Summary of Argument ........................................... 1

Interests of Amici Curiae .................................................................... 3

Argument ............................................................................................... 4

I.     The First Amendment generally forbids States from compelling speech. ........ 4

II.    The First Amendment's freedom against compelled speech protects
       Carpenter's wedding photography. ................................................... 6

III.   Only in narrow circumstances do commercial applications of public-
       accommodation laws implicate compelled-speech protection. ......................... 11

IV.    New York cannot satisfy strict scrutiny. .......................................... 13

       A.     Strict scrutiny is the relevant standard. ............................... 13

       B.     Under the specific facts of this case, New York does not have a
              compelling interest in forcing Carpenter to create speech
              expressing messages that violate her religious beliefs. ...................... 15

       C.     The experiences of other States prove that New York cannot
              establish narrow tailoring. .................................................... 17

Conclusion ............................................................................................ 20

i

**<u>Table of Contents</u>**

Table of Authorities ...................................................................................................ii

Introduction and Summary of Argument ................................................................ 1

Interests of Amici Curiae ........................................................................................ 3

Argument ................................................................................................................. 4

I.      The First Amendment generally forbids States from compelling speech. ........ 4

II.      The First Amendment's freedom against compelled speech protects
Carpenter's wedding photography. ................................................................. 6

III.    Only in narrow circumstances do commercial applications of public-
accommodation laws implicate compelled-speech protection......................... 11

IV.     New York cannot satisfy strict scrutiny........................................................... 13

        A.      Strict scrutiny is the relevant standard. ................................................ 13

        B.      Under the specific facts of this case, New York does not have a
compelling interest in forcing Carpenter to create speech
expressing messages that violate her religious beliefs........................ 15

        C.      The experiences of other States prove that New York cannot
establish narrow tailoring.................................................................... 17

Conclusion ............................................................................................................. 20

## Table of Authorities

### Cases

*Anderson v. City of Hermosa Beach,*
    621 F.3d 1051 (9th Cir. 2010) ................................................................................. 8

*Ashcroft v. Free Speech Coal.,*
    535 U.S. 234 (2002) ............................................................................................... 7

*Bery v. City of New York,*
    97 F.3d 689 (2d Cir. 1996) .................................................................................... 7

*Boy Scouts of Am. v. Dale,*
    530 U.S. 640 (2000) .......................................................................................... 5, 14

*Brush & Nib Studio, LC v. City of Phoenix,*
    448 P.3d 890 (Ariz. 2019) ..................................................................................... 1

*Buehrle v. City of Key West,*
    813 F.3d 973 (11th Cir. 2015) ............................................................................ 8, 9

*Chelsey Nelson Photography LLC v. Louisville/Jefferson Cty. Metro Gov't,*
    479 F. Supp. 3d 543 (W.D. Ky. 2020) ......................................................... passim

*Cohen v. California,*
    403 U.S. 15 (1971) ................................................................................................. 5

*ETW Corp. v. Jireh Publ'g, Inc.,*
    332 F.3d 915 (6th Cir. 2003) ................................................................................. 9

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ............................................................................................ 15

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
    515 U.S. 557 (1995) ..................................................................................... passim

*Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31,*
    138 S. Ct. 2448 (2018) ................................................................................. 4, 5, 15

*Kaplan v. California,*
    413 U.S. 115 (1973) ............................................................................................... 7

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n,*
    138 S. Ct. 1719 (2018) ...................................................................... 2, 11, 12, 16

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974)................................................................................... 4, 8, 14

*Obergefell v. Hodges*,
    576 U.S. 644 (2015)........................................................................................... 1

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*,
    475 U.S. 1 (1986)............................................................................... 4, 13, 14

*PruneYard Shopping Center v. Robins*,
    447 U.S. 74 (1980)......................................................................................... 12

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015)....................................................................................... 15

*Regan v. Time, Inc.*,
    468 U.S. 641 (1984)......................................................................................... 7

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988)................................................................................... 4, 8, 9

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
    547 U.S. 47 (2006)......................................................................................... 12

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019)............................................................ 1, 13, 14, 18

*Texas v. Johnson*,
    491 U.S. 397 (1989)....................................................................................... 16

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994)................................................................................... 13, 14

