UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILEE CARPENTER, LLC d/b/a ) <br> EMILEE CARPENTER PHOTOGRAPHY, ) <br> and EMILEE CARPENTER, ) <br> ) <br> Plaintiffs, ) <br> ) <br> V.    ) <br> ) <br> LETITIA JAMES, IN HER OFFICIAL ) <br> CAPACITY AS ATTORNEY GENERAL ) <br> OF NEW YORK, *et al.,* ) <br> ) <br> Defendants. ) | CASE NO. 6:21 -cv- 06303 |

**PROPOSED BRIEF *AMICI CURIAE* OF THE
NEW YORKER'S FAMILY RESEARCH FOUNDATION AND
NEW YORKERS FOR CONSTITUTIONAL FREEDOMS
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………...……iii

INTEREST OF *AMICI CURIAE*……………………………………….…..1

CORPORATE DISCLOSURE……………………………………………...….2

INTRODUCTION……………………………………………………….…3

ARGUMENT……………………………………………………………….…6

    I.      The Constitution Prohibits New York State from Forcing
            Individuals to Participate in a Wedding Ceremony…………………..6

        A. The First Amendment's Free Exercise of Religion Clause
           Prohibits the State from Forcing Individuals to Participate
           in Wedding Ceremonies…………………………………………..8
        B. The First Amendment's Establishment Clause Prohibits
           the State from Forcing Individuals to Participate
           in Wedding Ceremonies……………………………………………10

    II.     The Constitution Demands that Individuals not be Punished
           for Exercising their Sincerely Held Religious Beliefs………………11

CONCLUSION…………………………………………………………...15

CERTIFICATE OF SERVICE……………………………………………15

ii

## TABLE OF AUTHORITIES

*Board of Education v. Barnette*,
    319 U.S. 624 (1943)……………………………………………..……8, 9, 14

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520, 523 (1993)……………………………………………………..13

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,*
    515 U.S. 557, 573 (1995)……………………………………………………6, 7

*Lee v. Weisman,*
    505 U.S. 577 (1992)……………………………………………………10, 11

*Masterpiece Cakeshop v. Colorado Civil Rights Commission,*
    138 S. Ct. 1719 (2018)……………………………………………..………..13, 14

*Obergefell v. Hodges*,
    135 S. Ct. 2584 (2015)…………………………………………….…….…...6, 7, 11

*Sherbert v. Verner,*
    374 U.S. 398 (1963)…………………………………………………………..12

*Thomas v. Review Bd. of Indiana Employment Security Div.*,
    450 U.S. 707 (1981)…………………………………………………………..12

*Wisconsin v. Yoder*,
    406 U.S. 205, 218 (1972)……………………………………………………12, 13

## INTEREST OF *AMICI CURIAE*

New Yorker's Family Research Foundation (NYFRF) is a nonprofit 501(c)3 organization based in the State of New York. NYFRF's mission is to educate, encourage, and equip Christians for effective participation in New York government. NYFRF is dedicated to promoting strong families, preserving religious liberty, and proclaiming freedom and justice. NYFRF supports individual New Yorkers' rights to practice their faith, to speak about their faith, and to live out their faith without undue government intrusion.

New Yorkers For Constitutional Freedoms (NYCF) is a nonprofit 501(c)4 organization based in the State of New York. NYCF exists for the purpose of influencing legislation and achieve public policy objectives that are consistent with Biblical ethics and with the principles of the United States Constitution. Founded in 1982, NYCF has spent decades serving as a statewide lobbying organization on behalf of the Christian community promoting the core values of the sanctity of life, strong families, and religious liberty. Towards those ends, NYCF has published numerous position papers on proposed bills by the NYS Legislature in an effort to inform and persuade Members to take God-honoring positions that include protecting fundamental liberties.

Both of these *Amici* have a mutual interest in the outcome of this matter due to their shared mission of promoting strong families and preserving religious

liberty. They have a common interest in protecting the First Amendment rights of artists to exercise their religion freely without undue government interference. Creative professionals should have the right to operate their businesses in a manner consistent with their deeply held convictions.

No party or their counsel participated in, or provided financial support for, the preparation and filing of this brief, nor has any entity other than *Amici* participated in or provided financial support for the brief.

## CORPORATE DISCLOSURE

NYFRF is a 501(c)3 nonprofit organization with the Internal Revenue Service. NYCF is a 501(c)4 nonprofit organization with the Internal Revenue Service. Neither entity has another corporation with any ownership therein. Neither entity has any financial stake in the outcome of this litigation.

## INTRODUCTION

"Till death do us part".

