UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EMILEE CARPENTER, LLC d/b/a
Emilee Carpenter Photography and
Emilee Carpenter,

                Plaintiffs,

      -vs-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York;
JONATHAN J. SMITH, in his official capacity
as Interim Commissioner of the New York State
Division of Human Rights; and
WEEDEN WETMORE, in his official capacity as
District Attorney of Chemung County,

                Defendants.

_____

**21-CV-6303**

## MEMORANDUM OF LAW IN SUPPORT OF
## STATE DEFENDANTS' MOTION TO DISMISS

**LETITIA JAMES**
New York State Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430

By:    */s/ Heather L. McKay*
       HEATHER L. MCKAY
       Assistant Attorney General
       SANDRA PULLMAN
       Senior Counsel, Civil Rights Bureau
       RICK SAWYER*
       Special Counsel, Civil Rights Bureau
       SWATI R. PRAKASH**
       Assistant Attorney General
       HANNAH BERNARD**
       Volunteer Assistant Attorney General
       * Application for admission forthcoming.
       ** Of counsel.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTS ALLEGED IN THE COMPLAINT ............................................................... 2

STANDARD OF REVIEW ........................................................................................ 5

ARGUMENT ............................................................................................................. 5

I.    The Court lacks jurisdiction over Plaintiff's claims. ...................................... 5

    A.   Plaintiff lacks standing, and her speculative claims are not ripe. ................... 5

II.   The Court lacks jurisdiction over claims against the Attorney General. ........... 7

III.  New York's antidiscrimination laws do not regulate religion. ....................... 9

    A.   Plaintiff has not pleaded any example of anti-religious hostility in the "interpretation"
         of New York's neutral accommodations laws ...................................................... 11

    B.   Plaintiff cannot show that State Defendants treat religion differently. ............ 12

    C.   State Defendants have not compelled Plaintiff's religious practice ................ 15

    D.   The "hybrid rights" doctrine is not recognized in the Second Circuit. ........... 16

IV.   New York's antidiscrimination laws do not impermissibly regulate speech. ........ 16

    A.   Denying service to same-sex couples is not an "editorial judgment." ............ 17

    B.   New York's restrictions on discriminatory advertising and unlawful policies are
         permissible ......................................................................................................... 20

    C.   New York's antidiscrimination laws do not compel Plaintiff to speak ............ 21

    D.   New York's antidiscrimination laws do not restrict Plaintiff's associational rights ...... 22

    E.   The laws survive any level of review ................................................................. 23

i

V.   Plaintiff's Due Process claim must be dismissed. ............................................................ 25

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*, 385 F.Supp.3d 1147 (D. Colo. 2019). ............................................. 25

*303 Creative LLC v. Elenis*, No. 16-cv-02372-MSK-CBS, 2017 WL 4331065 (D. Colo. Sept. 1, 2017) ............................................................................................................................. 5

*Anderson v. Treadwell*, 294 F.3d 453 (2d Cir. 2002) .................................................. 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 5, 12

*Battaglia v. Buffalo Niagara Intro., Inc.*, No. 10138581 (DHR Jan. 28, 2012) .......................... 13

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987) ........................ 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 5

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ......................................................... 22

*Burnette v. Carothers*, 192 F.3d 52 (2d Cir. 1999) ......................................................... 8

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980) ........................ 21

*Christian Legal Soc'y v. Martinez*, 561 U.S. 661 (2010) ................................................ 16, 17, 23

*Chrysafis v. James*, No. 21-cv-998 (JS)(ARL), 2021 WL 1405884 (E.D.N.Y. Apr. 14, 2021)..... 9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)............ 10, 11, 12

*Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194 (2d Cir. 2012)...................... 10

*Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013)...................................... 17, 18, 19

*Emp. Div. v. Smith*, 494 U.S. 872 (1990)................................................................. 10

*Ex parte Young*, 209 U.S. 123 (1908)........................................................................ 8

*Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144 (2017)........................................ 25

*Fields v. City of Tulsa*, 753 F.3d 1000 (10th Cir. 2014)................................................ 15

*Gifford v. McCarthy*, 137 A.D.3d 30 (3d Dep't 2016) ................................................ 13

*Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366 (S.D.N.Y. 2020)............................ 12

*HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286 (W.D.N.Y. 2010)..........................9

*Heart of Atlanta Motel, Inc. v. U.S.*, 379 U.S. 241 (1964) ...........................................24

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) .......................................................19

*Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008).................................................18

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ...........................................25

*Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535 (W.D.N.Y. 2018)......................................5

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995)......................22

*Jones v. Scheniderman*, 974 F. Supp. 2d 322 (S.D.N.Y. 2013)......................................9

*Jones v. Schneiderman*, 101 F. Supp. 3d 283 (S.D.N.Y. 2015)........................................6

*Katzenbach v. McClung*, 379 U.S. 294 (1964) ........................................................18

*Leebaert v. Harrington*, 332 F.3d 134 (2d Cir. 2003) ...................................................16

*Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994) ...........................................24

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S.Ct. 1719 (2018)..................passim

*Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241 (1974) ...........................................22

*Morgan v. Zaharo Cab Corp.*, No. 10117888, (DHR July 2, 2014) ...........................................13

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015) ...........................25

*Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50 (E.D.N.Y. 2018) .. 9

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003).........................................7

*Newdow v. Peterson*, 753 F.3d 105 (2d Cir. 2014)....................................................15

*Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400 (1968)...........................................10

*Norwood v. Harrison*, 413 U.S. 455 (1973) ........................................................2

*Obergefell v. Hodges*, 135 S.Ct. 2584 (2015)..........................................................12

*Orange Transportation Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311 (W.D.N.Y.

