# EXHIBIT A

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF NEW YORK

EMILEE CARPENTER, LLC d/b/a EMILEE
CARPENTER PHOTOGRAPHY, and
EMILEE CARPENTER,

                                    *Plaintiffs*,                    Case No. 6:21-CV-06303-FPG

          v.

LETITIA JAMES, in her official capacity as
Attorney General of New York, *et al.*,

                                    *Defendants*.

**PROPOSED BRIEF OF *AMICI CURIAE* NEW YORK CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OPPOSING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

GABRIELLA LARIOS                     LINDSEY KALEY*
ROBERT HODGSON                       RICCA PRASAD *
New York Civil Liberties Union Foundation   American Civil Liberties Union Foundation
125 Broad Street, 19th Floor         125 Broad Street, 18th Floor
New York, NY 10004                   New York, NY 10004
Phone: (212) 607-3317                Phone: (212) 549-2500
Fax: (212) 607-3318                  lkaley@aclu.org
glarios@nyclu.org                    rprasad@aclu.org
rhodgson@nyclu.org

*Counsel for Amicus Curiae*

* Motion to proceed *Pro Hac Vice* forthcoming


Dated: June 23, 2021
         New York, N.Y.

# <u>TABLE OF CONTENTS</u>

STATEMENT OF *AMICI CURIAE* ............................................................. 1

SUMMARY OF ARGUMENT ....................................................................... 1

ARGUMENT .................................................................................................. 4

I.    Refusing to Provide Photography Services to Same-Sex Couples that Are Offered to the Public at Large Is Discrimination Based on Sexual Orientation and Violates the Antidiscrimination Laws. ................................................................................ 4

II.    The Free Speech Clause Does Not Authorize a Business to Engage in Discrimination Prohibited by a Regulation of Conduct that Incidentally Affects Expression. ........................................................................................................ 6

    A.    The Antidiscrimination Laws Regulate Commercial Conduct and Affect Expression Only Incidentally. .............................................................. 6

        1.    Generally applicable laws that regulate commercial conduct and do not target speech receive minimal First Amendment scrutiny. ............................ 6

        2.    The Antidiscrimination Laws are content- and viewpoint-neutral, so there is no reason to apply strict scrutiny. ................................................. 9

    B.    Any "Compelled Expression" Is Incidental to the Law's Regulation of the Conduct of Sales and Does Not Alter the First Amendment Analysis. ................ 11

    C.    The Free Speech Clause Does Not Protect a Public Accommodation's Right to Publish Its Unlawful Policy of Discrimination. ..................................... 14

III.    The Antidiscrimination Laws are Fully Consistent with the Religion Clauses of the First Amendment. ................................................................................ 14

IV.    The Antidiscrimination Laws Satisfy Even Strict Scrutiny. .......................... 16

    A.    New York Has a Compelling Interest in Eradicating Discrimination. ................ 16

    B.    Uniform Enforcement of the Antidiscrimination Laws Is the Least Restrictive Means for Furthering the State's Compelling Interest. ......................... 19

CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

*303 Creative LLC v. Elenis*,
    No. 16-cv-02372, 2017 WL 4331065 (D. Colo. 2017)......................................................18

*Andrews v. Blick Art Materials, LLC*,
    268 F. Supp. 3d 381 (E.D.N.Y. 2017) ................................................................................8

*Associated Press v. Nat'l Labor Relations Bd.*,
    301 U.S. 103 (1937)............................................................................................................7

*Associated Press v. United States*,
    326 U.S. 1 (1945)................................................................................................................7

*Athenaeum v. Nat'l Lawyers Guild, Inc.*,
    No. 653668/16, 2018 WL 1172597 (N.Y. Sup. Ct. Mar. 06, 2018) ...................................5

*Battaglia v. Buffalo Niagara Introductions, Inc.*,
    No. 10138581, slip op. (N.Y. State Div. of Hum. Rts. Jan. 28, 2012) .............................19

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*,
    481 U.S. 537 (1987)............................................................................................................9

*Brush & Nib Studio, LC v. City of Phoenix*,
    448 P.3d 890 (Ariz. 2019)......................................................................................... passim

*Burns v. Martuscello*,
    890 F.3d 77 (2d Cir. 2018)................................................................................................11

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014)..........................................................................................................16

*Chelsey Nelson Photography LLC v. Louisville/Jefferson City Metro Gov't*,
    No. 19-cv-851, 2020 WL 4745771 (W.D. Ky. Aug. 14, 2020)......................10, 12, 17, 18

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*,
    561 U.S. 661 (2010)............................................................................................................9

*Claybrooks v. Am. Broad. Companies*,
    898 F. Supp. 2d 986 (M.D. Tenn. 2012)...........................................................................12

*Doe v. Phillips*,
    81 F.3d 1204 (2d Cir. 1996)..............................................................................................15

*Elane Photography, LLC v. Willock*,
    309 P.3d 53 (N.M. 2013) ......................................................................................... passim

*Emp't Div., Dep't of Human Res. of Oregon v. Smith*,
    494 U.S. 872 (1990)...........................................................................................3, 15

*Evergreen Ass'n, Inc. v. City of New York*,
    740 F.3d 233 (2d Cir. 2014)..............................................................................11

*Expressions Hair Design v. Schneiderman*,
    137 S. Ct. 1144 (2017).......................................................................................13

*Fulton v. City of Philadelphia*,
    No. 19-123, slip op. (U.S. June 17, 2021) ..................................................15, 19

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949)...............................................................................................6

*Gifford v. McCarthy*,
    23 N.Y.S.3d 422 (N.Y. App. Div. 2016) .............................................................18

*Heart of Atlanta Motel, Inc. v. United States*,
    379 U.S. 241 (1964)......................................................................................17, 18

