## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Emilee Carpenter, LLC d/b/a Emilee Carpenter Photography** and **Emilee Carpenter**, | |
| Plaintiffs, | Case No. 6:21-cv-06303 |
| v. | **Memorandum of Law In Response to State Defendant's Motion to Dismiss** |
| **Letitia James**, in her official capacity as Attorney General of New York; **Johnathan J. Smith**, in his official capacity as Interim Commissioner of the New York State Division of Human Rights; and **Weeden Wetmore**, in his official capacity as District Attorney of Chemung County, | Oral Argument Requested |
| Defendants. | |

# TABLE OF CONTENTS

Table of Authorities ...................................................................................iii

Introduction ............................................................................................... 1

Argument .................................................................................................... 2

I.     Emilee has standing to challenge New York's laws. ......................... 3

       A.     Emilee has standing to challenge New York's laws because they
              credibly threaten and chill her expressive activities. ........................... 3

              1.     Emilee faces a credible threat because New York's laws
                     arguably cover her speech. ..................................................... 4

              2.     Many other factors confirm Emilee's credible threat. ............... 7

              3.     Emilee does not rely on independent actors or need to show
                     a specific enforcement threat. ............................................. 9

       B.     Emilee has competitor and competitor-advocate standing because
              the laws burden her compared to her competitors. ............................ 11

       C.     The Attorney General causes Emilee's injuries and lacks Eleventh
              Amendment immunity. .................................................................. 12

II.    Emilee states plausible First Amendment claims. ........................... 14

       A.     New York's laws compel and restrict Emilee's protected speech. ........ 14

              1.     The Accommodations and Discrimination Clauses compel
                     Emilee to speak. .............................................................. 14

              2.     Emilee seeks the narrow right to decline to speak based on
                     message, not status. ........................................................ 17

              3.     The Accommodations and Discrimination Clauses compel
                     Emilee's speech based on content and viewpoint. ...................... 20

              4.     The Clauses restrict Emilee's speech based on content and
                     viewpoint as New York admits. ........................................... 20

       B.     New York's laws compel and restrict Emilee's expressive
              association. .................................................................................. 22

C.    New York's laws violate Emilee's free-exercise and establishment rights. ................................................................................................ 24

D.    The Unwelcome Clause is facially vague, overbroad, and grant officials unbridled discretion. ............................................................... 24

Conclusion ............................................................................................................. 25

# Table of Authorities

<u>**Cases**</u>

*281 Care Committee v. Arneson,*
    638 F.3d 621 (8th Cir. 2011) ...................................................................... 12, 13

*303 Creative LLC v. Elenis,*
    No. 16-cv-02372-MSK-CBS, 2017 WL 4331065 (D. Colo. Sept. 1, 2017) ........ 10

*Act Now to Stop War & End Racism Coaition & Muslim American Society*
    *Freedom Foundation v. District of Columbia,*
    846 F.3d 391 (D.C. Cir. 2017) ........................................................................ 25

*American Booksellers Foundation v. Dean,*
    342 F.3d 96 (2d Cir. 2003) ................................................................................ 8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 2

*Athenaeum v. National Lawyers Guild,* Inc.,
    No. 653668/16, 2018 WL 1172597 (N.Y. Sup. Ct.
    Mar. 06, 2018) ....................................................................................... 6, 19, 20

*Babbitt v. United Farm Workers National Union,*
    442 U.S. 289 (1979) ....................................................................................... 4, 9

*Bennett v. Spear,*
    520 U.S. 154 (1997) ......................................................................................... 10

*Bigelow v. Virginia,*
    421 U.S. 809 (1975) ......................................................................................... 21

*Bland v. Fessler,*
    88 F.3d 729 (9th Cir. 1996) ............................................................................ 13

*Bolger v. Youngs Drug Products Corporation,*
    463 U.S. 60 (1983) ........................................................................................... 22

*Boy Scouts of America v. Dale,*
    530 U.S. 640 (2000) ................................................................................... 22, 23

*Brush & Nib Studio, LC v. City of Phoenix,*
    448 P.3d 890 (Ariz. 2019) .......................................................................*passim*

*Buehrle v. City of Key West,*
    813 F.3d 973 (11th Cir. 2015) ........................................................................ 19

*Cantwell v. Connecticut,*
310 U.S. 296 (1940) ..................................................................................... 15

*Carey v. Population Services, International,*
431 U.S. 678 (1977) ..................................................................................... 21

*Carter v. HealthPort Technologies, LLC,*
822 F.3d 47 (2d Cir. 2016) .......................................................................... 2

*Cayuga Nation v. Tanner,*
824 F.3d 321 (2d Cir. 2016) ...................................................................... 4, 7

*Center for Reproductive Law and Policy v. Bush,*
304 F.3d 183 (2d Cir. 2002) .................................................................... 11, 12

*Chelsey Nelson Photography LLC v. Louisville/Jefferson County Metro Government,*
479 F. Supp. 3d 543 (W.D. Ky. 2020) .......................................................*passim*

*Chevron Corporation v. Donziger,*
833 F.3d 74 (2d Cir. 2016) .......................................................................... 12

*Clapper v. Amnesty International USA,*
568 U.S. 398 (2013) .............................................................................. 8, 9, 10

*Cohen v. California,*
403 U.S. 15 (1971) ....................................................................................... 15

*Consumer Data Industry Association v. King,*
678 F.3d 898 (10th Cir. 2012) ..................................................................... 12

*Copeland v. Vance,*
893 F.3d 101 (2d Cir. 2018) ........................................................................ 25

*Doe v. Bolton,*
410 U.S. 179 (1973) ....................................................................................... 8

*Elane Photography, LLC v. Willock,*
309 P.3d 53 (N.M. 2013) ......................................................................... 5, 16

*Entertainment Software Association v. Blagojevich,*
469 F.3d 641 (7th Cir. 2006) ....................................................................... 15

*Ex Parte Young,*
209 U.S. 123 (1908) ..................................................................................... 12

*Forsyth County v. Nationalist Movement,*
    505 U.S. 123 (1992) ................................................................. 24, 25

*Green v. Miss United States of America, LLC,*
    No. 19-cv-02048-MO, 2021 WL 1318665 (D. Or. Apr. 8, 2021) ...................... 23

*Harrell v. Florida Bar,*
    608 F.3d 1241 (11th Cir. 2010) ........................................................ 7

*Harris v. Quinn,*
    573 U.S. 616 (2014) .................................................................. 22

*HealthNow New York, Inc. v. New York,*
    739 F. Supp. 2d 286 (W.D.N.Y. 2010) ............................................. 13, 14

*Hedges v. Obama,*
    724 F.3d 170 (2d Cir. 2013) ......................................................... 3, 4

*Hess v. Indiana,*
    414 U.S. 105 (1973) .................................................................. 15

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) .................................................................... 15

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston,*
    515 U.S. 557 (1995) ...................................................... 15, 17, 18, 20

*In re United States Catholic Conference,*
    885 F.2d 1020 (2d Cir. 1989) ........................................................ 11

*Johanns v. Livestock Marketing Association,*
    544 U.S. 550 (2005) .................................................................. 23

*Jones v. Schneiderman,*
    101 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................. 4

*Knife Rights, Inc. v. Vance,*
    802 F.3d 377 (2d Cir. 2015) .......................................................... 7

*Kolender v. Lawson,*
    461 U.S. 352 (1983) .................................................................. 24

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................... 3

*Massachusetts v. E.P.A.,*
    549 U.S. 497 (2007) .................................................................. 13

