# EXHIBIT A

No. 19-1413

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

303 CREATIVE LLC and LORIE SMITH,

*Plaintiffs-Appellants,*

v.

AUBREY ELENIS, *et al.*,

*Defendants-Appellees.*

On Appeal from a Judgment of the United States District Court
for the District of Colorado (before the Hon. Marcia S. Krieger)
Case No. 1:16-cv-02372-MSK

**BRIEF OF AMICI CURIAE MASSACHUSETTS, CALIFORNIA, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, VIRGINIA, AND WASHINGTON IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE**

MAURA HEALEY
  *Attorney General*
  *Commonwealth of Massachusetts*
Elizabeth N. Dewar
  *State Solicitor*
Eric Gold\*
Jon Burke
Joshua Olszewski-Jubelirer
  *Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108
eric.gold@mass.gov
(617) 963-2663
  *\*Counsel of Record*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTERESTS OF AMICI .......................................................................................... 1

ARGUMENT ............................................................................................................ 2

    I.    States across the country have enacted laws to combat discrimination against LGBTQ people in public accommodations. ................................................................................. 2

        A.    LGBTQ Americans are a historically disadvantaged group. .......................................................................................... 3

        B.    States prohibit discrimination against LGBTQ people in public accommodations to prevent severe economic, personal, and social harms. ....................................................... 5

    II.    The First Amendment does not exempt businesses open to the public from state anti-discrimination laws. ........................................... 9

        A.    State public accommodations laws do not violate the Free Speech Clause when applied to people with objections to serving LGBTQ customers. ..................................................... 11

        B.    State public accommodations laws do not violate the Free Exercise Clause. ............................................................... 22

    III.    Colorado's prohibition on discriminatory advertising, like similar prohibitions across the country, is not unconstitutionally overbroad or vague. ..................................................................... 24

    IV.    A First Amendment exemption to public accommodations laws of the kind sought by Appellants would dramatically undermine anti-discrimination laws. ................................................................ 26

CONCLUSION ....................................................................................................... 28

CERTIFICATES OF COMPLIANCE AND SERVICE ........................................ 31

ADDENDUM ......................................................................................................... 33

## INTERESTS OF AMICI

The *Amici* States—Massachusetts, California, Connecticut, Delaware, the District of Columbia, Hawaiʻi, Illinois, Maine, Maryland, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, and Washington—file this brief pursuant to Fed. R. App. P. 29(a)(2) because we share sovereign and compelling interests in protecting our residents and visitors from discrimination. Like Colorado, we support civil rights protections for LGBTQ people, including prohibitions on discrimination in places of public accommodation: the diners, stores, and other businesses that are part of daily life in a free society. Such public accommodations laws respond to the pervasive discrimination LGBTQ people have long suffered and continue to suffer today, ensuring equal enjoyment of goods and services and combatting the severe personal, economic, and social harms caused by discrimination.

The *Amici* States also share interests in upholding the rights protected by the First Amendment. We respect and do not seek to abridge the right to hold and express views regarding the nature of marriage, including views founded in religious faith. But neither the Free Speech Clause nor the Free Exercise Clause shields businesses from content-neutral, generally applicable civil rights laws like

1

the one 303 Creative LLC (together with its proprietor, Ms. Lorie Smith, "Appellants") proposes to violate.

Exempting businesses from public accommodations laws on the basis of the First Amendment would undermine the vital benefits these laws provide to residents and visitors. Many Americans would face exclusion from a host of everyday businesses or, at the very least, the ever-present threat that any business owner could refuse to serve them when they walk in the door—simply because of their sexual orientation, or their race, religion, or gender.

The *Amici* States therefore join Colorado in asking this Court to affirm the decision below.

## ARGUMENT

**I.     States across the country have enacted laws to combat discrimination against LGBTQ people in public accommodations.**

The States have sovereign and compelling interests in protecting their residents, and particularly members of historically disadvantaged groups, from the economic, personal, and social harms caused by invidious discrimination. *See Roberts v. United States Jaycees*, 468 U.S. 609, 624 (1984). Since the mid-nineteenth century, statutes focused on places of public accommodation have been a centerpiece of state efforts to combat discrimination. *See Romer v. Evans*, 517 U.S. 620, 627-28 (1996). These statutes have long been held constitutional as

2

*infra*. Twenty of those laws include terms similar to Colorado's provision barring advertising "that indicates . . . that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of" a protected characteristic. Colo. Rev. Stat. § 24-34-601(2)(a).[5] Prohibitions against discriminatory advertising are also commonly included in anti-discrimination measures directed at housing and employment. *See, e.g.*, 42 U.S.C. § 3604 (barring housing advertising that "indicates any preference, limitation, or discrimination based on" a protected characteristic); 42 U.S.C. § 2000e-3(b) (similar prohibition for employment advertisements).

