UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Emilee Carpenter, LLC d/b/a Emilee Carpenter Photography** and **Emilee Carpenter**, <br><br> Plaintiffs, <br><br> v. <br><br> **Letitia James**, in her official capacity as Attorney General of New York; **Johnathan J. Smith**, in his official capacity as Interim Commissioner of the New York State Division of Human Rights; and **Weeden Wetmore**, in his official capacity as District Attorney of Chemung County, <br><br> Defendants. | Case No. 6:21-cv-06303 <br><br> **Combined Memorandum of Law in Response to County Defendant's Motion to Dismiss and Reply in Support of Plaintiffs' Preliminary Injunction** <br><br> Oral Argument Requested |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................... ii

Introduction ................................................................................................................................ 1

Argument .................................................................................................................................... 1

    I.    Emilee has standing to stop the District Attorney from enforcing New York's laws against her. ........................................................................... 2

        A.    Emilee faces a credible threat that the District Attorney will enforce the Civil Rights Laws against her. ............................................................ 3

        B.    Emilee faces a credible threat that the District Attorney will enforce the Human Rights Laws against her. ......................................................... 6

    II.    Emilee's pleadings are clear, unambiguous, and allow the District Attorney to reasonably prepare a response. ................................................. 8

    III.    Emilee's preliminary injunction should be granted because the District Attorney causes her irreparable harm. .......................................... 9

Conclusion ................................................................................................................................ 11

## Table of Authorities

**Cases**

*281 Care Committee v. Arneson*,
     638 F.3d 621 (8th Cir. 2011) ............................................................................... 3

*Alexis Bailly Vineyard, Inc. v. Harrington*,
     931 F.3d 774 (8th Cir. 2019) ............................................................................... 6

*Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Company*,
     436 F.3d 82 (2d Cir. 2006) ................................................................................. 2

*Amadei v. Nielsen*,
     348 F. Supp. 3d 145 (E.D.N.Y. 2018) ................................................................. 3

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
     671 F.3d 140 (2d Cir. 2011) ............................................................................... 2

*Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati*,
     363 F.3d 427 (6th Cir. 2004) ............................................................................. 10

*Clapper v. Amnesty International USA*,
     568 U.S. 398 (2013) .................................................................................. 3, 6, 8

*Cooksey v. Futrell*,
     721 F.3d 226 (4th Cir.2013) ............................................................................... 4

*Cuviello v. City of Vallejo*,
     944 F.3d 816 (9th Cir. 2019) ............................................................................ 10

*EQT Prod. Co. v. Wender*,
     870 F.3d 322 (4th Cir. 2017) ........................................................................ 5, 6

*Fish v. Kobach*,
     840 F.3d 710 (10th Cir. 2016) .......................................................................... 10

*Hedges v. Obama*,
     724 F.3d 170 (2d Cir. 2013) ............................................................................... 8

*Holder v. Humanitarian Law Project*,
     561 U.S. 1 (2010) ............................................................................................... 4

*Holmes v. Fischer*,
     764 F. Supp. 2d 523 (W.D.N.Y. 2011) ............................................................... 8

*Jacobus v. Alaska*,
    338 F.3d 1095 (9th Cir. 2003) ........................................................................... 4

*Kiser v. Reitz*,
    765 F.3d 601 (6th Cir. 2014) ............................................................................. 7

*Majors v. Abell*,
    317 F.3d 719 (7th Cir. 2003) ............................................................................. 3

*Maya v. Centex Corporation*,
    658 F.3d 1060 (9th Cir. 2011) ........................................................................... 7

*National Organization for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013) .............................................................................. 1

*Nicholson v. Scoppetta*,
    344 F.3d 154 (2d Cir. 2003) ............................................................................ 10

*North Carolina Right to Life, Inc. v. Bartlett*,
    168 F.3d 705 (4th Cir. 1999) ............................................................................. 3

*Opulent Life Church v. City of Holly Springs*,
    697 F.3d 279 (5th Cir. 2012) ........................................................................... 10

*People v. Fuller*,
    155 Misc. 2d 812 (Crim. Ct. 1992) .................................................................... 5

*Peoples Rights Organization, Inc. v. City of Columbus*,
    152 F.3d 522 (6th Cir. 1998) ............................................................................. 4

*Pic-A-State Pa., Inc. v. Reno*,
    76 F.3d 1294 (3d Cir. 1996) .............................................................................. 4