*United States v. O'Brien*,
    391 U.S. 367 (1968)....................................................................................... 14

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000)....................................................................................... 17

*United States v. Stevens*,
    559 U.S. 460 (2010)......................................................................................... 6

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) ............................................................................. 4

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ........................................................................... 12

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972) ........................................................................... 15

*Wooley v. Maynard*,
  430 U.S. 705 (1977) ........................................................................ 4, 5

## **Statutes**

Miss. Code. Ann. § 11-62-3(a) ............................................................ 18

Miss. Code. Ann. § 11-62-5(5)(a) ....................................................... 18

Neb. Rev. Stat. § 20-137 .................................................................... 18

Neb. Rev. Stat. § 20-138 .................................................................... 18

N.Y. Dom. Rel. Law § 10-b(1) ........................................................... 19

## **Other Authorities**

W. Eugene Smith, *Photographic Journalism, Photo Notes* (1948),
  *reprinted in Photographers on Photography* (Nathan Lyons ed., 1966) ................. 7

## Introduction and Summary of Argument

Plaintiff Emilee Carpenter, LLC and its owner Plaintiff Emilee Carpenter (collectively Carpenter) shoot, select, edit, and produce custom photographs for clients. One aspect of Carpenter's work is that she creates images telling the stories of clients' weddings. She does this because she wants to celebrate what she believes to be God's design for marriage—the uniting of a husband and a wife. And a corollary of that belief, which the Supreme Court has called "decent and honorable," *Obergefell v. Hodges*, 576 U.S. 644, 672 (2015), is that she cannot create images celebrating same-sex weddings, though she otherwise serves LGBT customers.

New York interprets its public-accommodation law to forbid this. In its view, photographers who commemorate opposite-sex marriages must do the same for same-sex marriages, and refusing to do so subjects them to civil fines up to $100,000 and possible criminal prosecution. By taking this approach, New York has gone astray, for the First Amendment prohibits States from forcing individuals, including people who create custom speech for a living, to speak in favor of same-sex marriage. Indeed, numerous courts have recently affirmed that very point. *E.g.*, *Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019) (Minnesota cannot compel wedding video-grapher); *Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890 (Ariz. 2019) (Phoenix cannot compel artist who crafts custom wedding invitations); *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cty. Metro Gov't*, 479 F. Supp. 3d 543 (W.D. Ky. 2020) (Louisville cannot compel wedding photographer).

The freedom against compelled speech applies in this case because Carpenter's custom wedding photographs are her constitutionally protected speech. Those

images—which Carpenter carefully selects, edits, and compiles—tell the story of the wedding day from her perspective, and they do so far better than words can. Because she speaks through her wedding photography, New York cannot force her to address the topic of same-sex marriage.

While compelled-speech protection applies to this specific application of New York's public-accommodation law, that happens only in limited commercial circumstances. Compelled-speech protection is implicated when, as here, a business owner creates custom speech for her clients, a prospective client requests custom speech, and the owner declines because she objects to the message that the speech would express. The compelled-speech doctrine is thus irrelevant to sales involving the "innumerable goods and services that no one could argue implicate" speech. *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1728 (2018). Nor, under existing Supreme Court precedent, does that First Amendment protection apply when a (1) public-accommodation law has only an incidental effect on speech, (2) a business owner objects merely to providing a forum for another's speech (rather than to altering her own speech), or (3) a business owner flatly refuses to work for a protected class of people. Given these crucial limitations on compelled-speech protection, a ruling for Carpenter would be "sufficiently constrained" to ensure that States are still able to effectively enforce their public-accommodation laws. *Id.*

New York cannot prevail here because it cannot satisfy the particularized strict-scrutiny analysis that applies in this case. The State lacks a compelling interest in forcing a creator of custom speech like Carpenter to express messages promoting

same-sex marriage. Under a different set of facts—for example, if Carpenter were the only wedding photographer in town—New York would have a stronger interest. But under the facts presented here, New York cannot demonstrate a compelling interest.

Nor can New York establish narrow tailoring. Other States, including the amici States, already refrain from compelling speech, and that has not sacrificed their ability to enforce their public-accommodation laws. Also, many States, including New York, already allow important exemptions to their public-accommodation laws with no ill effects. All this proves that New York can respect the compelled-speech rights asserted here without compromising its nondiscrimination goals.