Nearly all agreements made with another person or entity are for a specified time period. Marriage, however, is different. In Western culture, it is common practice to state in wedding vows "till death do us part". The meaning in the vow is clear: only death, God's interference, can end a marriage. Marriage is a lifelong commitment, and to honor such a commitment, couples spend tens of thousands of dollars documenting their special day. Months, even years, are spent planning every single detail of the big day. Couples painstakingly research the best wedding vendors to artistically create their wedding wonderland, from the cake and flowers to the music and photography; the dress, venue, table settings and decorations have all been hand selected and perfectly crafted as an outward expression of the couple's uniqueness.

All people, irrespective of religious beliefs, consider the wedding day as one of the most momentous days in a person's life. It is an event to be celebrated. It follows that the wedding guests choose to voluntarily attend a wedding to convey a message of celebration about the couple and the marriage. People of faith view marriage as a holy and sacred act, and that God's design for marriage is a union between one man and one woman. For this reason, participation in a same-sex

marriage would not be a cause of celebration as it would convey a message contrary to their beliefs.

Accordingly, the State cannot force any individual to participate in a wedding ceremony. To compel a person to communicate messages that go against their conscience by cooperating in an act contrary to religious convictions is overtly intrusive and in violation of the First Amendment.

The facts of this case are simple. Photographer Emilee Carpenter (hereinafter 'Ms. Carpenter'), a Christian, holds a religious opposition to same-sex marriage. Ms. Carpenter believes that God created marriage as a union between one man and one woman. She believes that every wedding is inherently religious because the wedding solemnizes and initiates a sacred institution (marriage) created by God. Verified Complaint (VC) ¶69. To Ms. Carpenter, photographing a same-sex wedding is participating in a celebration that expresses a message contrary to her own most deeply held religious beliefs. Since Ms. Carpenter cannot separate her beliefs from her profession, she will not create, promote, or participate in anything that dishonors God. VC ¶ 113. A same-sex union is a relationship that is prohibited under God's law, and to participate in that union essentially renders a person of faith to be complicit in going against God's word. The State should never have the power to override an individual's declaration of faith and force them to violate their own conscience.

Yet this is exactly what New York State has done. The State has made it illegal for Ms. Carpenter to honor her deeply held religious beliefs through its public accommodations laws which ban sexual-orientation discrimination. N.Y. Exec. Law § 296.2(a); N.Y. Civ. Rts. Law §40-c. New York State demands that Ms. Carpenter photograph and write blogs celebrating and to participate in same-sex weddings just as she would in celebrating and participating in opposite-sex weddings, regardless of her religious convictions. The State erroneously characterizes nonparticipation in a same-sex wedding as against persons based on their sexual orientation (identity), rather than opposition to same-sex marriage (message). Ms. Carpenter freely photographs all customers, regardless of race or sexual orientation, including those that identify as LGBT. The crux of this issue, however, is the wedding ceremony itself. As an inherently religious and expressive event, her faith forbids her to celebrate something that goes against the teachings of the Bible. To photograph a same-sex wedding would amount to actual participation and celebration of the ceremony, in essence a personal endorsement for an event that is contrary to her faith. The State's public accommodations laws require Ms. Carpenter to either abandon the tenets of her faith or face prosecution under the law, essentially forcing her to choose between her religious beliefs and earning a livelihood. Such a choice is a direct violation of her Free Exercise Clause rights under the Constitution.

**ARGUMENT**

**I.      The Constitution Prohibits New York State from Forcing Individuals to Participate in a Wedding Ceremony**

There is no disputing the importance placed on weddings. In fact, the Supreme Court has made clear that "marriage is a keystone of our social order," and is a union of "transcendent importance," "sacred to those who live by their religions." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2594 (2015). Wedding ceremonies not only have personal significance and meaning to the couple and their guests, but also to those creative professionals who have become part of the wedding vendor team. Great care is taken to choose participants wisely. Couples tour several venues, attend tastings with multiple caterers and cake bakers, view the galleries of numerous photographers and videographers, interview florists to view portfolios of their work, listen to musicians, compile stationary samples, and spend months researching wedding vendors to fill in all of the other details that go into making the day a uniquely special celebration.  The decision on who to hire as part of the creative professional wedding vendor team is not made lightly.

Similarly, creative professional wedding vendors take great care in which weddings they choose to participate in and express their artistic talents. It goes against the very essence of individual freedom and liberty to take part in every opportunity that presents itself, especially when the opportunity compels them to convey an unacceptable message through their art. *See Hurley v. Irish-American*

*Gay, Lesbian & Bisexual Group of Boston,* 515 U.S. 557, 573 (1995) (a speaker has the autonomy to choose the content of his own message).