2020) .................................................................................................................... 5

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1 (1986) ....................... 22

*Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015) ........................................................ 10

*PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980) ........................................................ 22

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ..................................................................... 20

*Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir. 1991) ........................................... 18, 24, 25

*Riley v. Cuomo*, No. 2:17-cv-01631, 2018 WL 1832929 (E.D.N.Y. Apr. 16, 2018) .................... 9

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) .................................................................. 23, 24

*Robinson v. Sessions*, 260 F. Supp. 3d 264 (W.D.N.Y. 2017) .............................................. 6, 8

*Rumsfeld v. Forum for Acad. & Institutional Rts.*, 547 U.S. 47 (2006) ..................... 19, 20, 21, 22

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ................................................................ 16, 17

*Soules v. Dep't of Hous. & Urb. Dev.*, 967 F.2d 817 (2d Cir. 1992) ........................................ 20

*State v. Arlene's Flowers, Inc.*, 441 P.3d 1203 (Wash. 2019) .............................................. 12, 23

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......................................................... 6

*Telescope Media Grp. v. Lucero*, Civ. No. 16-04094 (JRT/LIB) (D. Minn. Apr. 21, 2021) ......... 6

*Town of Greece v. Galloway*, 572 U.S. 565 (2014) ................................................................ 15

*Trump v. Hawaii*, 138 S.Ct. 2392 (2018) .............................................................................. 12

*Updegrove v. Herring*, No. 1:20-cv-1141, 2021 WL 1206805 (E.D. Va. Mar. 30, 2021) ............ 6

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................................................ 16

*West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ............................................ 21

*Wooley v. Maynard*, 430 U.S. 705 (1977) ............................................................................. 21

*Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018) ................................................... 17

**Statutes**

N.Y. Civ. Rts. Law § 40-c ........................................................................................................ 4, 10

N.Y. Dom. Rel. Law § 10-b ......................................................................................................... 14

N.Y. Exec. Law § 296 .......................................................................................................... passim

N.Y. Exec. Law § 297 ..................................................................................................................... 8

N.Y. Exec. Law § 63 ....................................................................................................................... 9

## PRELIMINARY STATEMENT

State Defendants, New York's Division of Human Rights and Attorney General, protect all New Yorkers from discrimination in the marketplace through New York's public accommodations laws. The laws ensure that no New Yorker will be denied service because of the God they worship, their race, their gender, or the person they love. The laws carry serious penalties because the harm is serious. Without reciprocal respect in the marketplace for people with diverse beliefs and backgrounds, no individual can be guaranteed the dignity that all New Yorkers deserve by right. A society in which one vendor can turn away religious customers while another turns away LGBT customers is one where prosperity and dignity are guaranteed to none. So, State Defendants enforce the public accommodations laws neutrally, protecting both the Christian and the LGBT customer alike, to preserve the dignity of all.

As alleged in the Complaint, Plaintiff Emilee Carpenter is a wedding photographer with a deeply held religious belief that same-sex couples should not marry. She takes issue with New York's public accommodations laws because they require her company to offer the same photography services to same-sex couples that it offers to opposite-sex couples and forbid her from preemptively turning away same-sex customers.

But religious and philosophical objections "do not allow business owners…to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S.Ct. 1719, 1727 (2018). New York's public accommodations laws place the same burden on Plaintiff as on any other business offering its services to the public: a restriction against discrimination. The laws regulate Plaintiff's *conduct*—prohibiting her company from picking and choosing its customers based on protected characteristics—but say nothing about how she should worship

1

God or what she can say or think.

That doesn't stop Carpenter from calling State Defendants "government bureaucrats" who "demand ideological purity," D.E. 1 at 1–2, but such rhetoric does not make a case or controversy. Plaintiff has not identified a single action State Defendants have taken to abridge her freedom. She does not allege that she is under investigation or that investigation is imminent. Nor has she identified a single instance of State Defendants misusing their authority in any way to enforce a political or religious orthodoxy.

In the absence of an actual controversy, Plaintiff has built a house of cards, constructing an "interpretation" of the law that radically restricts her religious and speech rights and attributing it to State Defendants. But nothing can be further from reality. Despite alleging religious hostility, Plaintiff cannot muster one example—out of hundreds of annual investigations—where Defendants have throttled religion. Despite alleging differential treatment, Plaintiff offers no example where sexual orientation discrimination was permitted for secular but not religious reasons. And Plaintiff's efforts to transform conduct—refusing service to same-sex couples—into an "editorial judgment" protected by the First Amendment ignores decades of cases foreclosing that argument. Private discrimination "has never been accorded affirmative constitutional protections." *Norwood v. Harrison*, 413 U.S. 455, 470 (1973). The Court should not start doing so here.

## FACTS ALLEGED IN THE COMPLAINT

Plaintiff operates a public accommodation, Emilee Carpenter Photography, offering wedding photography services to the general public through its website. ¶¶ 26, 151, 157.[1] On the

---

[1] All paragraph citations refer to the Complaint, D.E. 1. This brief refers to Plaintiffs Emilee Carpenter and her businesses collectively as "Plaintiff."

website, Plaintiff promotes and advertises her company through a blog comprising photographs and writings. ¶¶ 89, 91.

Carpenter is a Christian who holds an honest belief that marriage is a sacred institution created by God exclusively for one man and one woman. ¶¶ 19, 69. She believes that because of that religious view, she cannot offer wedding photography to same-sex couples. ¶¶ 117–18. She believes that if she offered such services, she would be "coerced to remain silent and respectful during the ceremony and to express her approval of the wedding by rejoicing with and congratulating the couple and their family on the new union," which she does not want to do. ¶ 120.

Plaintiff alleges that it is her "policy and practice to...decline any photography requests celebrating…same-sex engagements or weddings—no matter who asks her." ¶ 123. She asserts that this policy is an "editorial judgment," akin to refusing to shoot in a "light, bright, and airy style," or to declining requests to shoot vampire-themed and polyamorous weddings. ¶¶ 111–16, 234, 329, 342. To carry out this policy, Plaintiff researches every request her company receives to determine whether the couple seeking her services is a same-sex couple. ¶¶ 50, 236–41. She does this by searching online or through her personal and professional network. ¶ 50. If she cannot confirm that the couple consists of one man and one woman, she ignores the request. ¶¶ 240–41. In the past year, Plaintiff claims to have ignored more than ten requests because she could not confirm whether the engagement or wedding was for one man and one woman or a same-sex couple. ¶ 242. Plaintiff further alleges that she received and ignored at least seven requests for same-sex wedding photography services in the last year. ¶ 266. Notably, Plaintiff does not allege that any couple has directly represented that they were seeking her services for a same-sex wedding or that she has declined such a request.

Plaintiff acknowledges that her actions could violate New York's antidiscrimination laws. D.E. 1 at 1–2, ¶¶ 160–61, 169, 173, 246, 258–29.[2] But she does not allege that any enforcement action has ever been taken against her or that she is the subject of a complaint or under investigation for any violation of New York law.