*Heckler v. Mathews*,
    465 U.S. 728 (1984).............................................................................................17

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984)............................................................................................2, 7

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995)..............................................................................2, 9, 10, 11

*Jian Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014).....................................................................6

*Katzenbach v. McClung*,
    379 U.S. 294 (1964)...............................................................................................2

*Lee v. Weisman*,
    505 U.S. 577 (1992).............................................................................................15

*Legal Services Corp. v. Velazquez*,
    531 U.S. 533 (2001)...............................................................................................7

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994)...............................................................................................9

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
  138 S. Ct. 1719 (2018) ......................................................................................... passim

*Messenger v. State*,
  41 N.W. 638 (Neb. 1889) ................................................................................................3

*Miami Herald Publ'g Co. v. Tornillo*,
  418 U.S. 241 (1974) .................................................................................................7, 12

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
  460 U.S. 575 (1983) ........................................................................................................7

*New Hope Family Services, Inc. v. Poole*,
  966 F.3d 145 (2d Cir. 2020) .........................................................................................13

*Newman v. Piggie Park Enterprises, Inc.*,
  390 U.S. 400 (1968) ........................................................................................................2

*Norwood v. Harrison*,
  413 U.S. 455 (1973) ........................................................................................................7

*Ohralik v. Ohio State Bar Ass'n*,
  436 U.S. 447 (1978) ........................................................................................................6

*Pac. Gas & Electric Co. v. Pub. Utilities Comm'n of Cal.*,
  475 U.S. 1 (1986) ..........................................................................................................12

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
  413 U.S. 376 (1973) ......................................................................................................14

*R.A.V. v. City of St. Paul, Minn.*,
  505 U.S. 377 (1992) ........................................................................................................5

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
  487 U.S. 781 (1988) ......................................................................................................20

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ...........................................................................................9, 16, 17

*Romer v. Evans*,
  517 U.S. 620 (1996) ........................................................................................................1

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
  547 U.S. 47 (2006) ............................................................................................8, 13, 14

*Scheiber v. St. John's Univ.*,
  84 N.Y.2d 120 (N.Y. 1994) ..................................................................19

*Swanner v. Anchorage Equal Rights Comm'n*,
  874 P.2d 274 (Alaska 1994)..........................................................17, 20

*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ..........................................................................15

*Telescope Media Group v. Lucero*,
  936 F.3d 740 (8th Cir. 2019) ......................................................... passim

*Updegrove v. Herring*,
  No. 20-cv-1141, slip op. (E.D. Va. Mar. 30, 2021) ...........................18

*United States v. Burke*,
  504 U.S. 229 (1992)................................................................................20

*United States v. O'Brien*,
  391 U.S. 367 (1968).................................................................................6

*Washington v. Arlene's Flowers, Inc.*,
  441 P.3d 1203 (Wash. 2019)...........................................................16, 18

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989)...............................................................................10

*Warner v. Orange Cty. Dep't of Probation*,
  115 F.3d 1068 (2d Cir. 1996).................................................................15

*Wisconsin v. Mitchell*,
  508 U.S. 476 (1993).................................................................................9

*Wooley v. Maynard*,
  430 U.S. 705 (1977)...............................................................................11

## Statutes, Rules and Regulations

N.Y. Civ. Rights Law § 40-c ..................................................................1, 4

N.Y. Exec. Law § 296.2(a) .....................................................................1, 4

N.Y. Exec. Law § 296.2(b) .......................................................................19

42 U.S.C. § 3604(c) (1988)........................................................................14

v

## STATEMENT OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with approximately two million members dedicated to defending the principles of liberty and equality embodied in the Constitution. The New York Civil Liberties Union ("NYCLU") is one of the ACLU's statewide affiliates with more than 112,000 members. As organizations that advocate for First Amendment liberties as well as equal rights for lesbian, gay, bisexual, transgender, and queer ("LGBTQ") people, the ACLU, NYCLU, and their members have a strong interest in the application of proper standards when evaluating constitutional challenges to civil rights laws. The NYCLU and ACLU have appeared as either counsel-of-record or *amicus curiae* in a number of cases nationwide in which businesses providing wedding-related services challenge public accommodations on First Amendment grounds, as well as cases implicating related issues in New York.

## SUMMARY OF ARGUMENT

Plaintiffs Emilee Carpenter, LLC and Emilee Carpenter (together, "the Photography Studio") seek a constitutional right to operate a business open to the public that denies equal service to same-sex couples, in violation of the antidiscrimination provisions of New York's Human Rights Law and Civil Rights Law (together, "the Antidiscrimination Laws" or "the Laws"). N.Y. Exec. Law § 296.2(a); N.Y. Civ. Rights Law § 40-c. Like other public accommodation laws, the Antidiscrimination Laws bar businesses that are open to the public from refusing service to customers based on certain aspects of the customers' identities—including, in New York, their sexual orientation and gender identity. *Id*. Such laws help ensure LGBTQ individuals have equal opportunity to participate in the "transactions and endeavors that constitute ordinary civic life in a free society." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

New York unquestionably has the authority to prohibit businesses within its borders from discriminating against LGBTQ people in the sales of goods and services to the general public. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995). The Photography Studio argues, however, that because the services it sells are "expressive" and because Ms. Carpenter objects to marriage for same-sex couples on religious grounds, the First Amendment entitles the Photography Studio to discriminate based on sexual orientation. What is more, the Photography Studio seeks a right to post on its website and tell prospective customers that it will not provide the same services to same-sex couples in violation of New York law.