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
    138 S. Ct. 1719 (2018) ........................................................................ 16

*Matal v. Tam,*
    137 S. Ct. 1744 (2017) ................................................................. 20, 22

*McDermott v. Ampersand Publishing, LLC,*
    593 F.3d 950 (9th Cir. 2010) ...................................................... 15, 23

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ......................................................................... 1, 8

*Miami Herald Publishing Company v. Tornillo,*
    418 U.S. 241 (1974) ............................................................................ 17

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
    559 U.S. 229 (2010) ........................................................................... 15

*National Organization for Marriage, Inc. v. Walsh,*
    714 F.3d 682 (2d Cir. 2013) ............................................................. 3, 6

*Netchoice, LLC v. Moody,*
    No. 21cv220-RH-MAF, 2021 WL 2690876 (N.D. Fla. June 30, 2021)............ 16

*New Hampshire Right to Life Political Action Committee v. Gardner,*
    99 F.3d 8 (1st Cir. 1996) ..................................................................... 4

*New Hope Family Services, Inc. v. Poole,*
    966 F.3d 145 (2d Cir. 2020) .............................................................. 23

*New York State Club Association, Inc. v. City of New York,*
    487 U.S. 1 (1988) ................................................................................. 9

*People v. Fuller,*
    590 N.Y.S.2d 159 (Crim. Ct. 1992) .................................................. 13

*PruneYard Shopping Center v. Robins,*
    447 U.S. 74 (1980) ............................................................................. 16

*Reed v. Town of Gilbert,*
    135 S. Ct. 2218 (2015) ...................................................................... 21

*Riley v. National Federation of the Blind of North Carolina,*
    487 U.S. 781 (1988) ........................................................................... 22

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ........................................................................... 22

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) ............................................................................... 16

*Saxe v. State College Area School District,*
    240 F.3d 200 (3d Cir. 2001) ............................................................... 24

*Sherley v. Sebelius,*
    610 F.3d 69 (D.C. Cir. 2010) ............................................................. 12

*State v. Arlene's Flowers, Inc.,*
    441 P.3d 1203 (Wash. 2019) ................................................................ 5

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ........................................................................ 9, 15

*Stilwell v. Office of Thrift Supervision,*
    569 F.3d 514 (D.C. Cir. 2009) ............................................................. 5

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...................................................................*passim*

*Telescope Media Group v. Lucero,*
    936 F.3d 740 (8th Cir. 2019) ......................................................*passim*

*Tweed-New Haven Airport Authority v. Tong,*
    930 F.3d 65 (2d Cir. 2019) ................................................................... 9

*United States v. Paulino,*
    850 F.2d 93 (2d Cir. 1988) ................................................................. 11

*United States v. Stevens,*
    559 U.S. 460 (2010) ........................................................................... 24

*United States v. Williams,*
    553 U.S. 285 (2008) ........................................................................... 21

*Updegrove v. Herring,*
    No. 20-cv-1141, 2021 WL 1206805 (E.D. Va. Mar. 30, 2021) ........................ 10

*Vermont Right to Life Committee, Inc. v. Sorrell,*
    221 F.3d 376 (2d Cir. 2000) ............................................................. 3, 8

*West Virginia State Board of Education v. Barnette,*
    319 U.S. 624 (1943) ........................................................................... 14

*Wandering Dago, Inc. v. Destito,*
    879 F.3d 20 (2d Cir. 2018) ................................................................. 22

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008) ............................................................................ 16

*Washington Post v. McManus*,
  944 F.3d 506 (4th Cir. 2019) ............................................................. 15

*Wisconsin Right to Life, Inc. v. FEC*,
  546 U.S. 410 (2006) ............................................................................ 15

*Wooley v. Maynard*,
  430 U.S. 705 (1977) ............................................................................ 17

*XY Planning Network, LLC v. United States Securities & Exchange
  Commission*,
  963 F.3d 244 (2d Cir. 2020) ............................................................... 11

## **Statutes**

New York Civil Rights Law § 40-d .............................................................. 13

New York Executive Law § 63(12) ............................................................. 13

New York Executive Law § 296(2)(a) ......................................................... 24

## **Other Authorities**

Brief for Massachusetts, et al. as Amici Curiae in Support of Defendants, *303
  Creative LLC v. Elenis*, No. 19-1413 (10th Cir. Apr. 29, 2020) ....................... 6

Brief for Massachusetts, et al. as Amici Curiae in Support of Respondents,
  *Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719
  (No. 16-111), 2017 WL 5127307 ............................................................. 5, 6, 19

Brief for the Attorney General of New York as Amicus Curiae in Support of
  Respondent, *Gifford v. McCarthy*, 137 A.D.3d 30 (N.Y. App. Div. 2016),
  2015 WL 13813477 ............................................................................ 13

Amended Complaint, *Scardina v. Masterpiece Cakeshop Inc.*, Case No.
  2019CV32214 (Colo. Dist. Ct. May 13, 2020) .......................................... 8

Notice of Hearing & Formal Complaint, *Scardina v. Masterpiece Cakeshop
  Inc.*, Charge No. CP2018011310 (Colo. Civil Rights Div. Oct. 9, 2018) ........... 8

*The Sexual Orientation Non-Discrimination Act*, NY Attorney General,
  https://on.ny.gov/2SCIR4L ................................................................. 13

## Introduction

Emilee Carpenter is a photographer who wants to celebrate certain views about marriage through her photography and blogs and explain those views to the public. But New York's laws threaten her with $100,000 fines, injunctions, lawsuits, and jail time for publishing her desired statements and for speaking only those views she agrees with.

New York doesn't deny that its laws forbid Emilee's speech. New York instead defends its laws and declares its "compelling" need to apply them to Emilee. Mem. of Law in Supp. of State Defs.' Mot. to Dismiss ("MTD") 2, ECF No. 27-1. Yet New York calls Emilee's enforcement fears "speculative" because she hasn't yet been investigated (MTD 6), even though it simultaneously says Emilee would "unquestionably violate the law" if she operates her business as she wants. Mem. of Law in Opp. to Pls.' Prelim. Inj. Mot. ("MPI Resp.") 2, ECF No. 26.

But Emilee doesn't have to "drop the wrecking ball first and test [her] belief later" to protect her rights. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). Emilee need only show that the law's text arguably forbids her desired activities. She's shown much more than that. New York has already enforced the law against those with beliefs like Emilee's, supported other officials in enforcing similar laws against other creative professionals, and proclaimed its need and intent to prosecute Emilee for following her religious beliefs.

New York does no better on the merits. Labeling Emilee's speech conduct, and calling her editorial discretion discrimination, New York plays word games to avoid accountability. But New York cannot disclaim compelling Emilee to speak while insisting she must create photography celebrating same-sex weddings. The First Amendment cares about reality and results, not rhetoric.

Emilee has shown here and elsewhere that she deserves a preliminary injunction on her Free Speech, Free Exercise, and Establishment Clause claims. *See*

Reply Br. in Supp. of Pls.' Prelim. Inj. Mot. ("MPI Reply") 2-8 (filed concurrently). So she necessarily meets the less demanding motion-to-dismiss standard. She need only show that her remaining claims are plausible. She has done so, and New York's motion to dismiss should be denied in full.