## II. The First Amendment does not exempt businesses open to the public from state anti-discrimination laws.

There is no real dispute that Appellants' business plan to refuse services to LGBTQ customers would violate Colorado's anti-discrimination law: Appellants would "expand[] the scope of 303 Creative's services to include the design, creation, and publication of wedding websites" while categorically refusing to "create websites for same-sex marriages." App. 2-324 (¶ 77); *id.* 2-326 (¶ 91). An objection to two people of the same sex marrying cannot reasonably be divorced

---

[5] Of the list of twenty-two States' laws included in Table C, *infra*, only three States' public accommodations laws do not use similar "unwelcome" terms. *See* Mass. Gen. Laws ch. 272, § 92A; Mont. Code Ann. § 49-2-304(1)(b); Or. Rev. Stat. § 659A.409.

from the status of being LGBTQ.  *See Christian Legal Soc. v. U.C. Hastings*, 561 U.S. 661, 689 (2010); *Lawrence v. Texas*, 539 U.S. 558, 583 (2003).  Nor is it a defense to provide *other* graphic and web design services to LGBTQ people, *cf.* Appellants' Br. 32.  Public accommodations laws exist to prevent not only outright exclusion, but also separate and unequal treatment.  Otherwise, our country would be blighted by segregated businesses that serve in perniciously unequal ways, reserving some services only for customers who are members of preferred groups. *See Katzenbach v. McClung*, 379 U.S. 294, 296-97 (1964) (discussing restaurant that served African-American customers through a take-out window but refused to serve them in the dining area).

      The First Amendment does not require permitting such unequal treatment by businesses that offer their services to the public.  No matter the sincerity of a business owner's religious beliefs or other deeply held views, the Free Speech Clause does not allow a business to pick and choose its customers in violation of laws that prohibit discriminatory conduct.  Nor does the Free Exercise Clause excuse a business from complying with neutral and generally applicable civil rights laws based on its owner's religious beliefs.

> **A.  State public accommodations laws do not violate the Free Speech Clause when applied to people with objections to serving LGBTQ customers.**

The application of Colorado's content- and viewpoint-neutral public accommodations law to prevent a commercial business from denying the full and equal enjoyment of their services to LGBTQ customers does not violate the Free Speech Clause of the First Amendment.

> **1.  Prohibiting businesses from discriminating against customers does not compel speech.**

Although the First Amendment prohibits States from "telling people what they must say" or requiring them to "speak the government's message," *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*, 547 U.S. 47, 61, 63 (2006) ("*FAIR*"), public accommodations statutes like Colorado's do neither.

Indeed, Colorado's public accommodations law does not regulate speech at all. In *FAIR*, the Supreme Court rejected the argument that a prohibition on law schools discriminating against military recruiters when providing campus access to outside employers regulated the law schools' speech. *Id.* at 60. The Court concluded that the prohibition regulated "conduct, not speech" given that "[i]t affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id.*; *see also, e.g.*, *Meyers v. E. Okl. Cty. Tech. Ctr.*, 776 F.3d 1201, 1207-08 (10th Cir. 2015) (following *FAIR* in holding that

11

employee's act of disobeying employer's directive was not protected speech). That reasoning applies equally to this case. State anti-discrimination laws like Colorado's affect what public accommodations "must *do*"—provide equal access to LGBTQ people—"not what they may or may not *say*." *FAIR*, 547 U.S. at 60. In other words, Colorado's law does not require speaking or endorsing a government motto, pledge, or message. *See id.* at 62. Rather, the law simply prohibits refusing to "afford equal access" to the full range of a business's services to LGBTQ couples. *Id.* at 60.

Moreover, even assuming that creating and arranging for the hosting of wedding websites is a form of speech, Colorado law does not "compel" making websites or otherwise regulate the process of website development. Appellants are under no legal obligation to offer the creation of wedding websites as a service of the business, nor to produce websites in any particular way. Colorado law simply requires that businesses offering their services to the public make wedding websites for LGBTQ customers if, and to the extent that, they make wedding websites for other customers—just as under the Solomon Amendment at issue in *FAIR*, recruiting assistance involving "elements of speech" like posting notices of employer visits was "only 'compelled' if, and to the extent, the school" chose to assist "other recruiters." 547 U.S. at 61-62. This type of non-discrimination requirement is a "far cry" from laws "dictat[ing] the content of . . . speech." *Id.*

12

(distinguishing cases like *Wooley v. Maynard*, 430 U.S. 705 (1977)). As the Supreme Court noted in *FAIR* with an example apposite here, "prohibit[ing] employers from discriminating in hiring on the basis of race" does not compel speech, and "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Id.* (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).[6]

### 2. The First Amendment does not protect advertisements giving notice that public accommodations will refuse service on the basis of a protected characteristic.