*Rhode Island Association of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999) ............................................................................... 4

*Roe v. City of New York*,
    151 F. Supp. 2d 495 (S.D.N.Y. 2001) ................................................................ 8

*Russell v. Lundergan-Grimes*,
    784 F.3d 1037 (6th Cir. 2015) ........................................................................... 6

*State v. United States Department of Commerce*,
    315 F. Supp. 3d 766 (S.D.N.Y. 2018) ................................................................ 8

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................... 2, 3, 4, 6

*U.S. Telecom Association v. Federal Communications Commission,*
    825 F.3d 674 (D.C. Cir. 2016) .......................................................................... 3

*Valle del Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013) .......................................................................... 6

*Vermont Right to Life Committee, Inc. v. Sorrell,*
    221 F.3d 376 (2d Cir. 2000) ............................................................................. 9

*Vincenty v. Bloomberg,*
    476 F.3d 74 (2d Cir. 2007) ..................................................................... 7, 9, 10

*Virginia v. American Booksellers Association, Inc.,*
    484 U.S. 383 (1988) ........................................................................................ 3

*Winter v. Wolnitzek,*
    834 F.3d 681 (6th Cir. 2016) ............................................................................ 8

*Wollschlaeger v. Governor, Florida,*
    848 F.3d 1293 (11th Cir. 2017) ........................................................................ 9

**<u>Statutes</u>**

New York Civil Rights Law § 40-d ............................................................................ 4, 5

**<u>Other Authorities</u>**

Brief for Respondents, *Susan B. Anthony List v. Driehaus,* 573 U.S. 149
    (2014) (No. 13-193), 2014 WL 1260424 ...................................................... 7, 8

New York State Law Reporting Bureau, *New York Officials Selection of
    Opinions for Publication,* https://bit.ly/3xgj7u7 ............................................ 4, 5

## Introduction

New York's laws threaten Emilee Carpenter with fines, jailtime, and other severe penalties for operating her photography studio consistent with her faith. The threat of these penalties reasonably causes Emilee to chill her desired speech and imposes other costs. Verified Complaint ("VC") ¶¶ 125, 229-53, 261, 266-68, 309, ECF No. 1.

In response, Defendant Weeden Wetmore ("District Attorney") concedes his authority to criminally prosecute Emilee for violating New York's laws. *Id.* ¶¶ 17, 217, 226-27; Dist. Att'y's Mem. of Law in Supp. of Dismissal ("DA MTD") 4-7, ECF No. 24-2. He admits that district attorneys have prosecuted people under New York's laws before. DA MTD 4-7. And he never disavows enforcing these laws against Emilee in the future. *See id.* 15 ("reserv[ing] his rights to make further arguments in support of the statutes"). But he claims "possible action" doesn't give Emilee standing or cause her irreparable harm. *Id.* at 13, 15-16. That's incorrect.

Emilee need not endure "an unattractive set of options"—either "refrain[] from" First Amendment activity or risk "criminal penalties for violating the challenged law[s]"—before protecting her rights. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013) (internal quotations omitted). Nor does Emilee need to show certain prosecution. Emilee only needs to show a credible threat of enforcement. She makes that showing. And because Emilee refrains from constitutionally protected activities and incurs other costs because of New York's laws, she suffers irreparable harm. So the District Attorney's motion should be denied and Emilee's requested injunction should be granted.

## Argument

The District Attorney primarily makes three arguments. First, the District Attorney brings a facial Rule 12(b)(1) motion challenge to Emilee's standing because

1

the motion only attacks the complaint's allegations. *See* DA MTD 3-13 (relying on complaint only); Mem. of Law in Resp. to Defs.' Mot. to Dismiss ("MTD Resp.") 2 (filed concurrently) (explaining factual/facial attacks).[1] Next, the District Attorney moves for a more definite statement under Rule 12(e). DA MTD 14. Finally, the District Attorney says Emilee's requested injunction should be denied because she has not shown irreparable harm. *Id.* 15-17.

But the District Attorney is incorrect on all counts. Emilee (I) has standing to protect her constitutional rights against New York's laws because she faces a credible threat that the District Attorney will enforce them; (II) Emilee does not need to provide a more definite statement explaining the District Attorney's involvement in enforcing the laws; and (III) Emilee is suffering irreparable harm, an injury which should be stopped by granting her requested injunction.