The compelled-speech doctrine protects the freedom and intellectual integrity of people on any side of polarizing issues. Just as it prevents the State from forcing Carpenter to speak in favor of same-sex marriage, it forecloses attempts to compel a lesbian photographer to create promotional photographs of a religious organization's event opposing same-sex marriage. But if it does not protect Carpenter, it does not shield the lesbian photographer either. Thus, by ruling for Carpenter, the Court ensures freedom of speech for all.

## **Interests of Amici Curiae**

Amici States of Nebraska, Alabama, Arkansas, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Oklahoma, South Carolina, Texas, Utah, and West Virginia have an interest in ensuring that courts affirm the limited constitutional constraints placed on public-accommodation laws. Those statutes are important tools to eliminate specific kinds of invidious discrimination. But the First Amendment's Free Speech Clause forbids States from using public-accommodation laws to compel

the expression of citizens who create custom speech for a living. Amici States do not want to violate the constitutional rights of individuals and businesses, and thus they desire to see courts recognize this narrow limitation on public-accommodation laws. For these reasons, amici States support Carpenter's compelled-speech claim.

<u>**Argument**</u>

## I.   The First Amendment generally forbids States from compelling speech.

"Compelling individuals to mouth support for views they find objectionable violates [a] cardinal constitutional command" and is "universally condemned." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). That rule against compelled speech forbids New York from forcing its citizens to express messages they deem objectionable or from punishing them for declining to express such messages. *E.g.*, *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795–801 (1988) (fundraisers cannot be forced to disclose the percentage of money that they give to their clients); *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 20–21 (1986) (*PG&E*) (plurality opinion) (business cannot be forced to include another's speech in its mailing); *Wooley v. Maynard*, 430 U.S. 705, 717 (1977) (citizens cannot be forced to display state motto on license plate); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (newspaper cannot be forced to print politician's writings); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (students cannot be forced to recite pledge or salute flag). Not even public-accommodation laws, as important as they are, can override this freedom. *E.g.*, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572–73 (1995)

(parade organizers cannot be forced to include LGBT group's message); *see also Boy Scouts of Am. v. Dale*, 530 U.S. 640, 659 (2000) (Boy Scouts cannot be forced to keep leader who contradicts group's messages).

The right to be free from compelled speech protects each person's conscience by shielding "the sphere of intellect" and the "individual freedom of mind." *Wooley*, 430 U.S. at 714–15. It ensures that the government cannot force individuals to be "instrument[s] for fostering public adherence to an ideological point of view [they] find[] unacceptable." *Id.* at 715. And it protects "individual dignity," *Cohen v. California*, 403 U.S. 15, 24 (1971), because "[f]orcing free and independent individuals to [express] ideas they find objectionable"—to "betray[] their convictions" in that way—"is always demeaning," *Janus*, 138 S. Ct. at 2464.

The Supreme Court's decision in *Hurley* demonstrates that public-accommodation laws must occasionally give way to freedom of expression. There, the organizers of Boston's St. Patrick's Day Parade qualified as a public accommodation because they invited members of the public to participate in their parade and accepted nearly every group that applied. *Hurley*, 515 U.S. at 562. Despite allowing LGBT people to participate as individuals, the organizers declined an LGBT advocacy group's request to march as a distinct contingent behind a banner. *Id.* at 572. They did so because of a "disagreement" with the group's message rather than an "intent to exclude homosexuals as such." *Id.*; *see also Dale*, 530 U.S. at 653 (organizers in *Hurley* did not exclude LGBT group "because of their [members'] sexual orientations," but because of what the group expressed "march[ing] behind a . . . banner").

The Massachusetts courts held that the parade organizers had engaged in unlawful discrimination and ordered them to include the LGBT group. *Hurley*, 515 U.S. at 561–65. But on appeal, the Supreme Court unanimously reversed. *Id.* at 581. It explained that the State applied its public-accommodation law "in a peculiar way," *id.* at 572, effectively declaring the parade organizers' "speech itself to be the public accommodation" and requiring them to alter their expression to accommodate "any contingent of protected individuals with a message," *id.* at 573. This violated the First Amendment right of speakers "to choose the content of [their] own message," *id.*, and decide "what merits celebration," even if those choices are "misguided" or "hurtful," *id.* at 574. In short, *Hurley* establishes that States cannot apply public-accommodation laws to force individuals engaged in expression to alter what they communicate.