In the landmark civil rights case *Obergefell v. Hodges*, the Supreme Court held that same-sex couples have a fundamental right to marry 135 S. Ct. 2584 (2015). Mindful of the impact of this ruling on religious liberty, Justice Kennedy, writing on behalf of the majority, stated "it must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered." *Id.* at 2607.

It was obvious to the Court that religious objectors to same-sex marriage would need, and be given, First Amendment protection. Ms. Carpenter believes that a wedding is an inherently religious event, and that a same-sex wedding is religiously prohibited. The Religion Clauses forbid the State from forcing Ms. Carpenter to support a same-sex wedding.

### A. The First Amendment's Free Exercise of Religion Clause Prohibits the State from Forcing Individuals to Participate in Wedding Ceremonies

The Supreme Court in *Board of Education v. Barnette* considered whether the State had the power to make it compulsory for school children to salute the flag and pledge allegiance during WWII. 319 U.S. 624 (1943). Although the Court stated "that power exists in the State to impose the flag salute discipline upon school children in general," *Id.* at 635, it protected the religious objectors from compelled participation and punishment. *Id.* at 642. The fundamental issue in *Barnette* was whether the government has authority under the Constitution to compel participation in any kind of public ceremony, regardless of the person's religious beliefs. Writing for the majority, Justice Jackson held that the government had no such authority to infringe upon the individual's constitutionally protected rights to freedom of expression. And if there ever was a time for the government to compel participation, certainly requiring national unity during a time of war fits the bill. Yet the Court held otherwise. Justice Jackson famously wrote, "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Id.* at 624, 642. The Jehovah's Witnesses' religious objection to participate in the Pledge of Allegiance was protected, and despite the importance of the patriotic ceremony,

8

especially during a time of war, the Court recognized that "freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order." *Id.* at 642. We can differ on matters that are important to the vast majority, such as marriage. The deep-seated belief that marriage is a God-ordained union between a man and a woman is in direct contrast with same-sex marriage; yet the First Amendment grants us the freedom to disagree while protecting the liberties of both. This pivotal case has stood the test of time for generations by protecting rights of conscience from governmental overreach. True freedom demands that those in power allow others to think for themselves.

*Barnette* clearly established that the government may not compel participation in an expressive event, even during a time of national crisis and world war. It follows, in keeping with *Barnette,* that New York State cannot compel Ms. Carpenter to act contrary to her core religious beliefs, abandon her rights of conscience, and be forced to participate in a same-sex wedding, an event that communicates a clear message of celebration about a vision of marriage.

The right of same-sex couples to marry has been secured. Forcing religious objectors to participate in a same-sex wedding simply shifts the type of discrimination the state seeks to prevent, from one group (LGBT individuals) to another group (people of faith).

### B. The First Amendment's Establishment Clause Prohibits the State from Forcing Individuals to Participate in Wedding Ceremonies

In *Lee v. Weisman,* the Supreme Court was faced with the issue of compelled participation in a ceremony as Clergy members were invited to say a prayer at public school graduations. 505 U.S. 577 (1992). Rejecting the notion that attending the graduation is voluntary, the Court stated: "Even for those students who object to the religious exercise, their attendance and participation in the state-sponsored religious activity are in a fair and real sense obligatory," and "Everyone knows that in our society and in our culture high school graduation is one of life's most significant occasions." *Id.* at 586, 595. The Court went on to hold: "The sole question presented is whether a religious exercise may be conducted at a graduation ceremony in circumstances where, as we have found, young graduates who object are induced to conform. No holding by this Court suggests that a school can persuade or compel a student to participate in a religious exercise. That is being done here, and it is forbidden by the Establishment Clause." *Id.* at 599.

*Lee* makes clear that the government cannot compel individuals to participate in ceremonies to which they religiously object. It follows that New York State cannot force Ms. Carpenter to participate in a same-sex wedding ceremony which she religiously objects to. In fact, in the *Lee* case, the prayer portion of the graduation ceremony only lasted for two minutes, and the plaintiff didn't have to do anything but attend. Yet the Court determined that it could not be

10

characterized as "de minimis" and found that a "reasonable dissenter" could view the coerced act of standing, or even just remaining silent, as participation in the prayer. *Id.* at 593, 594. This is telling; since photographing a wedding lasts several hours, and entails active participation in the ceremony, it follows that the actions of the State in compelling Ms. Carpenter's participation would certainly constitute overreach considering the nature of the coerced conduct. The coercion on Ms. Carpenter is unquestioned: be forced to photograph same-sex weddings she believes are sinful or cease operating her photography business.