If not for New York's antidiscrimination laws, Plaintiff alleges that she would take additional actions motivated by her religious beliefs that would have the effect of discriminating against a protected class of persons. ¶ 256. First, she would adopt a policy of categorically denying requests for photographs that "promote any marriage besides marriage between one man and one woman." D.E. 1-1 § 2.7(e); ¶ 124. Second, through an agreement attached as Exhibit 1 to the Complaint, she would legally bind her company and any future members or employees to refuse such requests. ¶¶ 124, 229–31; D.E. 1-1. Third, she would make this policy known to the public by publishing on her company's website the statement "I can't photograph a same-sex or polyamorous wedding." ¶¶ 247–49; D.E. 1-2 at 1.

Plaintiff alleges that she competes on an "uneven playing field" with wedding photographers who comply with the law and photograph same-sex weddings. ¶ 310. She asserts that she will be better able to compete in the market by publicly refusing to photograph same-sex weddings and promoting her religious beliefs. ¶¶ 92, 94, 310. Finally, publicizing her

---

[2] Under the Human Rights Law, it is "an unlawful discriminatory practice" for any "place of public accommodation" to refuse service "because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status of any person," or to "publish…any written or printed communication…to the effect that any of the accommodations…shall be refused," or that the patronage of such persons "is unwelcome, objectionable or not acceptable, desired, or solicited." N.Y. Exec. Law § 296(2)(a). And under the Civil Rights Law, "No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability…be subjected to any discrimination in his or her civil rights…by any other person." N.Y. Civ. Rts. Law § 40-c(2).

discriminatory policy would allegedly save Plaintiff the "additional time and effort" of researching customers to exclude same-sex couples, which she claims causes lost profit and reputational damage. ¶¶ 254–55.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Orange Transportation Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 318 (W.D.N.Y. 2020), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint's allegations are generally taken as true, a plaintiff must provide "more than labels and conclusions…. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[B]are assertions" that a government defendant "adopted a policy because of, not merely in spite of, its adverse effects upon an identifiable group" must be rejected as conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (cleaned up).

## ARGUMENT

I.    **The Court lacks jurisdiction over Plaintiff's claims.**

A.    **Plaintiff lacks standing, and her speculative claims are not ripe.**

Preliminarily, this case does not satisfy Article III because Plaintiff lacks standing. It is proper to address this issue first "[b]ecause standing is a jurisdictional matter." *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 544 (W.D.N.Y. 2018) (Geraci, C.J.). By failing to identify an injury-in-fact, Plaintiff has not pleaded a live "case or controversy," and this Court lacks jurisdiction over her claims. *See, e.g.*, *303 Creative LLC v. Elenis*, No. 16-cv-02372-MSK-CBS, 2017 WL 4331065, at *6 (D. Colo. Sept. 1, 2017) (partially dismissing a similar lawsuit for standing); *Updegrove v. Herring*, No. 1:20-cv-1141, 2021 WL 1206805 (E.D. Va. Mar. 30,

2021) (same).[3]

Standing requires the plaintiff to plead an injury-in-fact. *Robinson v. Sessions*, 260 F.

Supp. 3d 264, 271–72 (W.D.N.Y. 2017) (Geraci, C.J.), *aff'd*, 721 F. App'x 20 (2d Cir. 2018). In a

*pre-enforcement* challenge, the plaintiff can only meet that requirement by pleading both an

intention to engage in prohibited conduct "affected with a constitutional interest," *and* the

existence of "a credible threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,

159 (2014) (quotation omitted). While "an actual arrest, prosecution, or other enforcement action

is not a prerequisite to challenging the law," the threatened enforcement must be "sufficiently

imminent." *Id.* at 158–59. Importantly, "[a] government official's statement that a statute

prohibits a type of conduct in the abstract—even where the official also states her intent to

enforce the statutory prohibition against the public generally—is usually insufficient, without

more, to establish that prosecution is imminent against a particular plaintiff." *Jones v.*

*Schneiderman*, 101 F. Supp. 3d 283, 291 (S.D.N.Y. 2015) (collecting cases). And "standing

theories that rest on speculation about the decisions of independent actors" do not meet

constitutional requirements. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 (2013).

Here, Plaintiff has only a speculative fear of enforcement and makes no allegations to

suggest a credible fear of investigation. Plaintiff does not allege any past enforcement actions

against her company. And Plaintiff has not pleaded facts suggesting that an investigation will be

started any time soon. Any enforcement relies on speculations about the actions of independent

---

[3] Standing is particularly important in a matter such as this to avoid "a smoke and mirrors case
and controversy…likely conjured up by Plaintiffs to establish binding First Amendment
precedent." *See, e.g.*, *Telescope Media Grp. v. Lucero*, Civ. No. 16-04094 (JRT/LIB), D.E. 82 at
6 (D. Minn. Apr. 21, 2021) (granting wedding videographer's unusual motion to voluntarily
dismiss its challenge to the Minnesota Human Rights Act with prejudice after it received the
state defendant's first set of discovery requests).

actors. Before New York could enforce the accommodations law against Plaintiff, the Division

of Human Rights would have to have reason to suspect discrimination and an investigator would

need to choose to go forward with an investigation, weighing both the specific facts and law at

issue. *See* ¶¶ 189–90. Plaintiff has given no reason to suspect her company has been identified

for investigation among the 2,300 New York-based wedding photographers reportedly listed on

the online service "Wedding Wire" alone. *See* ¶ 301. And Plaintiff's speculative assertion that

"testers" might uncover some wrongdoing is not plausible. ¶¶ 189–90. Thus, because Plaintiff's

theories "rest on speculation about the decisions of independent actors," *Clapper*, 568 U.S. at

414, she lacks standing to challenge the Accommodations, Publications, and Discrimination

Clauses.

Nor has Plaintiff come to the Court with ripe claims. "Ripeness is a justiciability doctrine

designed to prevent the courts, through avoidance of premature adjudication, from entangling

themselves in abstract disagreements over administrative policies, and also to protect the

agencies from judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of

Interior*, 538 U.S. 803, 807–08 (2003) (cleaned up). Without the complex weighing of facts and

law that would accompany any hypothetical enforcement decision, the Court is left with

"abstract disagreements" over enforcement of the antidiscrimination laws and should decline to

review them.