The Supreme Court has never accepted arguments by businesses open to the public that the First Amendment allows them to avoid complying with antidiscrimination laws. *See Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 n.5 (1968) (citing *Katzenbach v. McClung*, 379 U.S. 294 (1964)). Nor can businesses evade antidiscrimination laws and trigger heightened scrutiny by characterizing their services as "expressive conduct." The Antidiscrimination Laws are content- and viewpoint-neutral; they do not restrain or alter the exchange of ideas; and they do not compel businesses to speak a state-selected message. The implications of the Photography Studio's arguments are far-reaching. If the Free Speech Clause were to bar a state from applying an antidiscrimination law to the provision of wedding photography because it involves expression, then photography companies could refuse to serve interracial or interfaith couples, women, Muslims, Black people, or any other group the company's owner objects to serving. *Brush & Nib Studio, LC v. City of Phoenix* ("*B&N*"), 448 P.3d 890, 938–39 (Ariz. 2019) (Timmer, J., dissenting). And under the Photography Studio's proposed rule, because numerous sellers provide goods or services that involve expression (including stationers, printers, and other producers of custom products), a

2

wide range of businesses could claim a First Amendment exemption from generally applicable regulations of commercial conduct.

The Photography Studio's free exercise claim fails for the same reasons as its free speech claim. Under *Employment Division, Department of Human Resources of Oregon v. Smith*, the Antidiscrimination Laws are valid, facially neutral, and generally applicable regulations. 494 U.S. 872, 879 (1990). There is no indication that the Laws cannot or would not be applied neutrally to the Photography Studio. Ms. Carpenter's "religious and philosophical objections" to the marriages of same-sex couples do not entitle her business "to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018). Granting such an exemption, even for sincere religious objections, would severely undermine the Laws' purpose of protecting equal opportunity to participate in the marketplace. *See id.*

Finally, even if strict scrutiny applied to the Photography Studio's free speech and free exercise claims, applying the Antidiscrimination Laws to the Photography Studio's provision of commercial services would still be constitutional. The Laws further New York's compelling interest in eradicating invidious discrimination and are the least restrictive means of achieving that goal. As the Supreme Court of Nebraska explained in one of the earliest public accommodation decisions, a barber opening a shop to the public cannot say "You are a slave, or a son of a slave; therefore I will not shave you." *Messenger v. State*, 41 N.W. 638, 639 (Neb. 1889) (internal quotation marks omitted). The Photography Studio's asserted First Amendment objections run counter to the basic principle, reflected in over a century of public accommodation laws, that all people should receive equal service in American commercial life.

## ARGUMENT

I. **REFUSING TO PROVIDE PHOTOGRAPHY SERVICES TO SAME-SEX COUPLES THAT ARE OFFERED TO THE PUBLIC AT LARGE IS DISCRIMINATION BASED ON SEXUAL ORIENTATION AND VIOLATES THE ANTIDISCRIMINATION LAWS.**

Although framed as a constitutional challenge to the Antidiscrimination Laws, the Photography Studio's brief avows that its proposed course of conduct is not discriminatory. The Photography Studio argues its refusal is not based on sexual orientation because it will provide *other* services to same-sex couples; it just will not photograph their weddings. Pls.' Br. 2, 13–14, ECF 3. But the Antidiscrimination Laws—like other public accommodation laws—do not merely prohibit a complete denial of *all* services to a customer. Rather, the Laws prohibit businesses from denying "*any* of the accommodations, advantages, facilities and privileges" made available to the general public to a customer because of their sexual orientation or other protected characteristic. N.Y. Exec. Law § 296.2(a) (emphasis added); *see also* N.Y. Civ. Rights Law § 40-c. As the Supreme Court of New Mexico explained in a virtually identical case that is noticeably absent from the Photography Studio's briefing, "[I]f a restaurant offers a full menu to male customers, it may not refuse to serve entrees to women, even if it will serve them appetizers." *Elane Photography, LLC v. Willock*, 309 P.3d 53, 62 (N.M. 2013).

The Photography Studio objects to providing a *service* to an entire class of customers: same-sex couples seeking photography services for their weddings. The Photography Studio asserts that it is denying services based on the message of a same-sex couples' wedding, but the so-called message is just the identity of the couple being served. If a business needs to know *who* the service is for to decide whether it will provide those services, that is identity-based discrimination. A company refusing to provide wedding photography for interracial or Jewish couples would be discriminating based on race or religion, not making a decision about any

"message" inherent in the product itself, even if the company said it did so because it disapproved of those unions. *See Telescope Media Grp. v. Lucero* ("*TMG*"), 936 F.3d 740, 769 (8th Cir. 2019) (Kelly, J., concurring in part and dissenting in part); *B&N*, 448 P.3d at 938 (Timmer, J., dissenting); *Elane Photography*, 309 P.3d at 78 (Bosson, J., concurring). "Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 390 (1992).

The Photography Studio's hypotheticals about what will follow from permitting New York to enforce its Antidiscrimination Laws, *see* Pls.' Br. 15, either do not actually implicate the Laws or misrepresent the relevant case law. For example, the Photography Studio's claim that, in *Athenaeum v. National Lawyers Guild, Inc.*, No. 653668/16, 2018 WL 1172597 (N.Y. Sup. Ct. Mar. 06, 2018), a New York court upheld the Human Rights Law to "force progressive bar associations to publish advertisements promoting Israel," Pls.' Br. 15, is false. The advertisement did not promote Israel; it "simply stated that Plaintiff congratulated the honorees at the dinner and listed an address," which was "not so different from many of the others appearing in the [publication]." The opinion allowed a discrimination claim under the law to proceed finding that there was a colorable claim that the bar association violated the law because it "refused the advertisement solely because Plaintiff was an Israeli corporation"—who the advertiser was, not what the advertisement said—and it was "questionable whether there is a likelihood the Guild would be perceived as endorsing any Israeli government policies as opposed to merely complying with antidiscrimination laws." *Athenaeum* 2018 WL 1172597 at *2, *4. Like the bar

association, the Photography Studio impermissibly seeks to discriminate against a protected class

by refusing them the same services it offers others.[1]

## II.   THE FREE SPEECH CLAUSE DOES NOT AUTHORIZE A BUSINESS TO ENGAGE IN DISCRIMINATION PROHIBITED BY A REGULATION OF CONDUCT THAT INCIDENTALLY AFFECTS EXPRESSION.