## Argument

New York first brings a Rule 12(b)(1) motion to dismiss for lack of standing. This motion may challenge standing facially—"*i.e.*, based solely on the allegations of the complaint" and its incorporated documents—or factually—i.e., based on "evidence" outside the complaint. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). New York does not specify its challenge. *Compare* MPI Resp. 8-10 (citing affidavits to oppose standing) *with* MTD 5-7 (citing complaint only). But under either standard, Emilee's allegations must be accepted as true because they are undisputed. *See Carter*, 822 F.3d at 56-57.[1]

New York also brings a Rule 12(b)(6) motion to challenge Emilee's claims. To overcome this motion, Emilee must show plausible claims after viewing the complaint in her favor and taking all factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).

Emilee defeats both challenges. (I) Emilee has standing because New York's laws (A) credibly threaten and chill her expression; (B) burden her compared to her competitors; and (C) empower the Attorney General to prosecute Emilee without Eleventh Amendment immunity. (II) Emilee also pleads plausible claims because

---

[1] New York suggests that Emilee "likely conjured up" this case but offers no basis to support this offensive and incorrect accusation. MTD 6 n.3. Emilee's "religious beliefs shape every aspect of her life." Verified Complaint ("VC") ¶ 20, ECF No. 1. And New York's laws threaten her with crippling penalties for operating her business consistent with her beliefs. Mem. of Law in Supp. of Pls.' Prelim. Inj. Mot. ("MPI") 8-22, ECF No. 3-1. To protect herself from these penalties, Emilee filed this suit. *See infra* § I.A.

New York's laws (A) compel and restrict her speech; (B) burden her expressive association; (C) force her to participate in religious events and are not neutral or generally applicable; and (D) are vague, overbroad, and grant unbridled discretion.

## I. Emilee has standing to challenge New York's laws.

For standing, Emilee must show injury, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Emilee must also prove ripeness. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 157 n.5 (2014). But here, ripeness and standing blend together; "claims that [a]re sufficiently 'actual and imminent' to establish Article III standing [are also] ripe for adjudication." *Nat'l Org. for Marriage, Inc. v. Walsh* (*NOM*), 714 F.3d 682, 688-89 (2d Cir. 2013). Courts also apply "relaxed standing and ripeness rules" to First Amendment cases. *Id.* at 689. New York only challenges whether Emilee suffers an injury-in-fact (§ I.A-B) and whether the Attorney General causes that injury (§ I.C).

### A. Emilee has standing to challenge New York's laws because they credibly threaten and chill her expressive activities.

To prove standing, Emilee need only show a "substantial risk" of New York's laws harming her. *SBA List*, 573 U.S. at 158. Not a "certainty" of prosecution; only "an actual and well-founded fear that the law will be enforced against" her. *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000); *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (standing so long as prosecution fear not "wholly speculative") (cleaned-up).

Emilee has done that because she intends "to engage in a course of conduct arguably affected with a constitutional interest," her activities are "arguably" proscribed by New York's laws, and she faces a "credible threat of prosecution." *SBA List*, 573 U.S. at 159. Emilee meets this test because (1) New York actively enforces its laws that arguably cover Emilee's expressive activities; (2) many other

factors bolster this credible threat; and (3) Emilee need not prove a specific, certain, past, or future threat for standing.

> **1.   Emilee faces a credible threat because New York's laws arguably cover her speech.**

Emilee can prove a credible enforcement threat because New York's laws "arguably" proscribe her expressive activities and are "non-moribund." *Hedges*, 724 F.3d at 197 (cleaned-up); *Sorrell*, 221 F.3d at 383 (standing because plaintiff's statutory interpretation "reasonable enough"). This "low threshold" is "quite forgiving." *Hedges*, 724 F.3d at 197 (cleaned-up). *See also Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (when party is "an object of" statute, there is "ordinarily little question" that statute causes injury) (cleaned-up).

While New York disputes this standard, saying an official's statement "'that a statute prohibits a type of conduct … is usually insufficient'" for standing (MTD 6, citing *Jones v. Schneiderman*, 101 F. Supp. 3d 283, 291 (S.D.N.Y. 2015)), the Second Circuit disagrees. *Cayuga Nation v. Tanner*, 824 F.3d 321, 332 n.9 (2d Cir. 2016) (criticizing *Jones* and rejecting argument that plaintiffs must allege "that the threat of prosecution is directed specifically at them as individuals"). Indeed, the Supreme Court and Second Circuit have repeatedly applied an enforcement presumption against laws that arguably prohibit plaintiffs' desired activities. *SBA List*, 573 U.S. at 162; *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979); *Tong*, 930 F.3d at 70; *Hedges*, 724 F.3d at 197 (surveying cases adopting this presumption). Other circuits agree. *See N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) (applying same test).

This presumption applies here. Emilee wants to offer and create photographs and blogs celebrating only opposite-sex weddings, post an online statement saying this, adopt an editorial policy binding her company to do this, and ask potential clients whether they want her to create content contrary to her beliefs. MPI 8-22.

These activities are "arguably affected with a constitutional interest." *SBA List*, 573 U.S. at 159; MPI 5-22 (proving this). And New York's laws arguably forbid each activity. MPI 8-22 (explaining this point). Other officials interpret similar laws similarly. *Telescope Media Grp. v. Lucero* (*TMG*), 936 F.3d 740, 750 (8th Cir. 2019); *id.* at 769-70 (Kelly, J., dissenting).[2] New York never engages with this analysis.

But these laws do not just *arguably* prohibit Emilee's desired activities. According to New York, they *undisputedly* do—requiring Emilee to offer and provide the "same services" (photographs and blogs) to same-sex weddings as she does for opposite-sex weddings. MTD 19, 24; MPI Resp. 15-16; *id.* 24 (accusing Emilee of a "desire[] to discriminate"); Decl. of Jessica Clarke in Supp. of Defs.' Opp. to Pls.' Prelim. Inj. Mot. ("Clarke Decl.") ¶ 18 (same), ECF No. 26-3. They also ban Emilee's proposed statement and editorial policy as "facially discriminatory." MTD 20. *See id.* 17-18; MPI Resp. 12-13 (same). New York's admissions here are decisive.

And there's more. New York even announced its compelling need to regulate Emilee and inability to give her any exemption. MTD 23-24; MPI Resp. 13-15. It is "more than a little ironic that [New York] would suggest [Emilee] lack[s] standing and then, later in the same brief, label [Emilee] as a prime example of ... the very problem [its law] was intended to address." *Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009) (cleaned up). New York's deeds match its words. New York already prosecuted another public accommodation with policies like Emilee's and filed amicus briefs against similar public accommodations. VC ¶¶ 262, 272, 286-90; MTD 19, 24; MPI Resp. 15-16.[3]

_____

[2] *See also Brush & Nib Studio, LC v. City of Phoenix* (*B&N*), 448 P.3d 890, 898-900 (Ariz. 2019) (Phoenix); *State v. Arlene's Flowers, Inc.*, 441 P.3d 1203 (2019) (Washington); *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013) (New Mexico); *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't* (*CNP*), 479 F. Supp. 3d 543 (W.D. Ky. 2020) (Louisville).
[3] *See* Br. of Mass., et al. as Amici Curiae in Supp. of Resp'ts (NY Masterpiece Br.), *Masterpiece Cakeshop v. Colo. Civil Rights Comm'n,* 138 S. Ct. 1719 (No. 16-111),

But don't just consider New's York's words and actions. Amici read New York's laws like New York does. *See* Br. of Amici Curiae States in Supp. of Defs. ("Mass. Br.") 8, ECF No. 55 ("There is no real dispute that Plaintiffs' stated intent ... would violate New York's" laws); Br. of Amici Curiae N.Y. Civil Liberties Union & Am. Civil Liberties Union Supp. Defs. ("ACLU") 10, 14, ECF No. 51 (laws require providing "the same service to similarly situated customers" and banning Emilee's statements and policy as "discrimination"); Br. of Religious and Civil-Rights Orgs. as Amici Curiae Supp. Defs. 2, ECF No. 52 (interpreting laws to require providing service "on the same terms"). As do New York state courts. *Athenaeum v. Nat. Lawyers Guild*, Inc., No. 653668/16, 2018 WL 1172597, at *2-3 (N.Y. Sup. Ct. Mar. 06, 2018) (reading laws to require bar association to publish pro-Israeli and pro-Palestinian advertisements).