Public accommodations laws' restrictions on discriminatory advertising do not violate the free speech rights of business owners who wish to post notices of their intent to deny services on the basis of a protected characteristic. As the District Court recognized with respect to Colorado's "Communications Clause," such advertisements may be prohibited for at least two reasons. App. 3-576-579.

---

[6] Public accommodations laws also leave businesses like 303 Creative free to disclaim any message they worry may be communicated by providing non-discriminatory service. So long as businesses treat all customers equally, they may, for example, create and disseminate a disclaimer stating that the provision of a service does not constitute an endorsement or approval of any customer or conduct. *See FAIR*, 547 U.S. at 64-65; *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 86-88 (1980).

13

First, to the extent the notices constitute commercial speech, they can be banned outright simply because they advertise unlawful, discriminatory activities. *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 388-89 (1973) (employment discrimination ordinance validly prohibited newspaper from publishing sex-segregated employment advertisements).

Second, commercial speech doctrine aside, a state may prohibit such signs as part and parcel of, and incidental to, the public accommodations law's restriction on discriminatory conduct.  Such laws in essence prohibit discriminatory refusals of service that are communicated preemptively in a notice, rather than only after service is requested by the customer.  *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) ("That is why a ban on race-based hiring may require employers to remove 'White Applicants Only' signs." (quoting *FAIR*, 547 U.S. at 62 (internal quotation marks omitted))); *cf. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977) ("If an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs.").  Indeed, even the Eighth Circuit decision on which Appellants chiefly rely, *see* Br. 44, recognizes that, insofar as a state can constitutionally prohibit a discriminatory refusal to provide services, the state can also "forbid the [business owners] from advertising their intent to engage in discriminatory conduct."

14

Respectfully submitted,

MAURA HEALEY
  *Attorney General*
  *Commonwealth of Massachusetts*
Elizabeth N. Dewar
  *State Solicitor*
Eric Gold*
Jon Burke
Joshua Olszewski-Jubelirer
  *Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108
eric.gold@mass.gov
(617) 963-2663
  *Counsel of Record

XAVIER BECERRA
*Attorney General of California*
1300 I Street
Sacramento, CA 95814

WILLIAM TONG
*Attorney General of Connecticut*
55 Elm Street
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General of Delaware*
Department of Justice
Carvel State Building
6th Floor
820 North French Street
Wilmington, DE 19801

KARL A. RACINE
*Attorney General for the District of Columbia*
One Judiciary Square
441 4th Street, NW
Suite 630 South
Washington, D.C. 20001

CLARE E. CONNORS
*Attorney General of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
*Attorney General of Illinois*
100 West Randolph Street
Chicago, IL 60601

AARON M. FREY
*Attorney General of Maine*
6 State House Station
Augusta, ME 04333

BRIAN E. FROSH
*Attorney General of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

KEITH ELLISON
*Attorney General of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Boulevard
St. Paul, MN 55155

AARON D. FORD
*Attorney General of Nevada*
100 North Carson Street
Carson City, NV 89701

GURBIR S. GREWAL
*Attorney General of New Jersey*
25 Market Street
Trenton, NJ 08625

HECTOR BALDERAS
*Attorney General of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

LETITIA JAMES
*Attorney General of New York*
28 Liberty Street
New York, NY 10005

JOSHUA H. STEIN
*Attorney General of North Carolina*
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27603

ELLEN F. ROSENBLUM
*Attorney General of Oregon*
1162 Court Street N.E.
Salem, OR 97301

PETER F. NERONHA
*Attorney General of Rhode Island*
150 South Main Street
Providence, RI 02903

JOSH SHAPIRO
*Attorney General of Pennsylvania*
16th Floor
Strawberry Square
Harrisburg, PA 17120

THOMAS J. DONOVAN, JR.
*Attorney General of Vermont*
109 State Street
Montpelier, VT 05609

MARK R. HERRING
*Attorney General of Virginia*
202 North 9th Street
Richmond, VA 23219

ROBERT W. FERGUSON
*Attorney General of Washington*
P.O. Box 40100
Olympia, WA 98504

# CERTIFICATES OF COMPLIANCE AND SERVICE

# CERTIFICATE OF COMPLIANCE

1. This Brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B), because it contains 6,253 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman style, 14-point font.

/s/ Eric Gold
*Counsel of Record*

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify to the following:

1. All required privacy redactions have been made per 10th Cir. R. 25.5.

2. If required to file hard copies, those documents will be an exact copy of the ECF submission.

3. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Windows Defender Antivirus, most recently updated on April 29, 2020, and according to the program, it is free of viruses.

/s/ Eric Gold
*Counsel of Record*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 29, 2020, I electronically filed the foregoing document with the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system.  All counsel of record are registered as ECF Filers and will be served by the CM/ECF system.

                        /s/ Eric Gold
                        *Counsel of Record*