### I. Emilee has standing to stop the District Attorney from enforcing New York's laws against her.

Emilee has standing to prevent the District Attorney from enforcing New York's Civil Rights and Human Rights Laws against her. Because the District Attorney facially challenges Emilee's standing, "all reasonable inferences to be drawn from [Emilee's] factual allegations" should be "construe[d]" in Emilee's favor. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

For standing, Emilee must show injury-in-fact, causation, and redressability. MTD Resp. 3 (reviewing standing requirements). The District Attorney only disputes whether Emilee suffers an injury-in-fact. She does. Emilee intends to engage in constitutionally protected activities. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 159 (2014); MTD Resp. 4-7. New York's laws arguably

---

[1] The District Attorney also seeks to dismiss Emilee's case under Rule 12(b)(6). DA MTD 10-11. But he only questions Emilee's standing, not the plausible merits of her claims. *Id.* Courts treat such Rule 12(b)(6) motions under Rule 12(b)(1). *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006).

prohibit her desired activities. *SBA List*, 573 U.S. at 159. *See* MTD Resp. 4-7. And she risks a "credible threat of prosecution." *SBA List*, 573 U.S. at 159.

Emilee can meet the low threshold to prove credible enforcement because the Human Rights and Civil Rights Laws arguably proscribe her expressive activities. MTD Resp. 4-7 (making this point). *See also U.S. Telecom Ass'n v. Fed. Commc'ns Comm'n*, 825 F.3d 674, 739 (D.C. Cir. 2016) (standing where party was "direct object" of regulation); *281 Care Comm. v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011) (standing where law "could reasonably be interpreted as" covering plaintiffs); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (standing where "threat" to plaintiff "is latent in the existence of the statute"). And the defendants actively enforce the laws. *See* VC ¶¶ 174-227; DA MTD 6-7 (collecting enforcement cases).

Under these circumstances, courts apply "an enforcement presumption." MTD Resp. 4 (collecting cases). *See also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (standing where court had "no reason to assume" officials would not enforce law); *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (acknowledging "presumption"). And applying this enforcement presumption here, Emilee faces a credible threat that the District Attorney will enforce New York's (A) Civil Rights Laws and (B) Human Rights Laws against her.

### A.   Emilee faces a credible threat that the District Attorney will enforce the Civil Rights Laws against her.

The District Attorney first denies Emilee's standing by calling his prosecution of the Civil Rights Laws merely "possible." DA MTD 6. But Emilee need only prove a "substantial risk" of harm, not a "literal[] certain[ty]" of harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). *See Amadei v. Nielsen*, 348 F. Supp. 3d 145, 158 n.6 (E.D.N.Y. 2018) (rejecting "certainly impending" standard in favor of "substantial risk" to show standing for future harm).

3

Emilee has shown that "substantial risk." New York's laws arguably prohibit Emilee's desired activities. MTD Resp. 4-6 (explaining New York's "same service" rule). *See also* VC ¶ 172 (Civil Rights Laws operate like the Accommodations Clause and the Publication Clause's Denial Clause). The District Attorney hasn't explicitly disavowed enforcing the law against Emilee. *See* MTD Resp. 7 (making disavowal point); *SBA List*, 573 U.S. at 165 (failure to disavowal supported standing); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (similar); *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1299 (3d Cir. 1996) (saying "prosecution is unlikely" insufficient because did not "expressly disavow[]" intent to prosecute).[2] And he doesn't implicitly disavow enforcement by "reserv[ing] his rights" to "support the statutes." DA MTD 15. *See Cooksey v. Futrell*, 721 F.3d 226, 235-37 (4th Cir. 2013) (standing where board "reserved the right" for future enforcement); *Jacobus v. Alaska*, 338 F.3d 1095, 1104-1105 (9th Cir. 2003) (standing when state "reserved the right to prosecute"). District attorneys actively enforce the law. DA MTD 6-7. And the law imposes criminal penalties—fines and a criminal record. N.Y. Civil Rights Law § 40-d. *See SBA List*, 573 U.S. at 166 ("threat of criminal prosecution" supports standing). That's sufficient for Emilee to prove standing.