## II.   The First Amendment's freedom against compelled speech protects Carpenter's wedding photography.

The First Amendment's freedom against compelled speech applies in this case because Carpenter's wedding photographs are speech. "[T]he Constitution looks beyond written or spoken words as mediums of expression," *Hurley*, 515 U.S. at 569, and protects artistic expression.  To qualify for First Amendment protection, artistic expression must convey some message, but it need not express a "succinctly articulable" or "particularized message." *Id.*

Consistent with these principles, the Supreme Court has repeatedly recognized that photographs are speech protected by the First Amendment. *E.g.*, *United States v. Stevens*, 559 U.S. 460, 468 (2010) (visual depictions "such as photographs" are

protected "expression"); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 246 (2002) (a "visual depiction" in a photograph of couples "engaging in sexual activity" is protected speech); *Regan v. Time, Inc.*, 468 U.S. 641, 646–48 (1984) (accepting, without reconsidering, the lower court's finding that a "photographic color reproduction of $100 bills" is protected speech); *Kaplan v. California*, 413 U.S. 115, 119–20 (1973) ("[P]ictures . . . have First Amendment protection"). The Second Circuit has likewise acknowledged that "photographs . . . are entitled to full First Amendment protection." *Bery v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996).

This makes sense. Pictures, after all, are some of the most effective "molders of opinion." W. Eugene Smith, *Photographic Journalism*, *Photo Notes* 4 (1948), *reprinted in Photographers on Photography*, 103, 104 (Nathan Lyons ed., 1966). They "trigger outrage" and "send messages of humor, happiness, and beauty" "in a way that words [often] can't." *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cty. Metro Gov't*, 479 F. Supp. 3d 543, 557 (W.D. Ky. 2020).

Carpenter's wedding photographs are no exception to the general rule that photographs are speech. They are undeniably expressive. She "photograph[s] the wedding ceremony, including the officiant delivering the homily, the couple exchanging vows, the couple kissing and embracing before the attendees, and the officiant announcing the couple." Carpenter Decl. ¶ 103 (ECF No. 3-5). She also captures images of "the bride and her wedding party as they prepare for the ceremony." *Id.* at ¶ 101. And "[i]f the wedding has a reception," Carpenter "photograph[s] special moments from the reception such as the father-daughter dance, the mother-son dance,

toasts, and the couple cutting their wedding cake." *Id.* at ¶ 105. In short, these images tell the story of the wedding day, and they do so far better than words can.

Not only are these wedding photographs speech, but also Carpenter (not just her clients) is speaking through the images. Her role in creating the speech is protected under the First Amendment. In fact, the Supreme Court has long held that businesses and individuals are constitutionally protected speakers when they create expression, even if the message originates with others and the business earns money for speaking. *E.g.*, *Riley*, 487 U.S. at 795–98 (fundraisers paid to recite customers' messages are speakers); *Tornillo*, 418 U.S. at 258 (newspapers compiling others' writings are speakers); *see also Hurley*, 515 U.S. at 570 ("First Amendment protection [does not] require a speaker to generate, as an original matter, each item featured in the communication.").

"Protected artistic expression frequently encompasses a sequence of acts by different parties, often in relation to the same [item]. The First Amendment protects the artist who [creates] a piece just as surely as it protects" those who request it. *Buehrle v. City of Key West*, 813 F.3d 973, 977 (11th Cir. 2015); *accord Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061–62 (9th Cir. 2010). That is why tattooists who draw images that customers request, *id.*; *Buehrle*, 813 F.3d at 976; and "[p]ublishers" who "disseminat[e] the work of others" are protected by the First Amendment, *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 925 (6th Cir. 2003); *see also Hurley*, 515 U.S. at 574 (discussing "professional publishers").