## II. The Constitution Demands that Individuals not be Punished for Exercising their Sincerely Held Religious Beliefs

Ms. Carpenter sincerely believes that marriage is a sacred union between a man and woman, and this belief is rooted in the tenets of her Christian faith. The *Obergefell* Court acknowledged, when referring to religious believers, "Marriage, in their view, is by its nature a gender-differentiated union of man and woman. This view long has been held—and continues to be held—in good faith by reasonable and sincere people here and throughout the world." 135 S. Ct. at 2594. Because of her strong convictions, she has two options. Either obey the State and be forced to photograph and celebrate same-sex marriage, despite her religious opposition and disobeying God's Biblical commands, or, disobey the State and face prosecution under the law including penalties and jail time. The common factor in both scenarios: her sincerely held religious belief about marriage.

11

New York's accommodations laws as applied to Ms. Carpenter, force her to express and support beliefs contrary to her religious faith as a condition of her occupation. Essentially, she is forced to choose between her religious beliefs and operating her business. Such a choice is a direct violation of her Free Exercise rights. In *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, the Supreme Court held the State cannot require a religious employee to choose between "fidelity to religious belief or cessation of work." 450 U.S. 707, 716 (1981). In *Sherbert v. Verner*, the Court examined South Carolina's attempt to deny unemployment compensation benefits to a Sabbatarian who declined to work on Saturday. In sustaining her right to receive benefits, the Court held: "The ruling disqualifying Mrs. Sherbert from benefits because of her refusal to work on Saturday in violation of her faith forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against her for her Saturday worship." 374 U.S. at 404 (1963). In deciding whether Amish children can be forced to go to school past the eighth grade, the Supreme Court ruled that the State cannot require an individual "to perform acts undeniably at odds with fundamental tenets of their religious beliefs," and "the State's requirement of compulsory formal education after the

eighth grade would gravely endanger if not destroy the free exercise of respondents' religious beliefs." *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972). These are the types of State action that the Free Exercise Clause forbids, and protects people of faith from penalties and persecution due to the exercise of their sincerely held religious beliefs.

In *Masterpiece Cakeshop v. Colorado Civil Rights Commission,* the Supreme Court considered whether the State could compel a cake artist to create custom wedding cakes celebrating same-sex marriages. 138 S. Ct. 1719 (2018). Similar to Ms. Carpenter, Jack Phillips (Phillips), a devout Christian, held a religious opposition to same-sex marriage. He argued that designing a custom cake for a same-sex wedding forced him to celebrate an event that violated his sincerely held religious beliefs. The Court found "the Colorado Civil Rights Commission's treatment of Phillips' case violated the State's duty under the First Amendment not to base laws or regulations on hostility to a religion or religious viewpoint. As such, the State violated his free exercise of religion. The government, consistent with the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U.S. 520,

*Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 138 S. Ct. 1719, 1721-22. Justice Gorsuch, joined by Justice Alito, wrote a separate concurrence and concluded that a custom designed cake for a same-sex wedding necessarily celebrated the union: "Words or not and whatever the exact design, it celebrates a wedding, and if the wedding cake is made for a same-sex couple it celebrates a same-sex wedding. Like "an emblem or flag," a cake for a same-sex wedding is a symbol that serves as "a short cut from mind to mind," signifying approval of a specific "system, idea, [or] institution." *West Virginia Bd. of Ed.* v. *Barnette*, 319 U.S. 624, 632. It is precisely that approval that Mr. Phillips intended to withhold in keeping with his religious faith." *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 138 S. Ct. 1719, 1738. This same reasoning supports Ms. Carpenter's position. New York State cannot compel and punish Ms. Carpenter for abiding by her deeply held religious beliefs and honoring God by refusing to create images and messages that support same-sex marriage.

14

## CONCLUSION

If the State of New York prevails in this case, people of faith will be coerced into abandoning their rights of conscience in order to earn a living. Constitutional protections for religious individuals will be lost to a hostile government. This notion is unconscionable. The Constitution demands religious liberty protection, and the Court must uphold said protections for the Plaintiff herein.

Dated:  May 30, 2021

                                                Respectfully Submitted,

                                                /s/ Beth A. Parlato

| | |
|---|---|
| Arthur G. Baumeister, Jr. | Beth A. Parlato |
| 174 Franklin Street | The Parlato Law Firm |
| Buffalo, New York 14202 | 10885 Main Street |
| abaumeister@bdlegal.net | Clarence, New York 14031 |
| | Phone: (716) 474-2876 |
| | Email: bparlato@parlatolaw.com |
| | *Counsel for Amici Curiae* |
| | *\*Pro Hac Vice Application Pending* |

## CERTIFICATE OF SERVICE

I certify that the foregoing brief was filed electronically using the Court's CM/ECF system and the parties and parties in interest are registered therein in this case and will be served electronically by same this date June 2, 2021.

                                                /s/ Beth A. Parlato
                                                Beth A. Parlato