## II.     The Court lacks jurisdiction over claims against the Attorney General.

The standing principles discussed above apply with even more force to Plaintiff's claims

against the Attorney General, who is also entitled to Eleventh Amendment immunity. In addition

to the injury-in-fact described above, standing requires "the plaintiff [to] demonstrate a fairly

traceable causal connection between the plaintiff's injury and the complained-of conduct of the defendant," *Robinson*, 260 F. Supp. 3d at 271–72 (cleaned up), which Plaintiff cannot do against Attorney General James. Additionally, the Eleventh Amendment ordinarily prohibits a federal court from exercising jurisdiction over lawsuits brought by a private party against a state official, *see Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000), and the narrow exception carved out by *Ex parte Young*, 209 U.S. 123 (1908), does not apply here.

The Complaint does not establish any harm that is "fairly traceable" to the Attorney General. Plaintiff cites N.Y. Exec. Law § 297(1) to hold Attorney General James liable, but that provision allows "[a]ny person" at all to initiate a claim under the Human Rights Law. Although the Attorney General is mentioned by name, the law expressly confers the same authority on the Commissioner of Labor and the "chair of the commission on quality of care for the mentally disabled"—and any other resident aggrieved in the state. Since almost anybody can file such a complaint, this provision hardly establishes standing to sue Attorney General James in this case.

Not to be deterred, Plaintiff further alleges that "Attorney General James may also intervene in any hearing before the Division involving a complaint filed under the human rights law," citing "N.Y. Exec. Law § 297.4(4)(a)." ¶ 11. But no such provision exists. As best State Defendants can ascertain, Plaintiff may be referring to the clause in N.Y. Exec. Law § 297(4)(a), which provides only that "[t]he [DHR] hearing examiner may in his or her discretion permit any person who has a substantial personal interest to intervene as a party, and may require that necessary parties not already parties be joined." Notably, the Company does not cite a single example of the Attorney General having intervened in such a proceeding, which would be highly unlikely given the "substantial personal interest" requirement.

8

Nor can the Attorney General be held liable simply based on her authority under Executive Law § 63(12). As courts have repeatedly found, the Eleventh Amendment bars suit against the Attorney General absent *both* a "particular duty" to enforce a statute *and* a threat of enforcement. *See Riley v. Cuomo*, No. 2:17-cv-01631, 2018 WL 1832929, at *5 (E.D.N.Y. Apr. 16, 2018); *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), *aff'd* 448 F. App'x 79 (2d Cir. 2011); *see also Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018). The Attorney General's discretionary power to enforce state law under § 63(12) does not satisfy that test. *See HealthNow*, 739 F. Supp. 2d at 295 ("[T]he Attorney General's general authority to investigate and enforce the laws of New York State pursuant to Executive Law § 63(12) is not a sufficient connection to support an exception to sovereign immunity under *Ex parte Young* for the Attorney General to be a proper party in the instant case."); *Jones v. Scheniderman*, 974 F. Supp. 2d 322, 352–53 (S.D.N.Y. 2013) (holding Attorney General's general responsibility to enforce New York laws is insufficient connection for *Ex parte Young* exception); *Chrysafis v. James*, No. 21-cv-998 (JS)(ARL), 2021 WL 1405884, at *20 (E.D.N.Y. Apr. 14, 2021) (holding Attorney General's guidance regarding the interpretation of a law also insufficient). Accordingly, all claims against Attorney General James should be dismissed.

## III.    New York's antidiscrimination laws do not regulate religion.

Even assuming she can show standing, Plaintiff's religion claims fail at the first step: New York's antidiscrimination laws do not regulate or target religion, but rather discrimination. "[I]t is a general rule that [religious] objections do not allow business owners…to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." *Masterpiece Cakeshop*, 138 S.Ct. at 1727; *see also Newman v. Piggie*

*Park Enter., Inc.*, 390 U.S. 400, 402 n.5 (1968) (finding a free exercise challenge to a public accommodations law "patently frivolous"). When such a law is "neutral and generally applicable," State Defendants "need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 212 (2d Cir. 2012). A law is neutral, and its burdens are incidental, if the law does not "infringe or restrict practices *because of* their religious motivation." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 533 (1993) (emphasis added).

Plaintiff concedes, as she must, that New York's antidiscrimination laws are facially neutral toward religion. *See, e.g.*, ¶ 343; Pls.' PI Mot. at 21–25 (bringing an as-applied challenge). The laws target *all* discrimination in the marketplace based on *any* protected characteristic, regardless of motivation—whether secular or religious. *See* N.Y. Exec. Law § 296(2)(a); N.Y. Civ. Rts. Law § 40-c. Any impact on Plaintiff's religious exercise is therefore "incidental" to the laws' antidiscrimination purpose and permissible under the First Amendment. *See, e.g.*, *Commack*, 680 F.3d at 212 (upholding consumer protection law that applied to *any* manufacturer, secular or religious, labeling a product "kosher"); *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (per curiam) (upholding neutral public-school vaccination mandate).[4]

---

[4] Plaintiff's definition of religious "exercise" far exceeds anything recognized by the law. *Compare* ¶ 342 ("Plaintiffs exercise their religion…when they operate their business, adopt [business] policies…, exercise their editorial judgment…, honestly communicate with clients…, participate in wedding ceremonies, and celebrate marriages between one man and one woman.") *with Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990) (Religious exercise includes "assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation."). The Court need not define religious "exercise," however, because any alleged restriction on Plaintiff's exercise (no matter how broadly considered) is incidental to the challenged laws' non-discrimination purpose.

10

Nor can Plaintiff bring a proper as-applied challenge—because the laws have never been applied to her. Unlike in *Masterpiece Cakeshop*, there is no unfair enforcement action to attack. *See* 138 S.Ct. at 1732 (invalidating state enforcement action because it was not carried out with "religious neutrality"). Plaintiff does not allege that State Defendants have taken any action, opened any investigation, or mistreated her in any way because of her religion.

### A. Plaintiff has not pleaded any example of anti-religious hostility in the "interpretation" of New York's neutral accommodations laws.