### A.  The Antidiscrimination Laws Regulate Commercial Conduct and Affect Expression Only Incidentally.

When confronted with First Amendment challenges to neutral laws that regulate

commercial conduct and affect speech only incidentally, the Supreme Court has applied minimal

scrutiny and upheld the law.[2]

1.   Generally applicable laws that regulate commercial conduct and do not target speech receive minimal First Amendment scrutiny.

"[I]t has never been deemed an abridgement of freedom of speech or press to make a

course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried

out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice

Co.*, 336 U.S. 490, 502 (1949); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456

(1978). The First Amendment is not infringed when the government enforces a generally

applicable regulation of commercial conduct against an "expressive" business. Even newspaper

---

[1] Likewise, the Photography Studio misconstrues the holding of *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 443 (S.D.N.Y. 2014), which declined to require a search engine to promote political statements critical of the Chinese government, where the search engine would not promote such messages regardless of the identity of the poster. *See* Pls.' Br. at 15. Nor would a baker need to include homophobic text on a cake if the baker would not write that text for any customer, regardless of identity. Further, the Antidiscrimination Laws do not make "political belief" a protected class, so the Laws do not require Democratic speechwriters to write speeches for Republican politicians if they would refuse to publish such messages regardless of the requester's identity.

[2] Even outside the commercial context, the Supreme Court has applied the deferential test set forth in *United States v. O'Brien* to determine whether regulation of expressive conduct violates the Constitution. 391 U.S. 367 (1968). Whether the Antidiscrimination Laws are evaluated under the commercial conduct cases or *O'Brien*, the result is the same: The Laws are permissible regulations of conduct that do not violate the First Amendment.

publishers, whose very product is protected speech, can be subject "to generally applicable economic regulations" without implicating the First Amendment. *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 581 (1983). "The fact that the publisher handles news while others handle food does not . . . afford the publisher a peculiar constitutional sanctuary in which he can with impunity violate laws regulating . . . business practices." *Associated Press v. United States*, 326 U.S. 1, 7 (1945); *Associated Press v. Nat'l Labor Relations Bd.*, 301 U.S. 103, 132 (1937). In contrast, a law specifically requiring a newspaper to print particular content (or forbidding the same) directly intrudes on the First Amendment. *See, e.g.*, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Accordingly, the Supreme Court has uniformly rejected businesses' challenges to laws barring discrimination, even where those businesses dealt in expressive goods or services. *See TMG*, 936 F.3d at 762–63 (Kelly, J., concurring in part and dissenting in part) (citing *Norwood v. Harrison*, 413 U.S. 455, 469–70 (1973); *Masterpiece Cakeshop*, 138 S. Ct. at 1723–24)). For example, in *Hishon*, a law firm argued that applying Title VII to require it to consider a woman for partnership "would infringe [its] constitutional rights of expression or association." 467 U.S. at 78. Although a law firm's work product is speech, *see, e.g.*, *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545 (2001), the *Hishon* Court dismissed the law firm's First Amendment defense, holding that there is "no constitutional right . . . to discriminate." 467 U.S. at 78 (citations omitted). By contrast, a law specifically targeting a law firm's speech by, for example, preventing it from bringing cases that "challenge existing welfare laws," would "implicat[e] central First Amendment concerns." *See, e.g.*, *Velazquez*, 531 U.S. at 547–48.

The Photography Studio asserts that its photography and blog are protected speech. Pls.' Br. 6–8. But the Antidiscrimination Laws do not tell the company how to frame its shots, edit its

photographs, which moments to capture, or what to include in its blog posts; they regulate only the sale of its services to the public. Businesses that provide photography services to the public are just as subject to generally applicable regulations of their commercial conduct as newspapers and law firms.[3] As the Supreme Court of New Mexico held, where "[a photography studio] is a public accommodation, its provision of services can be regulated" consistent with the First Amendment, "even though those services include artistic and creative work." *Elane Photography*, 309 P.3d at 66; *see also id.* at 59, 71 ("[T]here is no precedent to suggest that First Amendment protections allow such individuals or businesses to violate antidiscrimination laws."). A video game business, though producing artistic expressions, is not exempt from the Fair Labor Standards Act's prohibition against hiring child laborers. Nor is a tattoo parlor exempt from a health code regulation governing the disposal of needles. Such businesses are likewise not exempt from antidiscrimination laws.

Thus, even though the Photography Studio's work product involves creativity, that "hardly means" that any regulation of its business operations "should be analyzed as one regulating [its] speech rather than conduct." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.* ("*FAIR*"), 547 U.S. 47, 62 (2006). The relevant question is not the nature of a business's product, but whether the Antidiscrimination Laws target expression or prohibit a course of conduct. Here, they prohibit conduct: discrimination in the provision of goods and services. *See id.* (finding no "abridgement of freedom of speech" when a law "make[s] a course of conduct

---

[3] Contrary to the Photography Studio's claims, the Antidiscrimination Laws do not "require special access for certain content" on its website or blog. Pls.' Br. 8–9. Just as with any other business, the Laws regulate customers' access to the website and blog, not content of the blog posts. *See Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 385, 404 (E.D.N.Y. 2017) (holding blind customers have a right to effective access to retailers' websites under the Antidiscrimination Laws).

illegal" even where "the conduct was in part initiated, evidenced, or carried out by means of language" (internal quotation marks omitted)).