New York must (and does) ignore all these facts to say Emilee is "misstat[ing] the scope of" its laws and "basing her claims on misunderstandings." MPI Resp. 10. But ignoring reality does not change it, especially at the motion-to-dismiss stage. This point also explains why Emilee's case does not involve an "abstract disagreement" or call for "mere conjecture" or an "advisory opinion." MTD 7; MPI Resp. 10, 16. From prudential standing and ripeness perspectives, this case is fit for review because New York's position is clear, its position bars Emilee's desired expression, and Emilee's challenge is mainly legal. *See SBA List*, 573 U.S. at 167 (rejecting prudential ripeness argument); *NOM*, 714 F.3d at 691 (finding prudential standing). Indeed, New York and amici did not need any additional facts to proclaim

---

2017 WL 5127307 (joined by New York's Attorney General; opposing cake artist); Br. for Mass., et al. as Amici Curiae in Support of Defs. at 12, *303 Creative LLC v. Elenis*, No. 19-1413 (10th Cir. Apr. 29, 2020) (joined by Attorney General James; opposing website designer and concluding public accommodations laws required her providing "the full range of a business's services") (excerpts attached as Exhibit A and judicially noticeable (MTD 12 n.6)).

Emilee's activities illegal. And New York cannot identify a single fact this Court lacks for it to rule. So this Court can and should address the merits.

### 2. Many other factors confirm Emilee's credible threat.

Although Emilee has standing because the laws arguably forbid her expression, several other factors bolster her standing.

First, New York does not disavow enforcement against Emilee. *See Knife Rts., Inc. v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015) (non-disavowal supported standing). Second, New York actively defends its authority to prosecute Emilee and others like her. MTD 23-24; MPI Resp. 13-15; *Tanner*, 824 F.3d at 332 n.8 (relying on defense in briefs to support standing); *Harrell v. Fla. Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010) ("an intent to enforce the rule may be inferred" from law's defense).

Third, New York welcomes, initiates, investigates, and prosecutes complaints against public accommodations, including 1,740 complaints against public accommodations from 2012-2018. VC ¶¶ 174-227. New York even prosecutes and files briefs against business owners with religious beliefs like Emilee's. *Id.* at ¶¶ 262, 272, 286-90, 295; *supra* n.3. So "proceedings are not a rare occurrence." *SBA List*, 573 U.S. at 164 (standing in part because commission processed 20-80 claims a year); *TMG*, 936 F.3d at 750 (standing when state had "already" prosecuted "wedding vendor who refused to rent a venue for a same-sex wedding").

Fourth, New York's laws allow "almost anybody" to file complaints. MTD 15. This includes aggrieved persons and organizations in New York or outside and also New York itself, which has already initiated complaints against public accommodations and used testers to investigate charges. VC ¶¶ 176-93, 220-23, 273-74. This broad "universe of potential complainants" supports standing. *SBA List*, 573 U.S. at 164.

New York, though, dismisses this threat, saying Emilee has given "no reason" to think she's been identified for investigation or targeted by testers. MTD 7. But that isn't necessary. *See, e.g.*, *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (standing before physicians had been "threatened with prosecution"). New York's argument just misses the point. Pre-enforcement lawsuits exist so that speakers don't have to violate the law, "bet the farm," and mail sue-me invitations to government officials before challenging a law. *MedImmune, Inc.*, 549 U.S. at 128-29. Once again, Emilee need not prove enforcement is "certain"; a "substantial risk" is enough. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

And New York's ample enforcement history and mechanisms make the risk of investigation and testers credible. Even on a national level, speakers like Emilee have been repeatedly targeted and sued for doing what she wants. *See supra* n.2 (identifying other lawsuits against speakers under laws like New York's); Am. Compl., *Scardina v. Masterpiece Cakeshop Inc.*, Case No. 2019CV32214 (Colo. Dist. Ct. June 5, 2019) (complaint against Masterpiece attached as Exhibit B); Notice of H'rg & Formal Compl., *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310 (Colo. Civil Rights Div. Oct. 9, 2018) (same).

Finally, New York's laws carry stiff penalties including $100,00 fines and jail time. VC ¶¶ 180, 194-215. These penalties reasonably chill Emilee's speech. *SBA List*, 573 U.S. at 166 (standing with "threat of criminal prosecution"); *Sorrell*, 221 F.3d at 382 (standing with threat of $10,000 civil fine).

Put all these factors together and Emilee has overwhelming reason to fear enforcement. Indeed, the Second Circuit has found pre-enforcement standing on far fewer facts than those present here. *See Sorrell*, 221 F.3d at 383-84 (standing despite officials disclaiming enforcement); *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 100 (2d Cir. 2003) (standing where officials claimed law did not cover "material posted on plaintiffs' websites"). These cases support standing here.

### 3.   Emilee does not rely on independent actors or need to show a specific enforcement threat.

Because New York gets the jurisdictional standard wrong, New York puts unnecessary requirements on Emilee to prove standing.

For example, New York denies standing because Emilee does not allege "any past enforcement actions against her company" or "that an investigation will be started any time soon." MTD 6-7; MPI Resp. 9. But Emilee need not "first expose" herself "to actual arrest or prosecution" to challenge New York's laws. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Emilee has standing without showing past enforcement against or a specific threat directed at her. *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988) (hearing challenge to public accommodations law "before any enforcement proceedings"); *Babbitt*, 442 U.S. at 302 (standing where criminal penalty "has not yet been applied and may never be applied"); *Tong*, 930 F.3d at 70 (standing despite "no overt threat to enforce" law).

New York's theory also ignores that investigations alone would harm Emilee and chill her speech. VC ¶ 260. *SBA List*, 573 U.S. at 165-66 (threat of commission investigation created harm). And New York's investigative process is onerous with "multiple steps of careful examination …, including an intensive document review, site visits and interviews." MPI Resp. 9; VC ¶ 194. Emilee needs relief and clarity before going through all this.

Next, New York objects that Emilee's standing rests on "speculation about the decisions of independent actors…." MTD 6-7. Not so. Emilee alone controls whether she violates the law: whether to post her statement, how to operate her business, and whether to decline pending requests for same-sex wedding photographs. Defendants (and those they oversee like assistant attorneys general, commission officials, and testers) control whether to initiate enforcement on their own. VC ¶¶ 174-93, 216-25. These are not "independent actors not before the

court….” *Clapper*, 568 U.S. at 414 n.5. *Cf. Bennett v. Spear*, 520 U.S. 154, 168 (1997) (standing even where government "retains ultimate responsibility for determining whether and how a proposed action shall go forward"). To be sure, private third parties can file complaints and lawsuits *in addition* to defendants doing so. But New York has no choice but to investigate those complaints. VC ¶ 194. That bolsters standing. *SBA List*, 573 U.S. at 164 (standing to challenge law enforced by similar administrative system).