To avoid this result, the District Attorney claims that prosecutions under the Civil Rights Law must be "accompanied" by other penal violations because he can find "no reported examples" from the Miscellaneous Reports of district attorneys "prosecuting a charge solely under the Civil Rights Law." DA MTD 6-7. But "less than seven percent of the opinions submitted for publication" make it into the

---

[2] Without an express disavowal, Emilee still "face[s] a clear Hobson's choice" of risking prosecution or refraining from speaking. *Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998). Allowing officials to waffle "effectively insulate[s] unconstitutional [applications of] statutes from pre-enforcement review." *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 36 (1st Cir. 1999). And even explicit disavowals are not enough to disprove credible threat if the law contradicts the officials' disavowal. *See* MTD Resp. 8 (citing *Sorrell* and *Dean*).

Miscellaneous Reports. New York State Law Reporting Bureau, *New York Officials Selection of Opinions for Publication*, https://bit.ly/3xgj7u7. So the lack of a reported decision, even if true, means little.

*People v. Fuller* doesn't support the District Attorney's interpretation either. 155 Misc. 2d 812 (Crim. Ct. 1992). *Contra* DA MTD 9-10. There the court determined that district attorneys (unlike civil parties) did not need to notify the Attorney General's office before criminally prosecuting complaints under N.Y. Civil Rights Law § 40-d. *Fuller*, 155 Misc. 2d at 815. So when the court said § 40-d didn't create "a new class of *criminal* offenses," it just meant that district attorneys didn't have to notify the Attorney General about their criminal prosecutions. *Id.* That's true because the notice requirement to which the court referred was added "19 years" after § 40-d's criminal provision. *Id.* So the notice requirement did not create a new "criminal offense" because § 40-d already criminalized violations of the Civil Rights Law.

That reading is also the only way to square *Fuller* with § 40-d's plain language, which contradicts and trumps the District Attorney's interpretation. Section 40-d says "any person who shall violate any of the provisions of the foregoing section shall be deemed guilty of a class A misdemeanor." N.Y. Civ. Rts. Law § 40-d. The law does not limit prosecutions to instances where violations are "accompanied by other violations of the Penal Law." DA MTD 6. Section 40-d contains no plus-one requirement.

So Emilee does not need to engage in "further criminal wrongdoing" to be prosecuted under the Civil Rights Laws (not that Emilee's desired activities should be considered criminal). DA MTD 13. That means § 40-d currently threatens Emilee for operating her business as she desires; her interpretation is "reasonable enough" to give her standing. *See* MTD Resp. 4, 8 (citing *Sorrell* and *Dean*); *EQT Prod. Co. v. Wender*, 870 F.3d 322, 331 (4th Cir. 2017) (government's "litigation position cannot

override the plain text of the [law] when it comes to establishing a credible threat of enforcement"). *Cf.* MPI Resp. 4-6, 14-15 (explaining "same service" rule and New York's ban on Emilee's statements). And the fact that the Attorney General can also prosecute Emilee for violating the law further bolsters her standing. *SBA List*, 573 U.S. at 164 (standing bolstered by number of potential complainants). *Contra* DA MTD 9 (explaining Attorney General's ability to enforce the law).

### B.  Emilee faces a credible threat that the District Attorney will enforce the Human Rights Laws against her.

Emilee also has standing to challenge the Human Rights Laws. The District Attorney disagrees. He claims that Emilee lacks standing to challenge the Human Rights Laws because any harm first requires a complaint to be filed against Emilee. DA MTD 4-5. Only then would the District Attorney prosecute Emilee if she "resist[ed], prevent[ed], imped[ed], or interfer[ed]" an investigation or did not comply with "an existing enforcement order." *Id.*

But under the District Attorney's theory, Emilee would have to violate the law and be prosecuted before she could challenge the Human Rights Laws. Neither the Supreme Court nor the Second Circuit require so much. *See* MTD Resp. 9 (collecting cases). Pre-enforcement lawsuits exist so that plaintiffs like Emilee do not have to violate laws before challenging them. *See, e.g.*, *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019) (standing despite "lack of prior enforcement"); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015) (standing where party "could be prosecuted"); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 n.5 (9th Cir. 2013) (rejecting argument "that a specific threat is necessary to demonstrate standing").