Stated differently, speech is not "a mantle[] worn by one party to the exclusion of another." *Buehrle*, 813 F.3d at 977. It "frequently encompasses . . . different parties." *Id.* The Supreme Court's decision in *Riley* demonstrates this. There, charities and the fundraisers who worked for them challenged a law requiring the fundraisers to speak unwanted messages about the charities. Although the fundraisers were speaking on the charities' behalf, the Court recognized the fundraisers' "independent First Amendment interest in the speech." *Riley*, 487 U.S. at 794 n.8. The same is true here. Even though Carpenter is creating the photographs for her clients, she has an independent First Amendment interest in her photographs.

That Carpenter is engaged in expression through her wedding photography is not up for debate. She decides which scenes to capture and which images to finalize, Carpenter Decl. ¶¶ 100–12, 159–60, 164, 167 (ECF No. 3-5), and those choices ultimately determine the messages that her photographs express. For instance, a smiling flower girl stuffing her mouth with cake sends a much different message than a tearful embrace between a bride and her mother. It is Carpenter's decisions when to push the button on her camera and what captured images to discard that dictate which messages her photographs express.

Carpenter's editing work also determines the messages she conveys through her wedding photographs. *Id.* at ¶¶ 176–81. For example, a picture of the couple kissing with the ringbearer sticking out his tongue in the background sends a playful and humorous message. But cropping that image to exclude the ringbearer and zoom in on the couple's kiss transforms the message to one of romance and love. It is the

wedding photographer's editing that determines which message that image will convey.

And perhaps most importantly of all, Carpenter intends to express messages through the wedding images she creates. She seeks to "positively depict the beauty, commitment, intimacy, and love" embodied in the couple's union. *Id.* at ¶ 149. And she strives to "communicate[] the love, intimacy, and sacrifice of God's design for marriage," *id.* at ¶ 179, which she believes is reflected only in a union "between one man and one woman," *id.* at ¶ 68. Were she to celebrate and positively depict a same-sex marriage through her images, she would be conveying through her photographs messages about marriage that are "contrary to [her] religious beliefs." *Id.* at ¶ 274.

Because Carpenter is engaged in expression, New York cannot force her to create images that express messages about marriage contrary to her faith. But New York construes its public-accommodation law to require precisely that. Indeed, past briefs that New York has filed indicate that a business owner's "policy of offering expressive services (like photography) celebrating opposite-sex weddings but not same-sex weddings" constitutes "a pattern, practice and policy of discrimination" under public-accommodation laws. Verified Compl. ¶ 179 (cleaned up). And any business owner who has such a policy in New York is subject to "civil fines up to fifty thousand dollars" or "one hundred thousand dollars" if the discrimination is "willful, wanton or malicious," *id.* at ¶ 212, and possible criminal prosecution, *id.* at ¶¶ 225–26.

By interpreting its law this way, New York forces Carpenter to create custom wedding photographs in violation of her conscience and threatens her with steep financial penalties and possible criminal prosecution for failing to comply. That is compelled speech, pure and simple.

### III. Only in narrow circumstances do commercial applications of public-accommodation laws implicate compelled-speech protection.

Public-accommodation laws "do not, as a general matter, violate the First or Fourteenth Amendments," *Hurley*, 515 U.S. at 572, which means that "most applications of antidiscrimination laws . . . are constitutional." *Chelsey Nelson Photography*, 479 F. Supp. 3d at 564. It is only in narrow circumstances that commercial applications of public-accommodation laws implicate compelled-speech protection. Specifically, that protection applies when, as here, a business owner creates custom speech for clients, a prospective client requests custom speech, and the owner declines because she objects to the message that the speech would communicate.

This protection implicates few business transactions because only a small percentage of commercial exchanges revolve around the creation of custom speech. The vast majority of transactions—clothing stores selling attire, landscaping companies mowing lawns, gas stations selling fuel, health clubs offering memberships, and restaurants selling sandwiches, to name just a few—will have no basis to claim compelled-speech protection. *See Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1728 (2018) (recognizing that there are "innumerable goods and services that no one could argue implicate the First Amendment"). Even among wedding vendors, many of them—such as "the tailor for the tux," "the makeup artist,"

11

"the manicurist," and "the travel agent for the honeymoon"—do not create speech for their customers. *Chelsey Nelson Photography*, 479 F. Supp. 3d at 558 n.118 (mentioning these examples).