Ignoring both the laws themselves and the lack of any enforcement, Plaintiff tries to find fault in the way State Defendants "*interpret*" the laws. ¶¶ 285–96 (emphasis added). But her allegations lack any factual basis. For one, Plaintiff has not identified any regulation or official guidance setting forth the anti-religious "interpretation" she alleges. *See* ¶¶ 174–227 (describing in detail Defendants' enforcement jurisdiction). Nor has she identified a history of enforcement actions enacting that "interpretation." State Defendants process hundreds of complaints every year—nearly 2,000 between 2012 and 2018, ¶ 219—but Plaintiff cannot name a *single* enforcement action, public statement, or other official act manifesting hostility to religion. *Cf. Masterpiece Cakeshop*, 138 S.Ct. at 1729–31; *Lukumi*, 508 U.S. at 534–38.[5]

In the absence of genuine hostility, Plaintiff tries to manufacture hostility using isolated quotations taken from briefs written or joined by State Defendants. But those quotations themselves disprove her allegations. A government may always enforce a generally applicable law if it acts with "religious neutrality." *Masterpiece Cakeshop*, 138 S.Ct. at 1728, 1732. "Hostility" requires, at a minimum, that government acted "because of, not merely in spite of"

---

[5] The opposite is true. State Defendants devote significant time and resources to protecting the free and open practice of religion, including by enforcing the public accommodations laws. *See* State Defs.' Prelim. Inj. Opp. at 5–7.

the effect on religion. *Lukumi*, 508 U.S. at 540 (cleaned up). None of the statements Plaintiff

cites violates that rule:

- *"[N]o matter* the sincerity of a business owner's religious beliefs," same-sex discrimination is unlawful. ¶¶ 286, 295 (emphasis added).[6]

- *"[E]ven based on* religious objections to same-sex marriage," a public accommodations law should be upheld. ¶ 287 (emphasis added) (cleaned up).

- *"[E]ven though* the policy was a result of the owners' specific religious belief," DHR fined a wedding venue for refusing to host same-sex weddings. ¶¶ 288–90 (emphasis added) (cleaned up).

The Supreme Court has rejected, as conclusory, allegations that government officials acted

"because of, not merely in spite of…adverse effects upon an identifiable group." *Iqbal*, 556 U.S.

at 681 (cleaned up). Plaintiff's error is worse: she *explicitly pleaded* that Defendants acted "in

spite of" the effect on religion. Her complaint itself absolves Defendants of any wrongdoing. *Id.*;

*Lukumi*, 508 U.S. at 540.[7]

**B.    Plaintiff cannot show that State Defendants treat religion differently.**

As a fallback, Plaintiff alleges that New York's public accommodations law disfavors

---

[6] The Complaint also misquotes the briefs it cites. Nowhere does the *303 Creative* brief equate "an objection" to same-sex marriage with discrimination. *See* ¶ 295. Rather, the cited pages explain that same-sex marriage "cannot reasonably be divorced from [a couple's] status of LGBTQ," a point the Supreme Court has repeatedly endorsed. Amici Br. for Attys. Gen., *303 Creative v. Elenis*, No. 19-1413 (10th Cir. Apr. 29, 2020) at 9–10; *see, e.g.*, *Masterpiece Cakeshop*, 138 S.Ct. at 1727; *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015). The Court can take judicial notice of such inaccuracies when a document is incorporated by reference. *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control[s.]").

[7] Carpenter also cites an isolated comment made on AG James's personal Twitter account concerning *Masterpiece Cakeshop*. ¶ 296. Not only does the tweet say nothing about religion, Plaintiff has alleged no connection to any official enforcement action or guidance undertaken by the AG's office. *Cf. Trump v. Hawaii*, 138 S.Ct. 2392, 2418 (2018); *see also State v. Arlene's Flowers, Inc.*, 441 P.3d 1203, 1217–18 (Wash. 2019) (holding any alleged "lack of neutrality" by Attorney General was irrelevant when Attorney General did not adjudicate discrimination claim).

religious as compared to secular conduct. But that is just grasping at straws. Once again, Plaintiff has not identified a *single* instance, out of hundreds of annual complaints, where sexual orientation discrimination was excused for secular, but not religious, reasons. And Plaintiff has not found a *single* exemption to the laws against sexual orientation discrimination that applies to secular but not religious objections. The exemptions Plaintiff did identify (in other parts of the statute) fall far short of establishing anti-religious bias.

Plaintiff baldly asserts that DHR has excused discrimination based on secular justifications but has not mustered a single instance where that is true. In the two cases she does cite, ¶ 291, DHR determined that *no discrimination had taken place*—not that discrimination was justified for secular reasons. *See Morgan v. Zaharo Cab Corp.*, No. 10117888, at 3–5 (DHR July 2, 2014) (concluding driver never saw claimant and thus had no way of knowing her race or faith); *Battaglia v. Buffalo Niagara Intro., Inc.*, No. 10138581, at 5–6 (DHR Jan. 28, 2012) (concluding dating company had rejected applicant because he lied on his application form, not his disability). These cases stand in stark contrast to the single example Plaintiff found of sexual orientation discrimination enforcement, where the owners of a wedding venue had a blanket policy of denying service to same-sex couples. ¶¶ 214, 290; *see also Gifford v. McCarthy*, 137 A.D.3d 30, 37 (3d Dep't 2016).

Nor has Plaintiff identified any secular exemptions to the Human Rights Law that could even remotely apply to her proposed course of conduct. Here, the pertinent inquiry is whether the law exempts a course of conduct for secular reasons but not religious ones. *See Lukumi*, 508 U.S. at 542–43. New York's law does not. Plaintiff identifies a smattering of limited public policy exemptions in other contexts, including employment, N.Y. Exec. Law §§ 296(1)(d) (employers may advertise bona fide job qualifications), 296(3)(b) (limited disability exemption if employer

shows "undue burden" based on three-factor test), 296(10)(a) (limited religious accommodation exemption for employers who can show "undue hardship" after engaging in "bona fide effort" to accommodate), and housing, N.Y. Exec. Law § 296(5)(a) (allowing owners to rent rooms to members of same sex). *See* ¶ 314. But those exemptions are not relevant here because they regulate completely different activity. Plaintiff is not asking for an exemption in providing employment or housing, only in offering wedding photography.

Plaintiff identified one exemption in the public accommodations law, but that, too, is inapplicable. Under that clause, a business may request an exemption to bar a person because of *sex* from a *place* of public accommodation based on "bona fide considerations of public policy" (such as preventing sexual assault). N.Y. Exec. Law § 296(2)(b). But that is not what Plaintiff proposes to do. She seeks to withhold *services* because of *sexual orientation*, an entire protected category under the Human Rights Law. N.Y. Exec Law § 296(2)(a). More than failing to plead unequal treatment in exempting such activity, she has not pleaded a single example of State Defendants *ever* permitting sexual orientation discrimination based on *any* reason—secular or religious.