    2.  <u>The Antidiscrimination Laws are content- and viewpoint-neutral, so there is no reason to apply strict scrutiny.</u>

"[F]ederal and state anti-discrimination laws" are "an example of a permissible content-neutral regulation of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993). Public accommodation laws do not "target speech or discriminate on the basis of its content"; they prohibit "the act of discriminating against individuals in the provision of publicly available goods, privileges, and services." *Hurley*, 515 U.S. at 572*; see also Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 694–95 (2010) (antidiscrimination policies are "textbook viewpoint neutral"); *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987).

      Seeking to avoid the minimal scrutiny the Supreme Court has applied to generally applicable regulations of commercial conduct, the Photography Studio argues that the Antidiscrimination Laws are content- and viewpoint-based because they tolerate only viewpoints "celebrating" a same-sex couple's marriage. Pls.' Br. 15–17. But the Laws would *also* prohibit a photography studio from selling wedding photography services to *same-sex* couples while denying those same services to *heterosexual* couples. Instead, the Laws prohibit businesses from refusing to provide goods and services on grounds of customers' sexual orientation, regardless of business' views on marriage or any other subject. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623–24 (1984); *see also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 (1994) (reasoning that "the fact that [an] injunction cover[s] people with a particular viewpoint does not . . . render the injunction content or viewpoint based").

      The Photography Studio also argues that the Antidiscrimination Laws are content-based

because they are triggered by the business's decision to offer wedding photography services as opposed to photographing other subject matters, such as "wildlife." Pls.' Br. 16. But the Photography Studio misunderstands how the Laws' equal-treatment requirements work; they apply to all photography services, *including* wildlife photography. A company may not refuse to provide wildlife photography services for a Black customer if the company would provide the same for a white customer. That is, the Laws require a company to provide a service only to the extent that it would provide the same service to similarly situated customers without regard to sexual orientation (or race or religion). The relevant inquiry is not whether *application* of a law would cause businesses to create products reflecting content to which they object. The question is whether the *law itself* draws distinctions based on content. The Antidiscrimination Laws do not "target speech or discriminate on [that] basis." *Hurley*, 515 U.S. at 572.

The Photography Studio ignores the unanimous decision in *Elane Photography*, 309 P.3d at 62–63, and relies on the sharply divided rulings in *TMG*, 936 F.3d 740, and *B&N*, 448 P.3d 890, and a district court ruling in *Chelsey Nelson Photography LLC v. Louisville/Jefferson City Metro Government*, No. 19-cv-851, 2020 WL 4745771 (W.D. Ky. Aug. 14, 2020). Pls.' Br. 10–11, 13, 26. Those cases wrongly reasoned that antidiscrimination laws as applied to commercial wedding services were content-based because they required the creation of products related to the topic of same-sex weddings. But as the dissent correctly notes in *TMG*, "just because the [videographers] want to sell services that are in some manner 'expressive' does not mean that [the State's] content-neutral regulation of those services suddenly becomes content based." 936 F.3d at 775–76. Content-neutral regulations of even pure speech are common and uncontroversial. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 797–98 (1989) (holding municipal noise regulation did not violate free speech rights of music performers).

10

### B. Any "Compelled Expression" Is Incidental to the Law's Regulation of the Conduct of Sales and Does Not Alter the First Amendment Analysis.

The Photography Studio's objection that the Antidiscrimination Laws compel it to express a message with which it disagrees, Pls.' Br. 8–14, does not alter the analysis. The Laws require no state-mandated messages. Just as it would not impermissibly "compel speech" for a state to prohibit a photography studio that offers corporate headshots to the public from refusing to provide the same portraits for female employees that it provides for male employees, New York does not impermissibly "compel speech" by requiring that the Photography Studio offer same-sex couples the same services it offers heterosexual couples. The Laws do not compel the creation of any content, let alone content on a particular topic.[4]

The Photography Studio's reliance on *Hurley*, *id.* at 4, 8–11, 22, is also misplaced. *Hurley* involved a "peculiar" application of a public accommodation law to a privately organized and "inherent[ly] expressive[]" parade. *Hurley*, 515 U.S. at 568, 572. The Court found this application impermissible because, instead of regulating conduct with only an incidental effect on expression, it regulated nothing *but* expression—the content of the private parade sponsor's speech. *Id.* at 573. Here, the Photography Studio is a business providing services to the public, not a private expressive association. *Hurley* itself distinguished the standard application of public accommodation laws to such businesses as constitutional. *See id.* at 578.[5] To expand *Hurley*'s

---

[4] The Photography Studio mistakenly relies on cases not applicable to this context, as the Antidiscrimination Laws do not target particular kinds of speech or types of public accommodations. Pls.' Br. 8–9 (citing *Burns v. Martuscello*, 890 F.3d 77, 87 (2d Cir. 2018) (challenging a particular prisoner's punishment for refusing to serve as an informant and involving no public accommodation or "generally applicable policy or regulation"); *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014) (challenging not a public accommodations law but a law compelling particular businesses (pregnancy centers) to disclose specific information)).

[5] The other compelled speech cases that the Photography Studio cites are not on point. Pls.' Br. 5, 10. *Wooley v. Maynard*, for example, involved a law requiring citizens to display the state-selected message "Live Free or Die" on their license plates. 430 U.S. 705, 715 (1977).

holding would put courts in the impossible "business of deciding which businesses are sufficiently artistic to warrant exemptions from non-discrimination laws." *Elane Photography*, 309 P.3d at 71. Such a result would be contrary to Supreme Court precedent and create an unworkable standard. Indeed, characterizing the Laws as compelling speech based only on the service provided by the business would create the very "limitless principle" that the Photography Business claims to be concerned about. Pls.' Br. at 14.[6]