Nor does this Court need to speculate how defendants and their agents will act. They've made that clear, before and during this lawsuit. *See supra* § I.A.1. That is why so many other courts have found standing in cases like this one: when the government defended similar laws enforced using similar administrative systems when challenged by similar plaintiffs. *TMG*, 963 F.3d at 749-50; *B&N*, 448 P.3d at 900-02; *CNP*, 479 F. Supp. 3d at 549-52.

In contrast to these cases, New York cites unpublished, out-of-circuit cases that rejected standing based on facts absent there but present here. *See Updegrove v. Herring*, 2021 WL 1206805, at *3-4 (E.D. Va. Mar. 30, 2021) (no standing because challenged law never enforced, state never used "testers," plaintiff never asked to photograph same-sex weddings, and law lacked criminal penalties); *303 Creative LLC v. Elenis*, 2017 WL 4331065, at *5-6 (D. Colo. Sept. 1, 2017) (no standing because plaintiff not in wedding industry and had never been asked to create wedding websites).

The latter case even supports Emilee. While *303 Creative* denied standing to challenge Colorado's Accommodation Clause, it found standing to challenge Colorado's Publication Clause. *303 Creative LLC*, 2017 WL 4331065, at *5-6. And if Emilee has standing to challenge the Publication Clause, then she necessarily has standing to challenge the Accommodation and Discrimination Clauses because these clauses are intertwined—whether the Publication Clause can constitutionally

10

ban Emilee's desired statement depends on whether the two other clauses can constitutionally require her to photograph same-sex weddings. *See infra* § II.A.4 (explaining point). *Accord TMG*, 936 F.3d at 757 n.5; *B&N* 448 P.3d at 926; *CNP*, 479 F. Supp. 3d at 560-61. When issues are "invariably intertwined" like this, courts address the merits of those issues. *United States v. Paulino*, 850 F.2d 93, 96 (2d Cir. 1988) (cleaned-up). So far from undermining Emilee's standing, New York's cited cases highlight the important facts present here that justify the credible threat facing Emilee.

### B.   Emilee has competitor and competitor-advocate standing because the laws burden her compared to her competitors.

In addition to standing based on enforcement and chill, Emilee has standing because New York's laws give her competitors an unfair advantage to compete in the marketplace and to advocate in the public arena. *See XY Plan. Network, LLC v. United States Sec. & Exch. Comm'n*, 963 F.3d 244, 251 (2d Cir. 2020) (summarizing competitor-standing doctrine); *Ctr. for Reprod. L. & Pol'y v. Bush*, 304 F.3d 183, 197 (2d Cir. 2002) (Sotomayor, J.) (same for competitor-advocate doctrine).

Specifically, New York's laws burden Emilee but not her direct competitors— other photographers in New York's wedding market. VC ¶¶ 306-313; *In re United States Catholic Conference*, 885 F.2d 1020, 1029 (2d Cir. 1989). For example, Emilee cannot operate her business efficiently because she cannot ask clients what type of services they seek or adopt an editorial policy to bind her company, and she loses time researching requests to avoid liability and lawsuits. VC ¶¶ 160, 229-45, 311-13. Emilee also cannot adequately advocate her religious views to the public because she cannot post a statement explaining her religious reasons for celebrating only opposite-sex weddings or explain these beliefs to persons who ask her to promote same-sex weddings. VC ¶¶ 93, 246-53, 306-313.

11

In contrast, other New York wedding photographers do not face these burdens because they photograph both opposite-sex and same-sex weddings and so can operate consistently with the law. VC ¶¶ 300-12. *See Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (competitor standing when law forces business to "lose sales to rivals" or to "expend more resources to achieve the same sales"). Emilee also cannot equally advocate for her views on marriage compared to other photographers who support same-sex marriage. VC ¶¶ 305, 309-10. *See Ctr. for Reprod. L. & Pol'y*, 304 F.3d at 197 (standing when government withheld benefit to abortion advocacy group that it provided to pro-choice advocacy groups). All of this gives Emilee another basis for standing to challenge New York's laws.

### C.   The Attorney General causes Emilee's injuries and lacks Eleventh Amendment immunity.

To enjoin the Attorney General, Emilee must show "some connection" between that official and "enforcement of" the challenged laws. *Ex Parte Young*, 209 U.S. 123, 157 (1908). She can easily do so. The challenged laws explicitly empower the Attorney General to initiate, investigate, and prosecute complaints and lawsuits. VC ¶¶ 8-10, 175-78, 185, 195-96, 208, 216, 225. Even the District Attorney agrees. Mem. of Law in Supp. of Dismissal ("DA MTD") 8–9, ECF No. 24-2 (claiming Attorney General prosecutes "cases alleging violations of the Civil Rights Laws of New York").

Even so, New York denies the Attorney General's connection to its laws because they allow other people to enforce too. MTD 8. But that doesn't matter. Emilee needs to redress "a discrete injury," not her "every injury." *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (cleaned-up). She can enjoin officials empowered to enforce the law without enjoining everyone empowered to do so. *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 901-02 (10th Cir. 2012) (harm redressable despite others' ability to sue); *281 Care Comm. v. Arneson*, 638 F.3d

621, 631 (8th Cir. 2011) (similar); *Bland v. Fessler*, 88 F.3d 729, 738 (9th Cir. 1996) (similar). That's because Emilee's "risk would be reduced to some extent" by enjoining the Attorney General. *Massachusetts v. E.P.A.*, 549 U.S. 497, 526 (2007).

Nor do any of New York's cases about Executive Law § 63(12) help New York with the laws challenged here. MTD 9. These cases involved statutes that did not name the Attorney General or give that officer enforcement authority. In those circumstances, courts refused to rely on § 63(12)'s general enforcement authority alone. Here, in contrast, New York's Civil Rights Law names the Attorney General and contemplates enforcement by her. N.Y. Civ. Rts. Law § 40-d; VC ¶¶ 10, 221-223. *See also People v. Fuller*, 590 N.Y.S.2d 159, 162 (Crim. Ct. 1992) (purpose of § 40-d's notice requirement is to give Attorney General "sufficient information to administer and protect" civil rights law). So does New York's Human Rights Law. VC ¶¶ 10, 185, 196, 208, 216.

There's more. The Attorney General has exercised its authority to prosecute public accommodations under New York's laws in the past. *See* VC ¶¶ 177-78; Clarke Decl. ¶¶ 13-15 (collecting cases). The Attorney General's website welcomes discrimination complaints.[4] And in a prior case against business owners who share Emilee's beliefs, the Attorney General even touted its "independent authority to enforce the Human Rights Law pursuant to N.Y. Exec. L. § 63(12)" because of its "strong interest in the proper interpretation and application of the statute." Br. for the Att'y Gen. of New York as Amicus Curiae in Supp. of Resp't at *1, *Gifford v. McCarthy*, 137 A.D.3d 30 (N.Y. App. Div. 2016), 2015 WL 13813477.

All of this proves the Attorney General's "demonstrated willingness" to enforce New York's laws against public accommodations. *HealthNow New York, Inc.*

---

[4] *See The Sexual Orientation Non-Discrimination Act*, NY Attorney General, https://on.ny.gov/2SCIR4L (last visited June 30, 2021) (complainants may "file a complaint with New York State Attorney General's Civil Rights Bureau").

*v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010) (citation omitted); *see also*
DA MTD 8-9 (collecting cases). And that in turn proves standing and meets the *Ex
Parte Young* exception necessary to enjoin the Attorney General.