In any event, Emilee's standing does not rely "on a highly attenuated chain of possibilities," as the District Attorney suggests. *Clapper*, 568 U.S. at 410. Even after Emilee violates the law (something courts do not even require for standing), she

6

faces a "substantial risk" of harm because so many people can file complaints against her—"aggrieved persons" and organizations, the Attorney General, state officials, and testers. VC ¶¶ 181-227. Indeed, just this past year, Emilee has already received at least seven requests asking her to celebrate same-sex weddings. *Id.* ¶ 266. She can reasonably expect many more given New York's large LGBT population. *Id.* ¶¶ 283-84. And if she posts her desired statement or continues to offer photography to only celebrate opposite-sex weddings, anyone who visits her website (3000 people so far) and feels "aggrieved" can file a complaint against her. *Id.* ¶ 276-77.

That complaint in turn triggers an investigative process that harms Emilee. *See* MTD Resp. 9-10; *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) (standing based on potential administrative procedure). And the outcome of this process is certain. New York has made its position crystal clear that Emilee violates the law by offering only to photograph opposite-sex weddings or by posting her desired statement. *See* MTD Resp. 4-7 (stating New York's position based on briefs, amicus briefs, and past prosecutions). This certain outcome then inflicts another, distinct harm on Emilee: the stiff criminal penalties mentioned above and an order requiring her to violate her religious beliefs.

But Emilee cannot violate her religious beliefs. VC ¶¶ 121, 136-37, 162. So no matter how many perfunctory "links" the District Attorney tries to identify before he can punish Emilee, each link is not just plausible; it's certain. And that's what matters. *Compare Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) ("A causation chain does not fail simply because it has several 'links,' provided those links are not hypothetical or tenuous") (cleaned-up); *Vincenty v. Bloomberg*, 476 F.3d 74, 80-81 (2d Cir. 2007) (not questioning pre-enforcement standing though officers had "case-by-case" "discretion" to issue summonses); Br. for Resp'ts, Susan B. Anthony List v. Driehaus at *36-37, 573 U.S. 149 (2014) (No. 13-193), 2014 WL

1260424, (unsuccessfully arguing against standing to challenge eight-step administrative process) *with Clapper*, 568 U.S. at 410 (rejecting standing argument that depended on a five-link chain of "possibilities," each based on "highly speculative fear…"). Because that certainty easily rises to the level of a "substantial risk," that in turn justifies standing. *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013) (law requires substantial risk not "an intent by the government to enforce" law against a plaintiff); *State v. United States Dep't of Com.*, 315 F. Supp. 3d 766, 782 n.7 (S.D.N.Y. 2018) (rejecting effort to limit application of "substantial risk" test).

Emilee's claims are also ripe because she alleges standing, the dispute is clear, and Emilee's challenge is primarily legal. *See* MTD Resp. 3, 6 (courts blend standing and ripeness); *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016) (noting the line between "standing and ripeness … has evaporated"). *Contra* DA MTD 11-13 (arguing against ripeness). So Emilee should not have to wait to vindicate her rights.[3]

## II. Emilee's pleadings are clear, unambiguous, and allow the District Attorney to reasonably prepare a response.

The District Attorney's Rule 12(e) motion for a more definite statement should be denied. Such motions are "disfavored" and should only be granted if the "complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Holmes v. Fischer*, 764 F. Supp. 2d 523, 531 (W.D.N.Y. 2011) (internal quotation marks omitted). None

---

[3] Because the District Attorney's motion to dismiss should be denied, so should his Rule 12(f) motion to strike. DA MTD 13-14. Alternatively, the motion should still be denied because the District Attorney did not show the allegations would be inadmissible against the other defendants, are irrelevant to the other defendants, or cause him prejudice. *See, e.g.*, *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (considering these factors in denying motion to strike).

of these requirements exist here. The District Attorney understands Emilee's constitutional claims, lists his involvement with enforcing the laws, examines his enforcement authority under those laws, and does not explain any supposed prejudice. DA MTD 3-9, 14-15. But he says a more definite statement is necessary because he "would not bring an action against" Emilee "absent" other "possible circumstances." *Id.* 14. But Emilee has explained why those "possible circumstances" are in fact certain and therefore create a credible threat that the District Attorney will enforce the laws against her. *Supra* § I. And the District Attorney's statement does not prevent him from "changing [his] mind" anyway. *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) (collecting cases); *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1306 (11th Cir. 2017) (rejecting non-binding statements). Emilee needs to show a credible threat for standing. She has. No more elaboration is necessary.