Moreover, an application of a public-accommodation law that has only an incidental effect on speech does not give rise to a First Amendment violation. *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006) (*FAIR*) (finding no constitutional violation because the "compelled speech" at issue was "plainly incidental to the . . . regulation of conduct"). So if a grocery-store employee objects to serving certain customers because she does not want to be forced to talk to them, that does not present a compelled-speech problem. Conversing with a customer is incidental to the sale of groceries, and groceries are not speech. Here, however, there is nothing incidental about the speech that New York compels. It is the heart of the transaction between Carpenter and her wedding clients. The essence of what she does for those clients is to create photographs telling the story of their wedding. If she withheld that speech, there would be nothing left.

Nor does existing Supreme Court compelled-speech precedent shield a public accommodation that objects merely to "provid[ing] a forum for a third party's speech." *Masterpiece Cakeshop*, 138 S. Ct. at 1744–45 (Thomas, J., concurring) (discussing *FAIR*, 547 U.S. at 60–65, and *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 87 (1980)). Compelling a public accommodation to host another's speech is a far cry from "forc[ing] speakers to alter their *own* message," as New York threatens to do in this case. *Id.* at 1745; *accord Wash. State Grange v. Wash. State Republican Party*, 552

12

U.S. 442, 457 n.10 (2008) (forcing the "[f]acilitation of speech" is unlike the compelled "co-opt[ing]" of a person's "own conduits for speech"); *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 758 (8th Cir. 2019) ("Rather than serving as a forum for the speech of others, [a wedding videographer's] videos will carry their 'own message.'").

Finally, the compelled-speech doctrine applies only when the compelled speaker objects to the message communicated through her expression. *See Hurley*, 515 U.S. at 580 (noting the absence of compelled-speech protections when allegedly compelled speakers do not "object[] to the content"); *PG&E*, 475 U.S. at 12 (plurality opinion) (same). Thus, if a photographer flatly refuses to work for a protected class of people, regardless of the message that her images would convey, she would find no refuge in compelled-speech principles. This, of course, does not describe Carpenter at all. While she cannot celebrate same-sex weddings through her photography because of the messages that her images would express about marriage, she otherwise "create[s] photographs for gay [and] lesbians clients, such as LGBT business owners seeking branding photography." Carpenter Decl. ¶ 292 (ECF No. 3-5).

In sum, the compelled-speech protection that Carpenter seeks is limited, and a ruling for her would not be "a license to discriminate." *Chelsey Nelson Photography*, 479 F. Supp. 3d at 564.

## IV.   New York cannot satisfy strict scrutiny.

### A.   Strict scrutiny is the relevant standard.

Strict scrutiny generally applies when States apply their public-accommodation laws to compel speech. *See Hurley*, 515 U.S. at 575 (distinguishing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994), which "applied only intermediate scrutiny");

*Dale*, 530 U.S. at 659 (acknowledging that *Hurley* "applied traditional First Amendment analysis" rather than the intermediate-scrutiny test from *United States v. O'Brien*, 391 U.S. 367 (1968)); *see also PG&E*, 475 U.S. at 19–20 (plurality opinion) (applying strict scrutiny in a case of compelled speech).

This is especially true here because New York applies its public-accommodation law based on the content of Carpenter's speech. *See* Mem. of Law at 15–17 (ECF No. 3-1). It is her decision to create photographs commemorating weddings between a husband and a wife that triggers the demand to photograph same-sex unions. *See Turner*, 512 U.S. at 653 (explaining that the law in *Tornillo* was content based because the obligation to speak was "triggered" by the content of the compelled speaker's prior expression). That sort of content-based application of New York's law demands strict scrutiny. *Telescope Media Grp.*, 936 F.3d at 753 (explaining that Minnesota's public-accommodation law "exacts a penalty on the basis of the content of speech" by treating videographers' "choice to talk about one topic—opposite-sex marriages—as a trigger for compelling them to talk about a topic they would rather avoid—same-sex marriages") (quotation marks omitted).