Finally, New York law exempts religious organizations from conducting same-sex weddings, but that exemption does not and need not apply to Plaintiff. *See* ¶ 316; N.Y. Dom. Rel. Law § 10-b. Under that exemption, a religious order may decline to celebrate weddings that do not reflect its religion or denomination. N.Y. Dom. Rel. Law § 10-b. The exemption does not apply to for-profit businesses like Plaintiff's. Nor should it. As the Supreme Court explained, such exemptions properly respect *the clergy's* religious exercise but must be confined to religious orders or else "a long list of persons who provide goods and services for marriages and weddings might refuse to do so for gay persons, thus resulting in a community-wide stigma

14

inconsistent with the history and dynamics of civil rights laws." *Masterpiece Cakeshop*, 138
S.Ct. at 1727.

> **C.**     **State Defendants have not compelled Plaintiff's religious practice.**

Plaintiff's compelled-religion claim similarly falters at the outset—no law or regulation
forces Plaintiff to practice religion. She asserts that photographing a wedding equates to religious
practice—because it requires presence at a ceremony with religious significance—but courts
have repeatedly rejected similar claims where there is no compelled *participation* in prayer or
other religious observance. *See, e.g.*, *Town of Greece v. Galloway*, 572 U.S. 565, 587–88 (2014)
(plurality) (rejecting claim that mere presence at public prayer was coercive where public was
not "directed" to participate in prayers); *Newdow v. Peterson*, 753 F.3d 105, 109–10 (2d Cir.
2014) (rejecting claim that carrying currency reading "In God We Trust" was compelled
religious practice); *Fields v. City of Tulsa*, 753 F.3d 1000, 1010–12 (10th Cir. 2014) (an officer's
mere presence at religious center was not compelled religious practice).

New York law requires only that Plaintiff offer the same services to same-sex couples
that she offers to opposite-sex couples. It does not compel her to sing, pray, or worship with the
celebrants—or even to wish them well. *Cf.* ¶ 120. The compelled-practice doctrine does not
apply to her conduct simply because she chooses to define her religious practice to include
operating her business. Photographing a same-sex wedding is no more compelled religious
practice than photographing *any* wedding of a faith other than Plaintiff's, whether Catholic,
Jewish, Hindu, or Muslim. Photography does not oblige Plaintiff to worship the celebrants'
God—or to endorse their religious beliefs about marriage. She may sing or pray (or not) as her
own conscience dictates. On that, as on other matters of faith, New York law is silent.

**D.      The "hybrid rights" doctrine is not recognized in the Second Circuit.**

Plaintiff concedes that the "hybrid rights" doctrine is not recognized in the Second

Circuit. *See* D.E. 3-1 (Pls.' Mem. of Law) at 21–22; *Leebaert v. Harrington*, 332 F.3d 134, 143–

44 (2d Cir. 2003). Plaintiff's claim under this theory must therefore be dismissed.

**IV.    New York's antidiscrimination laws do not impermissibly regulate speech.**

Like her religion claims, Plaintiff's free speech claims fail because New York's

antidiscrimination laws are facially neutral and regulate conduct—discrimination—not speech.

*See* N.Y. Exec. Law § 296.2(a); N.Y. Civ. Rts. Law § 40-c-; *Masterpiece Cakeshop*, 138 S.Ct. at

1727. "[T]he First Amendment does not prevent restrictions directed at commerce or conduct

from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567

(2011). As in the religion context, "[a] regulation that serves purposes unrelated to the content of

expression is deemed neutral, even if it has an incidental effect on some speakers or messages

but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Public

accommodations laws like New York's are "textbook viewpoint neutral" and permissible under

the First Amendment. *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 694–95 (2010);

*Masterpiece Cakeshop*, 138 S.Ct. at 1727.

Plaintiff concedes that New York's antidiscrimination laws regulate conduct—illegal

discrimination. ¶ 158. She alleges, however, that "as interpreted" by the State Defendants or "as

applied" to her those laws violate her First Amendment rights. But, of course, Plaintiff has not

alleged any enforcement action against her. Nor has she pleaded a history of State Defendants

enforcing the law to suppress speech. Her assertions of how New York purportedly interprets

these laws are therefore largely speculative. But because the laws regulate conduct, not speech,

any restriction on Plaintiff's speech would be nothing more than an example of an *incidental* impact on speech, and permissible under the First Amendment. *Sorrell*, 564 U.S. at 567.

### A.       Denying service to same-sex couples is not an "editorial judgment."

To avoid the law's facial neutrality, Plaintiff asserts that her policy about *which customers to serve* is itself an aspect of her expression—speech, not conduct. She claims her categorical refusal to photograph same-sex weddings is an "editorial judgment," like shooting only in "warm, earthy, and moody tones" or refusing to photograph "Vampire--themed weddings." ¶¶ 111–16, 234, 329, 342. She asserts that her policy is not discrimination because she will photograph "those in the LGBT community"—just not if they are getting married. D.E. 1 at 1. In that way, Plaintiff hopes to analogize her choice of customers to an "editorial judgment" subject to First Amendment protection and beyond the reach of antidiscrimination laws.

But Plaintiff cannot transform the act of picking and choosing customers into speech just by enacting an "editorial" policy against same-sex weddings. Such a policy refuses service to LGBT customers on the basis of their protected characteristic. The law recognizes discrimination even when it is directed at what a person *does*, not just who a person *is. See, e.g., Christian Legal Soc'y* 561 U.S. at 689; *Elane Photography, LLC v. Willock*, 309 P.3d 53, 62 (N.M. 2013) (finding "no basis for distinguishing between discrimination based on sexual orientation and discrimination based on...committing to a person of the same sex"). Just as an "editorial" policy against photographing chuppahs would be a policy against serving Jews, so, too, a policy against photographing same-sex weddings is a policy against LGBT customers. *See, e.g., Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 125–27 (2d Cir. 2018) (rejecting the act-status distinction as applied to sexual orientation discrimination). Plaintiff could no more defend an "editorial" policy

refusing to photograph interracial marriages—even if she agreed to photograph white and Black people in different contexts. *See, e.g.*, *Holcomb v. Iona Coll.*, 521 F.3d 130, 138–39 (2d Cir. 2008).