This case is also dramatically different from cases in which the Supreme Court struck down content-based laws that required businesses to publish particular messages. In *Tornillo*, 418 U.S. 241, a statute required newspapers that published attacks on political candidates to allow the candidates free space for a written reply in the newspaper itself. And in *Pacific Gas & Electric Co. v. Public Utilities Commission of California*, a state agency ordered a utility company to mail the newsletter of an environmental group to its customers. 475 U.S. 1 (1986). Both the challenged laws favored opposing speech in a content-based way: The right of reply was triggered by certain content, and the regulation imposed a content-based penalty. Here, the Antidiscrimination Laws require just that businesses open to the public offer the same goods and services to heterosexual couples as they do to same-sex couples. Any effect on speech is entirely

---

Similarly, *Jian Zhang* rejected plaintiffs' request to force an internet search engine to display political content. 10 F. Supp. 3d at 434, 440. The Antidiscrimination Laws do not require expression of any state-chosen message. The third case cited did not deal with applying antidiscrimination laws to businesses acting as public accommodations. *Claybrooks v. Am. Broad. Companies*, 898 F. Supp. 2d 986, 998–99 (M.D. Tenn. 2012).

   [6] The decisions in *TMG*, 936 F.3d 740, *B&N*, 448 P.3d 890, and *Nelson Photography*, 2020 WL 4745771, mistakenly invite courts to apply different First Amendment standards based on the nature of the services sold. Such a shifting standard is neither consistent with precedent nor susceptible to clear or uniform application. Indeed, advocates for treating custom wedding cakes as protected speech failed to articulate a workable test when questioned at oral argument, and the Supreme Court declined to grant them such an exemption. *See* Oral Arg. Tr. 11–19, *Masterpiece Cakeshop*, 138 S. Ct. 1719.

incidental and does not compel the creation of content. *See TMG*, 936 F.3d at 772–73 (Kelly, J., concurring in part and dissenting in part); *B&N*, 448 P.3d at 932 (Bales, J., dissenting); *Elane Photography*, 309 P.3d at 63–70. For that reason, the Laws are also distinguishable from the alleged compelled speech at issue in *New Hope Family Services, Inc. v. Poole*, which involved the requirement that an adoption agency state their recommendation as to whether it would be in the best interests of a child to be adopted by particular applicants. 966 F.3d 145, 171 (2d Cir. 2020). Here, the Photography Studio is subject to no such requirement.

Even where, unlike here, a law requires entities to speak particular words or provide access for third-party speakers, the Supreme Court has rejected First Amendment challenges if the law regulates conduct and any compulsion to speak is incidental. In *FAIR*, a coalition of law schools argued that a law requiring them to provide equal access both to military and non-military recruiters compelled them to endorse military recruiters' message of discrimination embodied in the Don't Ask, Don't Tell policy; the schools particularly objected on First Amendment grounds that they would have to send e-mails and post bulletin board messages on those recruiters' behalf. 547 U.S. at 52–54, 61–62. The Supreme Court rejected the claim, reasoning that "[a]s a general matter, the [law] regulates conduct, not speech. It affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id.* at 60; *cf. Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1150–51 (2017). (explaining that a law requiring a restaurant to charge $10 for sandwiches would not unconstitutionally compel speech despite the fact that the restaurant will "have to put '$10' on its menus or have its employees tell customers that price").

### C.  The Free Speech Clause Does Not Protect a Public Accommodation's Right to Publish Its Unlawful Policy of Discrimination.

Just as there is no constitutional right to discriminate, there is no concomitant right to publish a policy of discrimination. The Supreme Court has explicitly disapproved of businesses posting signs saying "no goods or services will be sold if they will be used for gay marriages," as they would "impose a serious stigma on gay persons." *Masterpiece Cakeshop*, 138 S. Ct. at 1728–29. In *FAIR*, the Court explained that the government "can prohibit employers from discriminating in hiring on the basis of race. The fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." 547 U.S. at 62. Otherwise, longstanding bans on discriminatory advertisements in employment, housing, and public accommodations would have to be struck down on free speech grounds. *See, e.g.*, 42 U.S.C. § 3604(c) (1988); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 (1973) ("Any First Amendment interest . . . is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity."). Accordingly, the Free Speech Clause does not authorize the Photography Studio to publish a notice on its website of its intent to discriminate.

## III.   THE ANTIDISCRIMINATION LAWS ARE FULLY CONSISTENT WITH THE RELIGION CLAUSES OF THE FIRST AMENDMENT.

The Photography Studio contends that the Antidiscrimination Laws violate the Establishment and Free Exercise Clauses ("Religion Clauses") by compelling it "to participate in and celebrate religious ceremonies [it] objects to." Pls.' Br. 19–21. But the Laws do no such thing. They do not require that Ms. Carpenter "verbally encourage[] the wedding party to celebrate the wedding, follow[] the officiant's instructions, sing[], and engage[] with the prayers." *Id*. at 20. They only require that the Photography Studio offer the same *photography*

14

services to same-sex and heterosexual couples.[7] As the Supreme Court explained in *Smith*, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." 494 U.S. at 879 (internal quotations omitted).[8]

The Photography Studio's citation of *Masterpiece Cakeshop*, 138 S. Ct. at 1727, *see* Pls.' Br. 19—for the proposition that requiring clergy to perform the wedding of any couple, whether same-sex or heterosexual, violates the Free Exercise Clause—demonstrates this point. The Antidiscrimination Laws do not apply to clergy, and neither Ms. Carpenter nor the Photography Studio is a member of the clergy performing a marriage ceremony. *See Masterpiece Cakeshop*, 138 S. Ct. at 1727. The Photography Studio is a commercial enterprise offering its services to the public and does not receive the same exemptions. The Court in *Masterpiece Cakeshop* also anticipated and rejected the argument that its reasoning applies beyond clergy: to hold that commercial services qualify as participation in the ceremony would raise a host of issues "that

---

[7] The cases cited to support the Photography Studio's argument that the Antidiscrimination Laws violate the Religion Clauses are inapplicable because they involve instances of coercion or mandatory participation in religious acts, where the Laws require no such participation. *See Doe v. Phillips*, 81 F.3d 1204, 1206, 1210 (2d Cir. 1996) (prosecutor coerced individual to swear her innocence on a Bible in a church to have charges dismissed); *Lee v. Weisman*, 505 U.S. 577, 580, 599 (1992) (public school included prayers by clergy in graduation ceremonies and "young graduates who object[ed] [we]re induced to conform"); *Warner v. Orange Cty. Dep't of Probation*, 115 F.3d 1068, 1069 (2d Cir. 1996) (probation conditioned on participation in a religious program).