## II.   Emilee states plausible First Amendment claims.

Emilee states plausible claims that New York's laws (A) compel and restrict
her speech; (B) compel and restrict her expressive association; (C) force her to
participate in religious events and are not neutral or generally applicable; and (D)
are facially vague, overbroad, and grant unbridled discretion. As to her as-applied
challenges, New York's laws also do not pass strict scrutiny. *See* MPI 22-25
(explaining why laws must, but cannot, pass strict scrutiny); MPI Reply 6-8 (same).

### A.   New York's laws compel and restrict Emilee's protected speech.

#### 1.   The Accommodations and Discrimination Clauses compel Emilee to speak.

New York does not dispute the three-part test for identifying compelled
speech (MPI 9), or that Emilee's photography and blogging constitute speech (MPI
6-7). The only dispute is whether New York's laws compel Emilee to speak a
message she disagrees with. They do.

Emilee's claim is straightforward: her photographs and blogs are speech, New
York's laws force her to create and post messages about marriage she disagrees
with, and New York cannot compel her to do this—"to utter what is not in [her]
mind." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943).

In response, New York claims that its laws "facially … regulate conduct …
not speech." MTD 16. That's not true here. New York's "same services" rule
regulates Emilee's speech because its laws require her to provide services conveying
messages she disagrees with—i.e., to create photographs and blogs celebrating
same-sex marriage. MTD 19. This application is not "speculative" or "made-up."

*Contra* MTD 16; MPI Resp. 16. New York, amici, and state court judges all agree that New York's laws require this. *Supra* §I.A.1; MPI Reply 3. So these laws apply here to "speech itself." *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995).[5] And applying even a facially neutral law this way triggers First Amendment scrutiny. *See Holder v. Humanitarian Law Project* (*HLP*), 561 U.S. 1, 28 (2010) (law "directed at conduct" triggered strict scrutiny as applied because "the conduct triggering coverage under the statute consists of communicating a message").[6]

    To avoid *Hurley*, New York tries to limit it to non-profits. MPI Resp. 16-18; Mass. Br. 11; ACLU 11. But *Hurley* considered the application to parades "peculiar" (i.e. "speech itself"), not to non-profits. 515 U.S. at 557-58. Public accommodation laws often apply to non-profits. *Id*. at 580-81 (detailing examples). *Hurley* meanwhile extended protection to "business corporations generally" and "professional publishers." 515 U.S. at 574. And courts have applied *Hurley* to protect for-profits. *See Washington Post v. McManus*, 944 F.3d 506, 518 (4th Cir. 2019) (newspaper); *McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950, 962 (9th Cir. 2010) (same); *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 653 (7th Cir. 2006) (video-game company); MPI 10 (collecting other cases). Nor do courts distinguish "private artistic expression" from expressive services "offered to the

---

[5] Although New York denies Emilee's ability to bring "a proper as-applied challenge" (MTD 11, 16), courts often hear as-applied pre-enforcement challenges. *HLP*, 561 U.S. at 15-16; *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 234, 248-49 (2010); *Wisconsin Right to Life, Inc. v. FEC*, 546 U.S. 410, (2006) (per curiam); *Steffel*, 415 U.S. at 475 (noting pre-enforcement challenge to statute's "constitutionality" is appropriate "on its face or as applied").

[6] *See also Cohen v. California*, 403 U.S. 15, 18 (1971) (breach of peace law applied to words on jacket); *Hess v. Indiana*, 414 U.S. 105, 107 (1973) (disorderly conduct law applied to spoken words); *Cantwell v. Connecticut*, 310 U.S. 296, 303-07 (1940) (breach of peace law applied to playing record).

public on the open market" for First Amendment purposes. *Contra* MTD 19, 22; Mass. Br. 11; ACLU 11-12. The Supreme Court and the Second Circuit reject this distinction. *See* MPI 7-8 (collecting cases). So do other courts when considering speakers like Emilee. *See TMG*, 936 F.3d at 751-52; *B&N*, 448 P.3d at 913-14; *CNP*, 479 F. Supp. 3d at 557-59. There is no public-accommodation exception to the First Amendment.

Unable to distinguish *Hurley*, New York posits that equal-access rules never compel speech, citing *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* (*FAIR*), 547 U.S. 47 (2006) and *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980). MTD 21-22; MPI Resp. 16, 22; Mass. Br. 9-10; ACLU 13. But those cases considered compelled access to rooms and courtyards. And those spaces don't say anything. Photographs and blogs do. So the regulations in those cases didn't compel access to anything "inherently expressive." *FAIR*, 547 U.S. at 64. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 457 n.10 (2008) (distinguishing *FAIR* from situation when law forces someone "to reproduce another's speech against their will" or "co-opt[s] [their] own conduits for speech"); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,* 138 S. Ct. 1719, 1745 (2018) (Thomas, J., concurring) (same); *TMG*, 936 F.3d at 758 (same); *B&N*, 448 P.3d at 908-09 (same); *CNP*, 479 F. Supp. 3d at 564 n.169 (same); *Netchoice, LLC v. Moody*, 2021 WL 2690876, at *9 (N.D. Fla. June 30, 2021) (same).

None of the other cases New York or amici cite help them either. Some (like those about hotel rooms, barbeque, and termination decisions) did not involve speech at all, while others (like those about non-expressive club membership and hiring decisions) did not involve compelled speech. MTD 17-19; MPI Resp. 15-17; ACLU 6-8. In the end, New York (and amici, ACLU 8) can only point to *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013). But *Elane* overlooks how the First Amendment protects paid speakers and how even facially neutral laws can

compel speech as-applied. *Id.* at 68 (finding that law could compel photographs because it "applies not to Elane Photography's photographs but to its business operation"). So *Elane* contradicts *Hurley* and the other cases cited above. Courts refuse to follow *Elane* for that reason. *TMG*, 963 F.3d at 752; *B&N*, 448 P.3d at 916–17; *CNP*, 479 F. Supp. 3d at 558. This Court should too.

New York makes one more last-ditch argument that no "reasonable observer" would think Emilee endorses same-sex marriage. MPI Resp. 18-19. But Emilee's alleged facts show otherwise. *See* VC ¶¶ 92-96. No matter. Compelled speech doesn't turn on third-party perceptions. No one thinks drivers endorse state license plate mottos or newspapers endorse all opinions they print, yet the Supreme Court found compelled speech in these scenarios anyway. *Wooley v. Maynard*, 430 U.S. 705, 714-15 (1977) (license plates); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (opinions).

While New York dismisses *Wooley*, saying Emilee "is free to remain silent" (MTD 21), free speech is not so cramped. New York cannot condition Emilee's right to speak her desired view on giving up her business, going to jail, or speaking messages she opposes. That's not freedom at all. *See Hurley*, 515 U.S. at 574 (First Amendment protects "speaking on one subject while remaining silent on another.").

### 2. Emilee seeks the narrow right to decline to speak based on message, not status.

New York asserts broad authority to regulate Emilee's speech while Emilee only seeks the narrow right to "choose the content of [her] own message." *Hurley*, 515 U.S. at 573. As Emilee already explained, she does not object to serving LGBT clients but to conveying certain messages. MPI 13-14. Other courts have accepted this message/status distinction. *Id.* (collecting cases). This Court should too.