### III. Emilee's preliminary injunction should be granted because the District Attorney causes her irreparable harm.

Emilee meets all four of the preliminary injunction factors. Mem. of Law in Supp. of Pls.' Prelim. Inj. Mot. ("MPI") 4-25, ECF No. 3-1. Of the four factors, the District Attorney only challenges Emilee's "irreparable harm." His challenges fail.

The District Attorney claims that Emilee has not shown irreparable harm because enforcement is not "real or imminent." DA MTD 16. Not so. Emilee faces a credible threat of enforcement (including by the District Attorney's actions) as she has explained. *Supra* § I; MTD Resp. 3-11. Emilee first learned about New York's laws in 2019. VC ¶¶ 142-43. Only later did she grasp their threats. *Id.* ¶¶ 144-45. Then she received seven requests to celebrate same-sex weddings last year. *Id.* ¶ 266. Emilee's potential liability increased with each request. So she sought this injunction when her risk became intolerable and threats against her became ripe. *See Vincenty*, 476 F.3d at 78-80, 89 (2d Cir. 2007) (rejecting lack-of-harm argument

9

in pre-enforcement suit brought by artists refraining from creating works when they filed suit "at such time as the plaintiffs can actually demonstrate that relief is warranted" (internal quotation marks omitted)).

For these same reasons, the District Attorney is incorrect to argue that Emilee's requested injunction should be denied "based on delay alone." DA MTD 17. As requests streamed in, Emilee's risk accelerated as did her desire to adopt her policy and post her statement. VC ¶¶ 269-70. Under these circumstances, any perceived delay is not "particularly probative," especially because Emilee's constitutional harm is "ongoing" and "worsening" with each day she refrains from speaking. *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (finding irreparable harm despite yearlong delay when "[e]ach instance" of "restrained … speech" continued to the constitutional injury"). *See also Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (30-month delay did not negate irreparable harm in voting rights case); *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) (delay did not negate strong First Amendment arguments).

The District Attorney's cited cases about delay are distinguishable because Emilee filed her requested injunction with her complaint and her decision about when to file the injunction is explainable. *Contra* DA MTD 16-17 (relying on delay cases where parties filed injunctions three or four months after their complaint and could not explain reason for any delays).

The District Attorney's delay argument is also "in tension" with his "primary contention that" Emilee's "claims are unripe." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012). *See* DA MTD 13 (making argument). *Cf. Nicholson v. Scoppetta*, 344 F.3d 154, 167 n.6 (2d Cir. 2003) (rejecting dissent's claim that plaintiffs' 14-month delay negated irreparable harm when timing was based on showing "relief is warranted"). The reality is that Emilee objectively chills

her expression and incurs other costs to avoid being prosecuted by the District Attorney and timely requested this injunction when her risks became intolerable. So Emilee suffers irreparable harm. This Court should grant her injunction against the District Attorney.

## Conclusion

Emilee faces a credible threat that New York's laws will be enforced against her if she engages in her desired expression. The District Attorney has authority to enforce those laws and has prosecuted them in the past. So this Court should deny the District Attorney's motion and grant Emilee's requested injunction because Emilee has standing, she has made her claims against the District Attorney clear, and she suffers irreparable harm.

Respectfully submitted this 7th day of July, 2021.

|  |  |
|---|---|
| Raymond J. Dague<br>New York Bar No. 1242254<br>**Dague & Martin, P.C.**<br>4874 Onondaga Road<br>Syracuse, New York 13215<br>(315) 422-2052<br>(315) 474-4334 (facsimile)<br>rjdague@daguelaw.com | By: s/ Jonathan A. Scruggs<br><br>Jonathan A. Scruggs<br>Arizona Bar No. 030505<br>Bryan D. Neihart*<br>Arizona Bar No. 035937<br>**Alliance Defending Freedom**<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(480) 444-0020<br>(480) 444-0028 (facsimile)<br>jscruggs@ADFlegal.org<br>bneihart@ADFlegal.org |

ATTORNEYS FOR PLAINTIFFS

*Admitted *Pro Hac Vice*

**Certificate of Service**

I hereby certify that on the 7th day of July, 2021, I electronically filed the foregoing document with the Clerk of Court and that the foregoing document will be served via the CM/ECF system on all counsel of record.

s/ Jonathan A. Scruggs
Jonathan A. Scruggs

*Attorney for Plaintiffs*