Compelled speech is among the worst of all free-speech violations. *Id.* at 752 (recognizing that "the right to refrain from speaking" is "perhaps . . . more sacred" than "the right to speak freely"); *Chelsey Nelson Photography*, 479 F. Supp. 3d at 555 (noting that among free-speech violations "a viewpoint-based compulsion to speak on politics or religion is the worst of all"). In fact, the Supreme Court has recognized that compelled speech is "always demeaning" and that, to justify it, the government must

point to "even more immediate and urgent grounds than a law demanding silence." *Janus*, 138 S. Ct. at 2464 (quotation marks omitted). Accordingly, strict scrutiny should be applied with rigor under these circumstances.

Under strict scrutiny, New York must show that requiring Carpenter to photograph same-sex weddings "[1] furthers a compelling interest and [2] is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015). But New York cannot satisfy either of these requirements.

### B. Under the specific facts of this case, New York does not have a compelling interest in forcing Carpenter to create speech expressing messages that violate her religious beliefs.

Strict scrutiny requires a particularized analysis. It "look[s] beyond broadly formulated interests justifying the general applicability of government mandates" to see whether its standard "is satisfied through application of the challenged law" to "the particular" party. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006); *see, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 221–22 (1972) (assessing the government's specific interest in forcing Amish children to attend school from ages 14 to 16 rather than its general interest in mandating school attendance). As *Hurley* illustrates, the analysis here focuses not on the public-accommodation law's general purpose of preventing "denial[s] of access to (or discriminatory treatment in) public accommodations," but on its "apparent object" when "applied to [the] expressive activity" at issue. 515 U.S. at 578.

New York, therefore, must show that it has a compelling interest in forcing Carpenter to violate her conscience by creating photographs that commemorate and celebrate same-sex weddings. Unlike most applications of New York's public-accom-

modation law, this has the "apparent object" of forcing wedding photographers like Carpenter to create speech and thus to "modify the content of their expression." *Id.* But as *Hurley* said, permitting that would "allow exactly what the general rule of speaker's autonomy forbids." *Id.* New York thus cannot satisfy strict scrutiny because its particularized interest—namely, its interest in forcing Carpenter to engage in expression that she deems objectionable—is not compelling.

New York's interest in protecting the dignity of patrons does not change the analysis. *Hurley* established that this kind of concern, no matter its strength in other contexts, is *not* a compelling state interest when the harm is caused by a decision not to express a message. "[T]he point of all speech protection," *Hurley* explained, "is to shield just those choices of content that in someone's eyes are . . . hurtful." *Id.* at 574. Because the offensiveness of a decision to refrain from speaking cannot be the reason both "for according it constitutional protection" and for removing that protection, *Texas v. Johnson*, 491 U.S. 397, 409 (1989), these dignitary concerns are not a compelling basis for infringing this First Amendment freedom. *See Masterpiece Cakeshop*, 138 S. Ct. at 1746–47 (Thomas, J. concurring) (collecting cases).

Another part of the *Hurley* opinion is instructive on this point. The LGBT group there argued that the public-accommodation law advanced the State's "compelling interest" of "deter[ring] the deprivation of personal dignity." Brief for Respondent at 22, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995). But the Court necessarily rejected that interest as sufficient to compel

speech when it concluded that no "legitimate interest [had] been identified" to justify requiring speech. *Hurley*, 515 U.S. at 578.

Since strict scrutiny is particularized, a ruling for Carpenter leaves open the door for courts to reach different results if material circumstances change. For example, while the record here shows that many local photographers are willing to celebrate same-sex weddings, *see* Carpenter Decl. ¶¶ 301–21 (ECF No. 3-5), a State would have a stronger interest if the objecting photographer was the only one in that specific locality. *See Chelsey Nelson Photography*, 479 F. Supp. 3d at 560 n.133 (noting that the case might be different if a "same-sex couple lives in a small town without another photographer"). Courts will need to address these (and other) materially different circumstances if they arise, but the key point for now is that the outcome here will not dictate the outcome there.

### C.  The experiences of other States prove that New York cannot establish narrow tailoring.

To satisfy narrow tailoring, a State must demonstrate that it has no "less restrictive alternative." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). But Amici States can attest that less restrictive alternatives exist. The most obvious is that New York can continue to apply its public-accommodation law to the vast majority of commercial transactions but refrain from applying it to force its citizens to create custom speech expressing messages that they deem objectionable.