Nor is it relevant that Plaintiff offers LGBT customers other services. The Human Rights Law prohibits denying *any* service based on a protected characteristic. N.Y. Exec. Law § 296(2). Such laws properly prevent businesses from offering services in grossly unequal ways. *See, e.g.*, *Katzenbach v. McClung*, 379 U.S. 294, 296–97 (1964) (prohibiting serving Black customers only through a take-out window); *Elane Photography*, 309 P.3d at 62 (rejecting a similar argument and concluding, "if a restaurant offers a full menu to male customers, it may not refuse to serve entrees to women, even if it will serve them appetizers."). An "editorial" policy restricting LGBT clients' menu of services—especially one excluding Plaintiff's primary service, wedding photography—is discriminatory conduct, not a mode of speech.

And it is clear from how Plaintiff enforces her "editorial" policy that it is conduct, not speech. She scours social media to determine whether potential clients are LGBT. ¶¶ 240–41. If she "determine[s]" that they are, she simply refuses service—without asking anything about the services they seek, including whether they are for a same-sex wedding. ¶¶ 238-42, 266. In other words, she uses the customer's perceived LGBT status as the *only* basis for denying service. The First Amendment protects the right to express views—not to pick and choose customers. "Invidious private discrimination…has never been accorded affirmative constitutional protections." *Norwood*, 413 U.S. at 470. Accordingly, courts have rejected such First Amendment arguments again and again—even when the business's services are primarily expressive. *See, e.g.*, *Ragin v. New York Times Co.*, 923 F.2d 995, 1003 (2d Cir. 1991) (rejecting newspaper's First Amendment challenge to prohibition on discriminatory advertising); *Hishon v.*

*King & Spalding*, 467 U.S. 69, 78 (1984) (rejecting law firm's First Amendment challenge to prohibition on discriminatory hiring); *Rumsfeld v. Forum for Acad. & Institutional Rts.* (*FAIR*), 547 U.S. 47, 61 (2006) (rejecting law school's First Amendment challenge to public funding requirement to host military recruiters); *Elane Photography*, 309 P.3d at 66 (rejecting a wedding photographer's challenge to same-sex antidiscrimination law).

The law is clear and its limitations modest. If Plaintiff's business offers wedding photography services to opposite-sex couples, it must offer the same services to same-sex couples. The fact that the final products are creative does not transform them into her own protected expression. Plaintiff may always create artistic statements advancing her views on religion and marriage; New York law protects such speech. But she cannot offer a service to the general public and then claim that her choice of customers is itself protected speech. Plaintiff's argument that her commercial services should be understood as a form of art entitled to an exemption from antidiscrimination regulations elides the distinction between private artistic expressions and services offered to the public on the open market. *See Elane Photography*, 309 P.3d at 66–67 ("It may be that [the plaintiff] expresses its clients' messages in its photographs, but only because it is hired to do so.").

No interpretation of New York's antidiscrimination laws that would *permit* Plaintiff to refuse to photograph the weddings of same-sex couples based on Plaintiff's "stylistic preference and artistic judgment," ¶ 111, would *prohibit* another photographer from refusing to photograph the weddings of elderly, disabled, active-duty military, or interracial couples for similar, purportedly aesthetic considerations. The exception Plaintiff requests would eventually swallow the entire law for broad swathes of "expressive" services.

**B.      New York's restrictions on discriminatory advertising and unlawful policies are permissible.**

Just as Plaintiff cannot discriminate in the services she offers, she also cannot adopt and advertise a policy of discrimination. Prohibitions on discriminatory advertising have repeatedly survived First Amendment challenges because they regulate conduct—discrimination—put into action through words. *See FAIR*, 547 U.S. at 62 (prohibiting a sign reading "White Applicants Only" hardly means that a law regulates "the employer's speech rather than conduct"); *Soules v. Dep't of Hous. & Urb. Dev.*, 967 F.2d 817, 824 (2d Cir. 1992) (holding that facially discriminatory ads and statements merit "straightforward treatment" and do not violate First Amendment); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) (holding that "words can…violate laws directed not against speech but against conduct (a law against treason, for example, is violated by telling the enemy the Nation's defense secrets)"); *see also Masterpiece Cakeshop*, 138 S.Ct. at 1728 (rejecting the notion that "purveyors of goods and services who object to gay marriages for moral and religious reasons…be allowed to put up signs saying 'no goods or services will be sold if they will be used for gay marriages'").

Plaintiff's proposed policy warrants "straightforward treatment" because it is unlawful discrimination beyond the reach of the First Amendment. *Soules*, 967 F.2d at 824. She wants to publicize a policy categorically refusing to photograph same-sex weddings and to bluntly state, "I can't photograph a same--sex…wedding." ¶¶ 124, 247–49.; D.E. 1-1 § 2.7(e); D.E. 1-2 at 1. Those statements are facially discriminatory because they deny service to one class of people, LGBT customers, based on their protected status. *Soules*, 967 F.2d at 824. Further, New York may also prohibit Plaintiff from making such statements on her blog, which promotes her business, ¶ 92, because the blog is commercial speech. *See Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2002) ("Even a communication combining commercial and noncommercial

elements, if it is an advertisement…is properly characterized as commercial speech."). As commercial speech, her website and blog cannot be used to promote an illegal policy of discrimination or used as a digital alternative to the shop sign reading "opposite-sex customers only." *See FAIR*, 547 U.S. at 62; *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980) (holding that commercial speech is not protected if it does not concern "lawful activity").

<div style="text-align:center">

**C.    New York's antidiscrimination laws do not compel Plaintiff to speak.**

</div>

Plaintiff's allegation that New York's antidiscrimination laws "effectively requires Emilee to accept projects promoting messages contrary to her beliefs," ¶ 234, is a "far cry" from the direct compulsion to speak or agree with certain concepts that is firmly prohibited by the First Amendment. *See FAIR*, 547 U.S. at 62 (citing *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) and *Wooley v. Maynard*, 430 U.S. 705, 717 (1977)). The pleadings make clear that the laws do not "dictate the content of [her] speech" or "force [her] to host or accommodate another speaker's message." *FAIR*, 547 U.S. at 62–64. Plaintiff's claims equate the laws' prohibitions on refusals to provide goods or services because of sexual orientation with being forced to speak a message or express an idea. *See* D.E. 1 at 1 ("New York laws require Emilee to create photographs and blogs celebrating same-sex marriage because she creates photographs and blogs celebrating opposite-sex marriage."). But in contrast to the plaintiffs in *Wooley* and *Barnette*, private citizens who were penalized for remaining silent rather than "speaking" a government-mandated message, the Complaint makes clear that Plaintiff is free to remain silent: New York's antidiscrimination laws impose no requirements to engage in any form of expression, and Plaintiff is free, in her private capacity, to create photographs and blogs exclusively featuring opposite-sex weddings or otherwise "celebrating" opposite-sex marriage.