[8] The recent opinion in *Fulton v. City of Philadelphia*, does not change this analysis, because it simply restates the *Smith* rule that neutral and generally applicable laws—like the Antidiscrimination Laws—do not trigger strict scrutiny. No. 19-123, slip op. at 2 (U.S. June 17, 2021). Unlike the contract at issue in *Fulton*, the Antidiscrimination Laws are generally applicable as they do not contain a mechanism for offering individualized, discretionary exemptions. *Id.* at 8. Indeed, there are no exemptions in the Antidiscrimination Laws that would grant the relief that the Photography Studio seeks. Further, the Court's order in *Tandon v. Newsom* likewise left *Smith* intact, and *Tandon* was not a decision on the merits, as the Court has not granted a petition for writ of certiorari in the case. 141 S. Ct. 1294 (2021) (*per curiam*).

seem all but endless." *Id.* at 1723.

Adopting such a broad definition of "participation"—and extending the rules applicable to clergy to all businesses—would, as the Supreme Court has noted, mean that "a long list of persons who provide goods and services for marriages and weddings might refuse to do so for gay persons, thus resulting in a community-wide stigma inconsistent with the history and dynamics of civil rights laws that ensure equal access to . . . public accommodations." *Id.* at 1727. The Religion Clauses do not require that result.[9] The Antidiscrimination Laws leave the Photography Studio to decide "[t]he degree to which [photographers] voluntarily involve[] [themselves] in an event outside the scope of services [they] must provide to all customers on a non-discriminatory basis." *Washington v. Arlene's Flowers, Inc.*, 441 P.3d 1203, 1213 (Wash. 2019), *petition for cert. filed*, No. 19-333 (U.S. Sept. 12, 2019).

## IV.    THE ANTIDISCRIMINATION LAWS SATISFY EVEN STRICT SCRUTINY.

Although, as shown above, application of the Antidiscrimination Laws fails to trigger strict scrutiny, application of the Laws would be constitutional even if strict scrutiny applied.

### A.  New York Has a Compelling Interest in Eradicating Discrimination.

Antidiscrimination laws ensure "society the benefits of wide participation in political, economic, and cultural life." *Roberts*, 468 U.S. at 625; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733–34 (2014). In *Masterpiece Cakeshop*, the Supreme Court affirmed that it is "unexceptional" that the "law can protect gay persons, just as it can protect other classes of individuals, in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public." 138 S. Ct. at 1728. And the Court has

---

[9] Even if the "hybrid rights" claim asserted by the Photography Studio existed—and the Photography Studio acknowledges that such a claim does not, Pls.' Br. 21–22—there is none here because the Photography Studio's free speech claim fails.

recognized repeatedly that the government has a compelling interest in "eliminating

discrimination and assuring its citizens equal access to publicly available goods and services."

*Roberts*, 468 U.S. at 624.

Contrary to the Photography Studio's suggestion, the harm of being refused service

because of one's identity is not erased just because a customer might be able to obtain goods

elsewhere. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964) (reasoning

antidiscrimination laws "vindicate the deprivation of personal dignity that surely accompanies

denials of equal access to public establishments" (internal quotation marks omitted)). "The

government views acts of discrimination as independent social evils even if the prospective

[customers] ultimately find" the goods or services they sought. *Swanner v. Anchorage Equal*

*Rights Comm'n*, 874 P.2d 274, 283 (Alaska 1994).

*TMG*, *B&N*, and *Nelson Photography*, relied on by the Photography Studio, all recognize

that the eradication of discrimination in the provision of goods and services is a compelling

government interest.[10] But by concluding that this interest does not apply in the context of

businesses that provide services to create custom expressive products, those courts

misunderstood the nature of the harm addressed by laws against discrimination. "The argument

that victims of discrimination are free to go elsewhere carries little force. Antidiscrimination

laws . . . were passed to guarantee equal access to *all* goods and services otherwise available to

the public." *TMG*, 936 F.3d at 777 (Kelly, J., concurring in part and dissenting in part). *See also*

*Heckler v. Mathews*, 465 U.S. 728, 739 (1984) ("[D]iscrimination itself . . . can cause serious

---

[10] *See TMG*, 936 F.3d at 754 ( "ensuring . . . equal enjoyment of public accommodations
. . . is compelling" (internal quotation marks omitted)); *Nelson Photography*, 2020 WL 4745771
at *11 (ensuring same-sex couples "will not be turned away" is "unquestionably compelling"
(internal quotation marks omitted)); *B&N*, 448 P.3d at 914 ("ensuring equal access to publicly
available goods and services for all citizens, regardless of their status" is "compelling").