But instead of grappling with this distinction or with Emilee's cases, New York accuses Emilee of "refus[ing] service to LGBT customers on the basis of their

protected characteristics." MTD 17. That ignores Emilee's allegations and argument. Emilee only considers the what, not the who—the message she's being asked to create, not who is asking her to create. VC ¶ 140. That's why Emilee would photograph an opposite-sex wedding if asked by a gay parent, friend, or wedding planner; a staged wedding shoot with LGBT models; and products for LGBT business-owners. *Id.* ¶¶ 130-34. It's also why Emilee would not photograph some opposite-sex weddings. *Id.* ¶¶ 116, 137-39.

For these reasons, Emilee's editorial choices do not turn on client "characteristic[s]," (MTD 17) or "the identity of the couple being served." ACLU 4. Emilee treats prospective clients equally; she declines messages, not people. *See Hurley*, 515 U.S. at 572 (approving parade's editorial freedom to decline messages when it did not "exclude homosexuals as such"). New York retorts that Emilee "scours social media" to divine client status. MTD 18. Not so. She reviews requests from everyone to "confirm the request is consistent with her religious views." VC ¶ 312; *id.* ¶¶ 50, 238-45. Messages requested, not persons requesting.

Emilee's practice distinguishes her from the hypotheticals New York and its amici fear. MPI 2 (lawyers, print shops, and consultants rejecting clients based on status); Mass. Br. 19 (hotels, hairdressers, and chefs based on race); ACLU 2, 12 (photographers refusing clients based on race, religion, and sex). These involve per-se refusals to serve entire groups or services that do not use editorial judgment like Emilee's. And protecting Emilee's freedom would not "swallow the entire law for broad swathes of 'expressive' services." MTD 19; ACLU 8. Emilee's approach strikes the right balance and applies "only in narrow circumstances." Br. of Amici Curiae 14 States Supp. Pls. 11-13 ("Neb. et al. Br."), ECF No. 22 (explaining the many limiting principles of Emilee's theory).

New York's concerns simply misunderstand Emilee's services. She does not offer a "standardized service to couples" or provide minimal expressive input

"incidental to the final product." MPI Resp. 18-19. Emilee carefully creates her highly customized blogs and photographs, not her clients. And though she works with clients, she "retains full editorial control over" her tailored works. VC ¶¶ 54-89, 99-104. This collaborative process is common for commissioned works and fully protected. *See Buehrle v. City of Key West*, 813 F.3d 973, 977 (11th Cir. 2015); MPI 7 (collecting cases explaining this principle).

Given this expressive process, Emilee's policy does not "restrict[] LGBT clients' menu of services." MTD 18; ACLU 4-5. Unlike chicken wings or pizza, Emilee's photographs and blogs convey celebratory messages about marriage. *See* VC ¶¶ 42, 90, 105-08. Changing the content in these photographs and blogs necessarily changes their message. *TMG*, 936 F.3d at 753. New York's "flawed assumption" is that Emilee's services "are fungible products, like a hamburger or a pair of shoes. They are not." *B&N*, 448 P.3d at 910. Because Emilee's works can convey different messages, Emilee can and does offer a menu with the same positive messages about opposite-sex marriages to everyone. She declines the same messages to everyone too. That's equal treatment.

New York and amici even agree with this message/status distinction—at least sometimes. Take the bakers who can decline "anti-LGBT cakes" or cakes with "racist messages" under New York law if they "refuse[] to make similar cakes for anyone." NY Masterpiece Br., 2017 WL 5127307, at *28-29, 29 n.15; ACLU 6 n.1 (same). Yet New York cannot tolerate Emilee declining photographs or blogs celebrating same-sex weddings for anyone. New York cannot explain the difference between Emilee and those bakers. Because none exists.

In the end, New York's legal theory offers only downsides. It allows the government to pick winners (those bakers) and losers (Emilee). Yet it empowers New York to compel countless messages by countless speakers (MPI 14-15), no matter how hard amici try to avoid this result. *Compare* ACLU 5 (discussing

*Athenaeum*) *with Athenaeum*, 2018 WL 1172597, at *3-5 (interpreting law to require pro-Palestinian bar association to publish pro-Israeli advertisement "in gross contradiction" of association's view). Emilee's approach charts a more manageable, constitutional path: allow all speakers "the autonomy to choose the content of" their "message." *Hurley*, 515 U.S. at 573.

### 3. The Accommodations and Discrimination Clauses compel Emilee's speech based on content and viewpoint.

Although Emilee meets the three-part test for compelled speech, New York's laws go beyond that to compel Emilee's speech based on content and viewpoint. *See* MPI 15-17 (explaining this point).

In response, New York (and its amici) retread old ground, claiming its laws are neutral and regulate conduct. MPI Resp.19; MTD 23; ACLU 10 (stating question is "whether the *law itself* draws distinctions based on content"). Emilee already refuted these arguments. *Supra* § II.A.1. *See HLP*, 561 U.S. at 26-27.

But that does not stop New York and amici from embracing the content and viewpoint-based nature of New York's laws. As New York and its amici admit, these laws exempt bakers who refuse to make cakes with "anti-LGBT" or racist messages but punish Emilee for declining to celebrate same-sex weddings because of her religious beliefs. *Supra* § II.A.2. New York cannot allow some speakers to avoid speaking viewpoints offensive to them but force Emilee to speak viewpoints offensive to her. *Matal v. Tam*, 137 S. Ct. 1744, 1762-64 (2017). That violates the First Amendment.

### 4. The Clauses restrict Emilee's speech based on content and viewpoint as New York admits.

Emilee wants to express her beliefs about marriage and why she cannot create photographs or blogs celebrating same-sex weddings by publishing a statement on her company's website and explaining these beliefs to prospective

clients. VC ¶¶ 246-51; VC Ex. 2. New York admits this statement is "speech" and forbidden because of its content. MPI Resp. 20-21; MTD 20-21.

Undeterred, New York defends itself by invoking its goal of stopping "discrimination." MPI Resp. 21; MTD 20. But the laws still restrict speech based on content and viewpoint as-applied; the Publication Clause even restricts "communications" on this basis facially. MPI 17-18. Their purpose does not matter. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015) (rejecting purpose argument).

New York also jumps the gun by invoking its need to ban "discriminatory advertising." MTD 20. New York gets the application of this principle wrong. Laws may restrict speech that threatens to engage in illegal, *constitutionally unprotected* conduct. *United States v. Williams*, 553 U.S. 285, 298 (2008) (explaining this doctrine). But Emilee wants to make statements explaining her constitutional right to avoid speaking messages she disagrees with. New York cannot validly ban statements describing constitutionally protected activity like this. *See Bigelow v. Virginia*, 421 U.S. 809, 822 (1975) (invalidating restriction on abortion advertisement because "the activity advertised pertained to constitutional interests"); *Carey v. Population Servs., Int'l*, 431 U.S. 678, 700-01 (1977) (same because "the information suppressed by this statute related to activity with which, at least in some respects, the State could not interfere") (cleaned up).

This reasoning distinguishes "White Applicants Only" signs and cases about discriminatory advertisements from newspapers and housing providers. MTD at 20; ACLU 14. Those involved advertisements threatening constitutionally unprotected activity (employment or housing discrimination), not constitutionally protected speech (Emilee's right to choose which photographs and blogs to create). In this sense, Emilee's right to post depends on her right to control her photography. *See supra* § I.A.3 (explaining intertwinement); Mass. Br. 13 (agreeing with intertwinement). She can do the latter; so she can do the former too.