Recent history has proven that observing this constitutionally required restriction on public-accommodation laws is a workable alternative. Existing circuit-level precedent already explicitly prohibits some States from applying their public-

accommodation laws to compel a business owner to create custom speech, and no evidence suggests that the enforcement of those laws has been compromised in those States. For example, it has been clear for almost two years that the States in the Eighth Circuit cannot apply their public-accommodation laws to force businesses to create custom speech. *See Telescope Media*, 936 F.3d at 758 (holding that a State cannot apply its public-accommodation law to force a videographer to create films commemorating same-sex marriages). Despite this, Eighth Circuit States like Nebraska have not had any difficulty continuing to protect their citizens against invidious status-based discrimination.

More generally, other narrow exemptions to States' public-accommodation laws have not hampered their enforcement efforts. Consider just a few examples. For decades, Nebraska's public-accommodation law has exempted "private club[s]," Neb. Rev. Stat. § 20-138, and religious organizations that prefer "members of the same faith," Neb. Rev. Stat. § 20-137. And for the last five years, Mississippi has exempted businesses that "decline[] to provide . . . [p]hotography" services for "the solemnization, formation, [or] celebration" of a same-sex marriage because of their belief that "[m]arriage is . . . the union of one man and one woman." Miss. Code. Ann. §§ 11-62-3(a) & 11-62-5(5)(a). These exemptions are part and parcel of adopting a statutory scheme that balances a State's goal of eradicating specific forms of invidious discrimination with other important interests. That States have had these kinds of statutory exemptions for many years with no ill effects proves that recognizing the

narrow compelled-speech protection discussed above will not undo their public-accommodation laws.

Even New York has shown that applying narrow exemptions to its public-accommodation law does not destroy the law's effectiveness. For nearly a decade, New York has exempted from liability religious entities that decline "to provide services, accommodations, advantages, facilities, goods, or privileges for the solemnization or celebration of a marriage." N.Y. Dom. Rel. Law § 10-b(1). Yet that has not adversely affected the State's ability to enforce its public-accommodation law. Respecting the compelled-speech rights of the small category of business owners who create custom speech for a living will no more undermine New York's nondiscrimination interests than allowing this narrow class of religious organizations to abide by their beliefs on marriage. Thus, New York cannot satisfy narrow tailoring.

## <u>Conclusion</u>

For all the reasons explained in this brief, the Court should grant Plaintiffs' Motion for Preliminary Injunction.

Date: June 4, 2021.                    Respectfully submitted,

                                       */s/ Thomas Marcelle*

Thomas Marcelle                        Douglas J. Peterson
61 Devonshire Dr.                        Attorney General of Nebraska
Slingerlands, New York 12159           David T. Bydalek
tjmarccelle88@gmail.com                  Chief Deputy Attorney General
                                       James A. Campbell*
                                         Solicitor General
                                       OFFICE OF THE NEBRASKA ATTORNEY
                                         GENERAL
                                       2115 State Capitol
                                       Lincoln, Nebraska 68509
                                       (402) 471-2682
                                       jim.campbell@nebraska.gov

                                       *Attorneys for Amici States*

                                       **Pro hac vice application forthcoming*

20

## Additional Counsel for Amici States

Steve Marshall
Attorney General
State of Alabama

Leslie Rutledge
Attorney General
State of Arkansas

Derek Schmidt
Attorney General
State of Kansas

Daniel Cameron
Attorney General
Commonwealth of Kentucky

Jeff Landry
Attorney General
State of Louisiana

Lynn Fitch
Attorney General
State of Mississippi

Eric S. Schmitt
Attorney General
State of Missouri

Austin Knudsen
Attorney General
State of Montana

Dawn Cash
Acting Attorney General
State of Oklahoma

Alan Wilson
Attorney General
State of South Carolina

Ken Paxton
Attorney General
State of Texas

Sean D. Reyes
Attorney General
State of Utah

Patrick Morrisey
Attorney General
State of West Virginia

## <u>Certificate of Service</u>

I certify that on June 4, 2021, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system and that all participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Thomas Marcelle*
Thomas Marcelle