<div style="text-align:center">

21

</div>

Plaintiff's allegation that the antidiscrimination laws "compel them to sell, publish, and disseminate speech they object to," ¶ 329, thus depends on drawing an equivalence between the services and goods Plaintiff provides to the public for a fee, with the expressive content of a publisher's own private message. The First Amendment prohibits the government from requiring a private speaker or publisher to "host or accommodate another speaker's message." *FAIR*, 547 U.S. at 63; *see Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256–57 (1974) ("right of reply" statute requiring newspapers to publish responses to their own editorial content infringed newspaper's speech); *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 13 (1986) (statute requiring electric utility to include specific content in billing envelopes mailed to customers impermissibly burdened utility's speech). But where the regulated entity is a public accommodation that "is not limited to the personal use of" the business owner, and the "speech" in question is "views expressed by members of the public…[that] will not likely be identified with those of the owner," and "no specific message is dictated by the State," then a law that simply requires that the public be afforded access to a public accommodation business does not burden that business's speech. *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980).

**D.    New York's antidiscrimination laws do not restrict Plaintiff's associational rights.**

Nor can the provision of goods and services on an equal basis to all customers be equated with forced association. Private organizations that engage in "expressive associations" have limited First Amendment rights to curate their membership in a manner consistent with their organizational identity. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 659 (2000) (state public accommodations law could not require membership-based private association to accept a gay person as a member); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 565 (1995) (public accommodations law could not require private citizens who organized a

parade to admit participants who expressed a message not of the private organizers' choosing). But the "expressive association" engaged in by these organizations—derived from constitutional rights to intimate relationships, *see Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545–46 (1987) and to the protection of "collective effort on behalf of shared goals," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)—has never been extended to businesses that hold their goods and services out to the general public for sale or hire.

Plaintiff attempts to analogize her commercial business to a private association, and to cast would-be customers as potential association members. Even if a sole proprietorship could somehow be compared to the Boy Scouts or to an annual parade, the customers who pay for and receive a service or good—typically without any interaction with other customers—are not members of that business, and prohibitions against excluding would-be customers based on protected status is not equivalent to prohibitions against excluding members of an expressive association. *See Arlene's Flowers*, 441 P.3d at 1226–27 and n.18 (rejecting florist's similar claim conflating "clearly commercial entities" with "membership organizations," such as the Boy Scouts) (quoting *Boy Scouts*, 530 U.S. at 657). Even if such a strained analogy could be made, it is difficult to see how providing goods and services to a customer associates a business with that customer's protected status.

E.     **The laws survive any level of review.**

In an attempt to subject New York's antidiscrimination laws to strict scrutiny, Plaintiff makes the tenuous claim that the laws are viewpoint-based regulations targeting their speech. ¶ 331. But public accommodations laws and other "all-comers" policies are "textbook viewpoint neutral" and reviewed under a lower level of scrutiny. *Christian Legal Soc'y*, 561 U.S. at 680, 694–95; *Roberts*, 468 U.S. at 623. Such laws are valid even if they disproportionately affect a

23

particular viewpoint; what matters is the government's intent in enacting the regulation. *See, e.g.*, *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 763 (1994) (holding that a regulation's disproportionate impact on a particular viewpoint does not render it "viewpoint based" but "suggests only that those in the group *whose conduct* violated the court's order happen to share the same opinion").

For these reasons, New York's public accommodation laws cannot be held to strict scrutiny. But they would survive even if they could be. The eradication of discrimination is a compelling governmental interest. *See, e.g.*, *Masterpiece Cakeshop*, 138 S.Ct. at 1728 (holding that the "law can protect gay persons, just as it can protect other classes of individuals, in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public"); *Roberts*, 468 U.S. at 624 (public accommodation law "reflects the State's strong historical commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services," a goal "which is unrelated to the suppression of expression" and "plainly serves compelling state interests of the highest order"); *Heart of Atlanta Motel, Inc. v. U.S.*, 379 U.S. 241, 250 (1964) (holding antidiscrimination laws "vindicate the deprivation of personal dignity" entailed by discrimination (cleaned up)).

And any restriction on Plaintiff's alleged First Amendment freedoms is minimal. Plaintiff is free, in her private capacity, to say whatever she wants about religion or marriage. The law requires only that she offer services to same-sex and opposite-sex couples on an equal footing and prohibits her from openly discriminating in her commercial speech. Such modest restrictions are permissible. *See, e.g.*, *Ragin*, 923 F.2d at 1003 (upholding ordinance prohibiting racial discrimination in advertising against newspaper's First Amendment challenge). And the laws are tailored narrowly with specific allowances for religious organizations that object to same-sex

24

marriage. *See* N.Y. Exec. Law § 296(11).

## V. Plaintiff's Due Process claim must be dismissed.

New York's Executive Law § 296(2)(a) does not violate the Fourteenth Amendment's Due Process Clause for vagueness. *See* ¶¶ 359–65. It prohibits a "written or printed communication" that a person's patronage is "unwelcome, objectionable, or not acceptable, desired or solicited" because of a protected characteristic, including sexual orientation. N.Y. Exec. Law § 296.2(a). A person of ordinary intelligence can understand what it means when a business says someone is "unwelcome." *See, e.g.*, *Ragin*, 923 F.2d at 1002 (rejecting a vagueness challenge to a similar provision of the Fair Housing Act); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 267–68 (2d Cir. 2015) (denying a vagueness challenge to, among other things, the words "copies or duplicates" and "interfere"). But the Court need not even reach that question. *See 303 Creative LLC v. Elenis*, 385 F.Supp.3d 1147, 1156 (D. Colo. 2019). "A plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010). Under any interpretation of N.Y. Exec. Law § 296.2(a), Plaintiff's categorical statement denying photography services to same-sex couples is forbidden. Because the law unambiguously proscribes this behavior, it is not vague as to Carpenter, and she cannot successfully challenge it on vagueness grounds. *See Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151–52 (2017). This claim must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its entirety. In the event any claims survive, State Defendants respectfully request 30 days to submit an answer.

Dated: June 16, 2021

LETITIA JAMES
Attorney General for the State of New York
*Attorney for State Defendants*


s/ Heather L. McKay
HEATHER L. MCKAY
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430
heather.mckay@ag.ny.gov