non-economic injuries."); *Heart of Atlanta Motel*, 379 U.S. at 292 (Goldberg, J., concurring) ("Discrimination is not simply dollars and cents, hamburgers and movies; it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public . . ." (internal quotation marks omitted)). And the Photography Studio's assertion that there is no "actual problem" of businesses discriminating against same-sex couples seeking wedding services, Pls.' Br. 22, is belied by the many businesses in recent years seeking court approval to do just that. *See generally Masterpiece Cakeshop*, 138 S. Ct. 1719; *Gifford v. McCarthy*, 23 N.Y.S.3d 422 (N.Y. App. Div. 2016); *Arlene's Flowers*, 441 P.3d 1203; *303 Creative LLC v. Elenis*, No. 16-cv-02372, 2017 WL 4331065 (D. Colo. 2017); *Nelson Photography*, 2020 WL 4745771; *Updegrove v. Herring*, No. 20-cv-1141, slip op. (E.D. Va. Mar. 30, 2021); *B&N*, 448 P.3d 890; *Elane Photography*, 309 P.3d 53; *see also TMG*, No. 16-cv-04094, slip op. at 6 (D. Minn. Apr. 21, 2021) (describing the case as "a smoke and mirrors case or controversy from the beginning, likely conjured up by Plaintiffs to establish binding First Amendment precedent rather than to allow them to craft wedding videos, of which they have made exactly two").

That same compelling interest in ending discrimination remains even where the product at issue is expressive. *See TMG*, 936 F.3d at 776–78 (Kelly, J., concurring in part and dissenting in part); *B&N*, 448 P.3d at 929–931 (Bales, J., dissenting). By contending that New York lacks a compelling interest in prohibiting refusal of wedding-related services to same-sex couples, the Photography Studio essentially disagrees that its conduct is discriminatory. Pls.' Br. 22. But refusing to offer services to same-sex couples on the same basis as it does other clients *is* discrimination. *See supra* Part I.

Contrary to the Photography Studio's assertion, the Antidiscrimination Laws contain only

two narrow exemptions, Pls.' Br. 22–23, which do not undermine the state's compelling interest.[11] To be clear, the question is not whether there is a compelling governmental interest in denying the Photography Studio an exemption, *see Fulton*, No. 19-123, slip op. at 14–15, because there are no existing, discretionary exemptions that are available to others that the state refused to extend to the Photography Studio. While there are two exceptions in the law, they are neither applicable to this situation nor comparable to the exemption sought here. The first permits room rentals based on sex, N.Y. Exec. Law § 296.2(b), which does not apply at all to the Photography Studio, and concerns people's ongoing housing arrangements that are in no way analogous to wedding-related services.[12] The second permits barring a person from a public accommodation based on sex for bona fide public policy considerations where approved by the division of human rights. *Id.* That too is not applicable to a business like the Photography Studio. In fact, the Photography Studio is already offering the exact same service to couples including people of both sexes, so an exemption "barring" customers because of sex does not apply.

### B. Uniform Enforcement of the Antidiscrimination Laws Is the Least Restrictive Means for Furthering the State's Compelling Interest.

Because the most carefully tailored way to ensure equal treatment is to prohibit

---

[11] *Battaglia v. Buffalo Niagara Introductions, Inc.* does not create any exemption as the division of human rights found that the behavior complained of was not discrimination based on disability at all, since the complainant was denied service due to a "legitimate consideration for safety." No. 10138581, slip op. at 5 (N.Y. State Div. of Hum. Rts. Jan. 28, 2012).

[12] Likewise, the exemption contained in N.Y. Exec. Law § 296.11 does not create an exemption from the provisions of the Antidiscrimination Laws at issue here, nor does it apply to businesses like the Photography Studio. That exemption only applies to religious institutions or entities controlled by a religious institution—which the Photography Studio does not claim to be—and merely "carved out a narrow exception for preference * * * in employment, housing, and admissions." *Scheiber v. St. John's Univ.*, 84 N.Y.2d 120, 126–27 (N.Y. 1994) (internal quotation marks omitted). The exemption thus does not apply to the provision of commercial goods and services. Further, it "does not license a religious employer to engage in wholesale discrimination," only permitting such entities to exhibit a "preference . . . for persons of the same faith where that action is calculated by the institution to effectuate its religious mission," *id.* at 126–27, which is not the relief the Photography Studio seeks.

discrimination, the Laws are "precisely tailored" to achieve its interest. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988). Every instance of discrimination "causes grave harm to its victims." *United States v. Burke*, 504 U.S. 229, 238 (1992). Because of the harms associated with each instance of invidious discrimination, there is simply no "numerical cutoff below which the harm is insignificant." *Swanner*, 874 P.2d at 282.

The Photography Studio also contends that the Antidiscrimination Laws are not narrowly tailored because New York could choose, as it alleges other jurisdictions have done, to apply the Law only to businesses that are "essential or non-expressive or non-internet businesses" or, alternatively, to *not* apply to "highly selective entities," or "individuals and small businesses that celebrate weddings." Pls.' Br. 23–25. But the Antidiscrimination Laws are tailored to *New York's* interest, which it achieves by applying the Laws to the extent that businesses offer goods and services to the general public. And the existence of unrelated exceptions, as described above, does not undermine the compelling governmental interest in uniform enforcement of the laws here, where there are no applicable exemptions.

Because they are narrowly tailored to serve a compelling interest in eradicating discrimination in the commercial market, the Antidiscrimination Laws satisfy any standard of review, including strict scrutiny.

## CONCLUSION

The Photography Studio's motion for a preliminary injunction should be denied and the motion to dismiss should be granted.

Respectfully submitted,

*/s/ Gabriella Larios*
GABRIELLA LARIOS
ROBERT HODGSON
New York Civil Liberties Union
125 Broad Street, 19th Floor

20

New York, NY 10004
Phone: (212) 607-3317
Fax: (212) 607-3318
glarios@nyclu.org
rhodgson@nyclu.org

LINDSEY KALEY*
RICCA PRASAD*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
lkaley@aclu.org
rprasad@aclu.org

*Counsel for Amici Curiae*

Dated: June 23, 2021
      New York, N.Y.

\* Motion to proceed *Pro Hac Vice* forthcoming