21

Just as important, Emilee's statements are not commercial speech. *Contra* MPI Resp. 20-21; Mass. Br. 12-13. They do more than propose a commercial transaction and discuss her religious views. *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (defining commercial speech). At the very least, her statements contain religious speech "inextricably intertwined with" commercial speech and that triggers strict scrutiny. *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 796-97 (1988).

Even if deemed commercial speech, Emilee's statements would still "advertise[] an activity itself protected by the First Amendment" (creating photographs and blogs), which would require greater scrutiny. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983). And New York's laws still restrict Emilee's speech based on viewpoint. That too triggers strict scrutiny even if her speech is commercial. *Matal*, 137 S. Ct. at 1767-69 (five justices agreeing that lower scrutiny did not apply to viewpoint-based restrictions on commercial speech); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 39 (2d Cir. 2018) (interpreting *Matal* this way). So no matter how New York construes Emilee's statements, banning them violates the First Amendment.

### B.   New York's laws compel and restrict Emilee's expressive association.

New York's laws force Emilee to associate in ways that undermine her message about marriage. This violates Emilee's First Amendment right "not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984). The Supreme Court uses a three-part test to evaluate this expressive association right. *Boy Scouts of Am. v. Dale*, the 530 U.S. 640, 648 (2000). Emilee meets this test.

First, Emilee "engage[s] in some form of expression." *Dale*, 530 U.S. at 648. She creates photographs and blogs celebrating her view of marriage. *See* MPI 6-8. Second, New York's laws "affect[] in a significant way" her "ability to advocate

public or private viewpoints." *Dale*, 530 U.S. at 648. New York's laws force Emilee to create photographs and blogs celebrating same-sex weddings. *See* § II.A. This in turn forces Emilee to (i) associate with others to create and distribute messages contrary to the messages she promotes elsewhere (celebrating opposite-sex marriage) and (ii) to publicly associate with messages contrary to those messages she promotes elsewhere. *See* VC ¶¶ 92-97, 162-63 (detailing Emilee's collaborative process and how she publicly associates with messages by posting photographs and blogs on her website); § I.A.1 (explaining New York's "same service" requirement). Third, forcing Emilee to associate fails strict scrutiny. *Id.* at 656-57; MPI 22-25; MPI Reply 6-8.

New York counters that "providing goods and services to a customer" does not "associate[] a business with that customer's protected status." MTD 23. But Emilee objects to associating with speech she is compelled to create, distribute, and put on her website. People would associate her businesses with that. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 564-66 (2005); *id.* at 568, (Thomas, J., concurring) (explaining that beef producers could establish First Amendment violation if forced to pay for beef advertisements attributed to them). This Court should agree, particularly because courts "give deference to [a plaintiff's] view of what would impair its expression." *Dale*, 530 U.S. at 653.

Next, New York tries to limit expressive association to membership in private nonprofit organizations. MTD 23; Mass. Br. 12. But this doctrine protects agencies when selecting clients, *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 178 (2d Cir. 2020), and for-profit organizations, *McDermott*, 593 F.3d at 962 (cannot force newspaper to hire certain editors because it was "bound to affect what gets published"); *Green v. Miss United States of Am., LLC*, 2021 WL 1318665, at *14 (D. Or. Apr. 8, 2021) (for-profit beauty pageant). So Emilee can invoke this doctrine too.

### C.   New York's laws violate Emilee's free-exercise and establishment rights.

Emilee elsewhere explains why she will likely prevail on her Free Exercise and Establishment Clause claims about compelled participation, neutrality, and general application. *See* MPI 19-22; MPI Reply 2-6. For these same reasons, she states plausible claims under the more lenient motion-to-dismiss standard.

### D.   The Unwelcome Clause is facially vague, overbroad, and grant officials unbridled discretion.

Unlike other parts of New York's laws, the Unwelcome Clause fails facially because it bans speech "to the effect that" a person is "unwelcome, objectionable or not acceptable, desired, or solicited." N.Y. Exec. Law § 296(2)(a). This language is vague, overbroad, and grants unbridled discretion.

*Overbreadth*: A statute is overbroad when a "substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotations omitted). The Unwelcome Clause is overbroad because terms like unwelcome, objectionable, and "not acceptable, desired, or solicited" are too elastic and ban too much speech. These terms could cover any critical statement related to protected classes on a public accommodation's website—statements like "Israel commits murder" or "Catholicism is wrong." By restricting core political and religious speech like this, the Unwelcome Clause bars too much. *See B&N*, 418 P.3d at 442-43 (striking "unwelcome," "objectionable," "unacceptable," and "undesirable" language as overbroad); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 215 (3d Cir. 2001) (Alito, J.) (policy banning "any unwelcome verbal … conduct which offends … an individual because of" protected characteristics was overbroad).

*Vagueness and Unbridled Discretion*: Due process requires laws to give adequate notice of what is prohibited and minimal guidelines for enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The First Amendment also forbids

24

laws that "delegate overly broad … discretion" to government officials or "allow[] arbitrary application," because "such discretion has the potential for becoming a means of suppressing a particular point of view." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). But the Unwelcome Clause is vague because it fails to define words like "unwelcome" or "objectionable" and gives officials arbitrary power to enforce, as the examples above show.

Ignoring this, New York attacks Emilee's facial challenge because its law "unambiguously proscribes" her speech. MTD 25. But New York never specifies whether this conclusion applies to the Denial Clause, the Unwelcome Clause, or both. No matter, New York's argument does not bar vagueness challenges to laws that ban a "substantial amount of constitutionally protected conduct, particularly rights protected by the First Amendment." *Copeland v. Vance*, 893 F.3d 101, 111 (2d Cir. 2018) (cleaned-up). Nor does this argument apply when laws grant too much enforcement authority. *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. District of Columbia*, 846 F.3d 391, 409-10 (D.C. Cir. 2017). So Emilee states plausible facial claims against the Unwelcome Clause.

## Conclusion

Emilee simply seeks the freedom to live consistent with her beliefs. Other courts and many states give artists and speakers the right to freely express their views. *See* Neb. et al. Br. New York does too for some speakers, just not Emilee. But New York's laws single out and ban Emilee's desired speech and let state officials pick and choose which messages to promote or punish as other states admit. *See* Mass. Br. The First Amendment doesn't tolerate this. Instead, speakers get to choose for themselves what to say and what not to say without the threat of civil or criminal penalties. The First Amendment guarantees Emilee that same choice. New York's motion to dismiss should be denied in full.

Respectfully submitted this 7th day of July, 2021.


By: s/ Jonathan A. Scruggs

Raymond J. Dague
New York Bar No. 1242254          Jonathan A. Scruggs
**Dague & Martin, P.C.**          Arizona Bar No. 030505
4874 Onondaga Road                Bryan D. Neihart*
Syracuse, New York 13215          Arizona Bar No. 035937
(315) 422-2052                    **Alliance Defending Freedom**
(315) 474-4334 (facsimile)        15100 N. 90th Street
rjdague@daguelaw.com              Scottsdale, Arizona 85260
                                  (480) 444-0020
                                  (480) 444-0028 (facsimile)
                                  jscruggs@ADFlegal.org
                                  bneihart@ADFlegal.org


ATTORNEYS FOR PLAINTIFFS


*Admitted *Pro Hac Vice*

26

**Certificate of Service**

I hereby certify that on the 7th day of July, 2021, I electronically filed the foregoing document with the Clerk of Court and that the foregoing document will be served via the CM/ECF system on all counsel of record.

<u>s/ Jonathan A. Scruggs</u>
Jonathan A. Scruggs

*Attorney for Plaintiffs*
