UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EMILEE CARPENTER, LLC, *et al.*,

                              Plaintiffs,                    Case # 21-CV-6303-FPG

v.

                                                                  DECISION & ORDER

LETITIA JAMES, *et al.*,

                              Defendants.

## INTRODUCTION

On December 13, 2021, this Court held that the Constitution does not prevent New York State from ensuring that all consumers in the marketplace, without regard to sexual orientation, have "equal access to publicly available goods and services," including custom goods and services. *Emilee Carpenter, LLC v. James*, 575 F. Supp. 3d 353, 373 (W.D.N.Y. 2021). This holding flowed from the basic principles on which our nation was founded: *all* people are "entitled to be treated in a manner consistent with their inherent equality, dignity, and worth." *Id.* at 361 (internal quotation marks and brackets omitted). As a result, the Court dismissed the complaint filed by Plaintiff Emilee Carpenter and the entity through which she operates her for-profit wedding-photography business, "Emilee Carpenter, LLC."[1] *See id.* at 385-86. Plaintiff appealed that determination. ECF No. 70.

Before the Second Circuit could decide the appeal, the Supreme Court issued its decision in *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023). Contrary to this Court's position, the Supreme

---

[1] For ease of reference, and except where context dictates otherwise, the Court refers to Emilee Carpenter and Emilee Carpenter LLC in the singular "Plaintiff."

1

Court held that the Free Speech Clause of the First Amendment bars states from applying their public accommodations laws to "expressive activity to compel speech." *303 Creative LLC*, 600 U.S. at 592 (internal quotation marks omitted). *But see id.* at 604 (Sotomayor, J., dissenting) ("[The plaintiff business] argues, and a majority of the Court agrees, that because the business offers services that are customized and expressive, the Free Speech Clause of the First Amendment shields the business from a generally applicable law that prohibits discrimination in the sale of publicly available goods and services. That is wrong. Profoundly wrong."). Thereafter, and recognizing that there was "little daylight" between the facts alleged in this case and those that entitled the plaintiff to relief in *303 Creative*, the Second Circuit vacated the dismissal of Plaintiff's free-speech claim and remanded the case to this Court for further proceedings. *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 107 (2d Cir. 2024). Plaintiff now renews her motion for a preliminary injunction against Defendants Leticia James (in her official capacity as New York's Attorney General), and Jonathan J. Smith (in his official capacity as interim commissioner of the New York State Division of Human Rights).[2] Defendants oppose the motion. ECF No. 101.

In light of the Supreme Court's binding precedent in *303 Creative*, and for the reasons discussed below, Plaintiff's motion is GRANTED. The Court will issue a narrow injunction barring Defendants from applying New York's public accommodation laws "peculiarly to compel expressive activity" with which Plaintiff disagrees. *Emilee Carpenter*, 107 F.4th at 107. Beyond that "peculiar" circumstance, however, Plaintiff remains fully obligated to comply with New

---

[2] A third defendant, Weedon Wetmore (District Attorney for Chemung County), recently settled this matter with Plaintiff. *See* ECF No. 91, 93.

2

York's public accommodation laws, and she remains subject to all remedies and penalties for their violation. Conversely, except to the limited extent directed herein, New York's public officials remain fully empowered to police the public marketplace to ensure that "gay couples [are not] treated as social outcasts . . . inferior in dignity and worth." *Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 584 U.S. 617, 631 (2018).

## BACKGROUND

A full recitation of the relevant facts can be found in the Court's prior decision. In brief, Plaintiff has been a for-profit wedding photographer since 2012, and has operated her business through "Emilee Carpenter, LLC" since 2019. ECF No. 1 ¶¶ 25, 27. In addition to wedding-photography services,[3] Plaintiff provides "branding-photography" services, which "depict and promote businesses and their services" for marketing purposes. *Id.* ¶¶ 36, 37.

Plaintiff believes that opposite-sex marriage is a gift from God, and she uses her wedding-photography business to celebrate such marriages. *Id.* ¶¶ 47, 48. Other types of arrangements, including "same-sex or polygamous engagements or marriages," contradict Plaintiff's beliefs, and she does not wish to celebrate or promote such arrangements through her photography business.

---

[3] Plaintiff also provides engagement photography. ECF No. 1 ¶ 32. When the Court refers to Plaintiff's "wedding-photography services," it means both engagement and wedding photography.

In addition, the parties continue to debate whether Plaintiff's blogging is part of the "service" she provides to her clients for purposes of New York's public accommodation laws. *See* ECF No. 99-1 at 16, 20; ECF No. 101 at 21-23. The Second Circuit suggested that this Court address the issue on remand with the benefit of a fully developed record. *See Emilee Carpenter*, 107 F.4th at 106. However, the Court need not do so at this time given the manner in which the Court resolves Plaintiff's motion. Plaintiff's blogging is not an independent service but is provided only in connection with her wedding-photography packages. A preliminary injunction that, in substance, permits Plaintiff to refuse wedding-photography services to same-sex couples therefore avoids any potential conflict that would arise between Plaintiff's religious beliefs and her statutory obligations under New York's public accommodation laws, regardless of whether such blogging is viewed as a service or as an advertisement. The Court therefore confines its analysis to Plaintiff's photography.

*See id.* ¶ 117.  Because Plaintiff believed that New York's public accommodation laws "threatened her ability to operate her business according to her faith," *id.* ¶ 144, she brought this pre-enforcement challenge under 42 U.S.C. § 1983, alleging that the state's public accommodation laws violate (1) her free-speech and free-association rights; (2) her right to freely exercise her religion; (3) the Establishment Clause of the First Amendment; and (4) her right to due process. ECF No. 1 at 47-53.  As stated, this Court initially dismissed Plaintiff's complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), concluding that she had failed to state any viable claim for relief.  *See Emilee Carpenter*, 575 F. Supp. 3d at 385-86.  The Court consequently denied Plaintiff's motion for a preliminary injunction as moot.  *See id.* at 386.

Plaintiff appealed the Court's rulings.  ECF No. 70.  Before the Second Circuit could decide the appeal, the Supreme Court issued its decision in *303 Creative*.  In *303 Creative*, a website designer brought a pre-enforcement challenge to Colorado's public accommodation laws.  She desired to expand her offerings to include design services "for couples seeking websites for their weddings." *Id.* at 579.  Like Plaintiff, the designer believed that "marriage should be reserved to unions between one man and one woman," and she wished to restrict her services accordingly so that she would not be compelled to create expression that defies her religious beliefs. *Id.* at 580. The Supreme Court agreed that Colorado's public accommodation laws violated the designer's free-speech rights insofar as they "coerc[ed] [her] to create websites endorsing same-sex marriage or expressing any other message with which she disagrees." *Id.* at 593.  More broadly, the Supreme Court held that a state public accommodation law may violate a business owner's free-speech rights under the First Amendment to the extent it "compel[s] an individual to create speech she does not believe." *Id.* at 578-79.

4

With the benefit of *303 Creative*, the Second Circuit affirmed in part and reversed in part this Court's prior ruling. *See Emilee Carpenter*, 107 F.4th at 113-14. The Second Circuit determined that all of Plaintiff's claims were properly dismissed except her free-speech claim, which the court reinstated in light of *303 Creative*. *See id.* at 114. With respect to a preliminary injunction on the free-speech claim, the Second Circuit declined to address the issue in the first instance. *See id.* at 107. Instead, it held that remand was appropriate for the "fact-intensive First Amendment analysis" that *303 Creative* suggested was required in this context. *Id.* at 114.

On remand, the Court permitted the parties to engage in a limited period of discovery before further motion practice. ECF No. 77. On February 18, 2025, Plaintiff filed a renewed motion for a preliminary injunction protecting her free-speech rights recognized in *303 Creative*. ECF No. 99. Briefing on the motion is now complete.

## DISCUSSION

"[T]o obtain a preliminary injunction against governmental action taken pursuant to a statute, the movant has to demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020). "The movant also must show that the balance of equities tips in his or her favor." *Id.* (internal quotation marks and brackets omitted). "A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d. Cir. 2025) (internal quotation marks omitted). The Court assesses each of these four elements in turn, beginning with Plaintiff's

5

likelihood of success on the merits of her free-speech claim.[4]

## I. Likelihood of Success

Given the Supreme Court's decision in *303 Creative*, it is now beyond debate that a state's public accommodations law may not be "applied to expressive activity to compel speech." *303 Creative LLC*, 600 U.S. at 592 (internal quotation marks omitted). Furthermore, the Second Circuit has plainly stated that "[t]here is little daylight between the facts alleged by [Plaintiff]" in this case and those that entitled the website designer to relief in *303 Creative*. *Emilee Carpenter*, 107 F.4th at 107. Consequently, for purposes of assessing the likelihood of success on Plaintiff's claim, the Court's narrow task is to determine whether Plaintiff has marshalled persuasive evidence to substantiate the allegations in her complaint.

Specifically, the Court must apply to the two-part inquiry that the Second Circuit distilled from *303 Creative*. *See Emilee Carpenter*, 107 F.4th at 106. The first question is whether "the law at issue [] compel[s] a business owner to engage in activity she would not otherwise engage in." *Id.* The second question is whether that activity constitutes "the owner's expressive activity." *Id.* If so, the law violates the First Amendment "because it impermissibly compel[s] speech." *Id.* at 100.

---

[4] As the Court previously explained, Plaintiff challenges four state laws. *See Emilee Carpenter*, 575 F. Supp. 3d at 363-64. Some prohibit discriminatory *actions*, while others prohibit discriminatory *advertisements* or *communications*. *See id.* The Second Circuit held that all of the laws "rise[] and fall[]" together, *Emilee Carpenter*, 107 F.4th at 101 n.1, and so the Court need only expressly address the "Accommodations Clause," which prohibits "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a). Plaintiff's business is a "place of public accommodation." *Emilee Carpenter*, 575 F. Supp. 3d at 377 n.11.

In this case, Plaintiff has provided sufficient evidence that the answer to both questions is "yes."

### a. Does New York's Public Accommodation Law Compel Plaintiff to Engage in an Activity She Would Not Otherwise Engage in?

Plaintiff contends that New York's public accommodation law compels her to provide wedding-photography services that she would not have otherwise provided to same-sex couples. *See* ECF No. 99-1 at 9, 17-19; *see also* ECF No. 99-4 at 39-45; ECF No. 100 at 174, 247-48. Plaintiff has demonstrated the sincerity of her opposition to same-sex marriage. *See, e.g.*, ECF No. 99-4 at 8. Therefore, for the reasons discussed in its prior decision, the Court agrees that New York's public accommodation laws compel Plaintiff to provide wedding photography services that she would not have otherwise provided to same-sex couples. *See Emilee Carpenter*, 575 F. Supp. 3d at 371-73; *see also 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1177 (10th Cir. 2021) ("By compelling Appellants to serve customers they would otherwise refuse, Appellants are forced to create websites . . . that they would otherwise refuse."); *In re Gifford v. McCarthy*, 23 N.Y.S.3d 422, 429 (3d Dep't 2016) (stating that New York law "does not permit businesses to offer a 'limited menu' of goods or services to customers on the basis of a status that fits within one of the protected categories").

This is, in fact, the fundamental, praiseworthy purpose of public accommodation laws like New York's. These laws ensure that "individuals in historically disadvantaged or disfavored classes desiring to make use of public accommodations" receive "what the old common law promised to any member of the public wanting a meal at the inn—namely, that accepting the usual terms of service, they will not be turned away merely on the proprietor's exercise of personal

7

preference." *Emilee Carpenter*, 575 F. Supp. 3d at 374 (internal quotation marks and brackets omitted). The Supreme Court has time and again found this interest compelling, whether in the context of "race discrimination, *see Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 252-53 (1964), [] sex discrimination, *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987), [or] sexual orientation discrimination, *Masterpiece*, 138 S. Ct. at 1727-28." *Id.* at 374-75. In the face of discriminatory animus, these laws "declare[]: All members of the public are entitled to inhabit public spaces on equal terms." *303 Creative*, 600 U.S. at 637 (Sotomayor, J., dissenting). Robust adherence to, and enforcement of, that principle prevents a balkanized market, in which historically disfavored classes—not just the LGBT community—are demoted to a lower social caste, with all the attendant economic harms and "[d]ignitary wounds." *Obergefell v. Hodges*, 576 U.S. 644, 678 (2015); *see also 303 Creative*, 600 U.S. at 638 (Sotomayor, J., dissenting) (observing that free-speech exemptions to public accommodation laws, by their own logic, "cannot be limited to discrimination on the basis of sexual orientation or gender identity," and noting that "[a] website designer could equally refuse to create a wedding website for an interracial couple" due to racist religious beliefs).

Accordingly, the Court agrees that "the law at issue [] compel[s] [Plaintiff] to engage in activity she would not otherwise engage in." *Emilee Carpenter*, 107 F.4th at 106.

### b. Is the Compelled Activity Plaintiff's Expressive Activity?

The second question this Court must ask is whether the activity that Plaintiff is compelled to engage in is "[her] expressive activity." *Emilee Carpenter*, 107 F.4th at 106. The compelled "sale of an ordinary commercial product" raises no free-speech concerns, whereas the compelled sale of "customized and tailored speech" comes within the scope of *303 Creative*'s proscription.

8

*Id.* at 103; *id.* at 104 (distinguishing between "off-the-shelf commercial products" and those that are "original, tailored, and expressive works"). This inquiry is not purely subjective: "conduct cannot be labeled expressive activity simply whenever the person engaging in the conduct intends thereby to express an idea." *Emilee Carpenter*, 107 F.4th at 103 (internal quotation marks omitted). Rather, the good or service must constitute a "medium for the communication of ideas." *Id.* Thus, in *303 Creative*, the designer's websites were considered expressive activity because the designer would use "text, graphics, and in some cases videos to celebrate and promote the couple's wedding and unique love story." *303 Creative*, 600 U.S. at 594.

Photography is "presumptively expressive." *Emilee Carpenter*, 107 F.4th at 103-04 (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 93 (2d Cir. 2006)). Nevertheless, in connection with Plaintiff's appeal, the Second Circuit hypothesized that some photography services may be so "devoid of expressive content as to fall outside the category of expressive conduct." *Id.* If Plaintiff's photography services were a mere passive memorialization of events, they would not qualify as expressive activity. *See id.*; *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 751 (8th Cir. 2019) (wedding videographers' videos were expressive conduct, insofar as they were "not just be simple recordings, the product of planting a video camera at the end of the aisle and pressing record"). But the Second Circuit directed that, so long as Plaintiff can substantiate her allegations regarding the expressive nature of her services, this Court must find the second requirement met. *See Emilee Carpenter*, 107 F.4th at 101 (concluding that Plaintiff alleged sufficient facts that her "photography services plausibly qualify as expressive activity," where she alleged that "she exercises artistic license to create customized and original images"). Of course, the expressive activity must be "[Plaintiff's] own." *Id.* at 104. In this respect, Plaintiff need only show that "she

9

created the expressive content herself or, by compiling or curating third-party content in some forum, she [] also engaged in her own expressive activity." *Id.*

Having reviewed the developed factual record, the Court concludes that Plaintiff's wedding photography constitutes expressive activity. Based on her declaration, customer contracts, and other business materials, that is clearly Plaintiff's *subjective* intention with her photography. *See* ECF No. 99-4 at 8; ECF No. 99-8 at 97, 108, 114, 138-39. And that intention is borne out by the manner in which Plaintiff actually provides her photographic services. From start to finish, Plaintiff provides a customized, tailored photography service that is guided by her own artistic and moral judgment. On the day of the wedding, Plaintiff makes a variety of creative choices relating to, among other things, the exposure, composition, focus, and lighting of her photographs, in order to capture the events in a "warm and moody" style.[5] ECF No. 99-4 at 23-24. After the wedding, she exercises her creative judgment in editing and culling the photographs she has taken, winnowing down the hundreds of photographs she took at the wedding to a final set that "best reflect[s] the engagement or wedding consistent with [her] artistic and moral standards." *Id.* at 26-29. That final set, which is produced and created according to Plaintiff's "own aesthetic vision" and "artistic and religious beliefs," is sent to the couple. *Id.* at 16, 27-28. With her photography,

---

[5] Things as seemingly rudimentary as Plaintiff's placement throughout the wedding day require creative decision-making:

> In the process of composing a photograph, even choices that may seem simple - like positioning the camera - involve creativity. Because photographs do not capture the multiplicity of viewpoints that the human eyes do, photographers must use their experience and creativity to select the best vantage point. Photographers consider what is in the foreground and background, how those objects appear to relate with one another, what appears on the edges of the frame, and the position of the light.

Brief Amicus Curiae of the Society for Photographic Education, *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017) (Nos. 16-1650, 16-1651), 2016 WL 6600175, at *5-6 (internal citation omitted).

Plaintiff seeks to evoke specific emotions and feelings from viewers. *See id.* at 15-18, 23-24, 29; ECF No. 99-8 at 94-104, 157-228 (copies of photographs); ECF No. 100 at 38-125 (same).

Except in certain respects addressed below, Defendants do not dispute that this is, in fact, the manner in which Plaintiff provides wedding-photography services to clients. Given this factual record, the Court finds that Plaintiff's wedding-photography services constitute "mediums of expression," *ETW Corp. v. Jireh Pub'g, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003), and are expressive activity protected by the First Amendment. *See, e.g.*, *Buehrle v. City of Key West*, 813 F.3d 973, 976 (11th Cir. 2015) (noting that protection under the First Amendment "extends to various forms of artistic expression," including "films, paintings, drawings, and engravings" (internal quotation marks and citation omitted)); *Bery v. City of New York*, 97 F.3d 689, 695 (2d Cir. 1996) ("Visual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection.").

Furthermore, the wedding photographs Plaintiff creates are *her* expressive activity, insofar as she both "create[s] [] expressive content herself" and "curat[es] third-party content" through her photography. *Emilee Carpenter*, 107 F.4th at 104. While Plaintiff is not responsible for the wedding events themselves, she is responsible for capturing those events in a manner that conveys her particular artistic and aesthetic sensibilities. As a result, for First Amendment purposes, Plaintiff's photography constitutes *her* expressive activity. *See Lucero*, 936 F.3d at 751 (wedding videos were videographers' speech, even if customers "ha[d] some say over the finished product," since videographers intended to exercise substantial "editorial control and judgment" over the video, including "making decisions about the footage and dialogue to include, the order in which to present content, and whether to set parts of the film to music"); *303 Creative*, 6 F.4th at 1177

(stating that wedding-website designers' "own speech [was] implicated even where their services [were] requested" or "initially generated" by others).

In opposing this conclusion, Defendants make several arguments about Plaintiff's photography, none of which undermines Plaintiff's entitlement to the narrow relief she requests.

First, Defendants contend that Plaintiff's wedding photography does not convey "any specific message comprehensible by outside observers," let alone a message concerning Plaintiff's religious views about marriage. ECF No. 101 at 14. That is not the applicable standard for First Amendment protection, however. As the Second Circuit has noted, visual art lacking in "communicative concepts or ideas" is not stripped of First Amendment protection; indeed, such a "myopic vision . . . fundamentally misperceives the essence of visual communication and artistic expression." *Bery*, 97 F.3d at 695; *see also West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632 (1943) ("Symbolism is a primitive but effective way of communicating ideas. The use of an emblem or flag to symbolize some system, idea, institution, or personality, is a short cut from mind to mind."). Many forms of art and expression lack a "particularized message," but the Supreme Court has made clear they do not shed their constitutional protection on that account. *See Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995) ("[A] narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a particularized message, would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." (internal quotation marks and citation omitted)). The First Amendment protects "purely artistic as well as political expression"—that is, "art for art's sake." *Piarowski v. Ill. Comm. Coll. Dist. 515*, 759 F.2d 625, 628 (7th Cir. 1985). That fact that the messages underlying Plaintiff's

photographs may be "mutable," in Defendants' view, does not detract from their protected character; as noted, the same could be said of a "painting of Jackson Pollock." *Hurley*, 515 U.S. at 569; *see also White v. City of Sparks*, 500 F.3d 953, 956 (9th Cir. 2007) ("In painting, an artist conveys his sense of form, topic, and perspective. A painting may express a clear social position, as with Picasso's condemnation of the horrors of war in *Guernica*, or may express the artist's vision of movement and color, as with the unquestionably shielded painting of Jackson Pollock." (internal quotation marks omitted)).

Defendants cite *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023), for the contrary proposition that a "particularized message" is required for First Amendment protection. *See* ECF No. 101 at 14. *Slattery* described the test for determining whether *conduct* is sufficiently communicative as to "bring the First Amendment into play." *Slattery*, 61 F.4th at 291. But as the Second Circuit stated on appeal in this matter, *Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006), provides the more relevant standard, under which photography is "presumptively expressive." *Emilee Carpenter*, 107 F.4th at 104; *see also Mastrovincenzo*, 435 F.3d at 93-95 (stating that a product is entitled to First Amendment protection based on whether it has a "dominant expressive purpose," and observing that "certain items—painting, *photographs*, prints and sculptures— automatically trigger First Amendment review" (emphasis added and internal quotation marks omitted)); *cf. Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 285 (2019). Based on the evidence showing the manner in which Plaintiff produces her photographs, that presumption has not been overcome.

Second, Defendants assert that Plaintiff's photography is "purely documentary." ECF No. 101 at 17; *see also id.* at 18 ("[Plaintiff] simply documents what transpires during the event."). By

13

this, Defendants do not appear to mean—and in any case have not demonstrated—that Plaintiff solely "plant[s]" her camera at events and captures an unvarnished historical record of the proceedings. *Lucero*, 936 F.3d at 751. They present no evidence to support such a claim. Rather, Defendants seem to mean that Plaintiff takes actual events, over which *others* have creative control, as the subject of her photography. *See* ECF No. 101 at 18; *see also id.* at 20 (noting that Plaintiff's clients "choose the wedding's location, the guestlist, [and] the bridal dress").

Defendants' point may be true, but it is also immaterial. "Artists might base their work on real life, but they take creative liberties." *Bey-Cousin v. Powell*, 570 F. Supp. 3d 251, 255 (E.D. Pa. 2021); *see also* note 5, *supra*. That is the case with portraiture, still-life painting, photography, and many other expressive endeavors. First Amendment protection extends not only to those "engaged in [their] own expressive activity," but also to those who "organiz[e] or compil[e] [the] expressive content [of others]" to propound their own expression. *Emilee Carpenter*, 107 F.4th at 105. As the Eleventh Circuit explained in a case concerning tattooing, the First Amendment is not a mantle "worn by one party to the exclusion of another and passed between them depending on the artistic technique employed, the canvas used, and each party's degree of creative or expressive input." *Buehrle*, 813 F.3d at 977. "Protected artistic expression frequently encompasses a sequence of acts by different parties, often in relation to the same piece of work." *Id.*

So it is here. Plaintiff makes a variety of technical and creative choices in the course of photographing weddings. These choices range from on-scene choices like "timing [her] movement and placement" and deciding on exposure, flash, focus, and composition, to editing choices like tinting, saturation, color adjustments, and cropping. ECF No. 99-4 at 23-24, 29. The creative decisions that the couple undoubtedly make for the wedding—location, dress, lighting, etc.—do

14

not detract from the expressive efforts Plaintiff *separately* makes in capturing and producing photographs of the wedding. *See Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010) (fact that customer has "ultimate control over which design she wants tattooed on her skin" did not make "the tattooing process any less expressive activity, because there is no dispute that the tattooist applies his creative talents *as well*" (emphasis added)); *Brush & Nib*, 247 Ariz. at 287 (custom wedding invitations constituted pure speech because, even though they conveyed "logistical" information about the wedding, they also contained "original artwork and celebratory words and phrases that ha[d] an emotive impact on the overall message of the invitations"); *see also Hurley*, 515 U.S. at 570 ("Cable operators . . . are engaged in protected speech activities even when they only select programming originally produced by others.  For that matter, the presentation of an edited compilation of speech generated by other persons is a staple of most newspapers' opinion pages, which, of course, fall squarely within the core of First Amendment security." (internal citation omitted)).[6]

For purposes of the First Amendment, Plaintiff's photography is no less hers because the clients also make creative choices about their wedding.[7] *See Hurley*, 515 U.S. at 569-70 ("[The]

---

[6] One wedding for which Plaintiff was hired illustrates this principle well.  In September 2020, Plaintiff photographed a wedding ceremony in accordance with her usual artistic and aesthetic judgments.  *See* ECF No. 102-13 at 2-3.  In stark contrast to the vision that Plaintiff applied to her photography of the event, the event itself was designed to be "informal, silly, and joyous," "not religious," and was presided over by a gay Jewish woman.  *Id.* at 2.  Even though Plaintiff's photographs were "candid" and "just document[ed] what was naturally happening," *id.* at 3, her photographs still constitute *her* expression given the overall creative process that Plaintiff employed to create a finished set of photographs for her clients.

[7] For the same reasons, the evidence showing that Plaintiff sometimes employs additional photographers to assist her, and relies on AI editing tools, does not alter the Court's analysis.  "An entity exercising editorial discretion in the selection and presentation of content is engaged in speech activity"—and that "is as true when the content comes from third parties as when it does not."  *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024) (internal quotation marks and brackets omitted).  There is no dispute that Plaintiff maintains ultimate editorial control over the final set of

15

First Amendment [does not] require a speaker to generate, as an original matter, each item featured in the communication."). Indeed, the reason why potential clients select Plaintiff as their wedding photographer is precisely because of her particular style and aesthetic. *See* ECF No. 102-7 at 3; ECF No. 102-13 at 3.

Third, Defendants suggest that Plaintiff's photographs are unprotected because they are not disseminated publicly. *See* ECF No. 101 at 19. While publicly disseminated photography may better serve as a "conduit of public discourse," *id.*, there is no requirement of public dissemination for First Amendment protection of artistic expression like Plaintiff's. *See, e.g., United States v. Stevens*, 559 U.S. 460, 479 (2010) ("*Most* of what we say to one another lacks religious, political, scientific, educational, journalistic, historical, or artistic value (let alone serious value), but it is still sheltered from government regulation." (internal quotation marks omitted)); *McGraw v. City of Oklahoma City*, 973 F.3d 1057, 1066-67 (10th Cir. 2020) (collecting cases); *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282-83 (3d Cir. 2004) ("[A]ll speech is protected by the First Amendment. That protection includes private expression not related to matters of public concern." (internal citation omitted)). In short, Plaintiff has demonstrated that the compelled activity is an expressive activity, and that such expressive activity is "her own." *Emilee Carpenter*, 107 F.4th at 104.

    **c. Summary**

Plaintiff has presented persuasive evidence to substantiate the two elements of her free-

---

photographs that she provides to clients. *See id.* ("Deciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own. And that activity results in a distinctive expressive product."); *see also* ECF No. 99-4 at 24-26, 34-36.

speech claim. Therefore, as directed by the Second Circuit, the Court concludes that Plaintiff has established a likelihood of success on the merits of her free-speech claim.

## II. Remaining Factors

Because the Court has concluded that Plaintiff is likely to succeed on the merits of her free-speech claim, it has "little difficulty concluding that the remaining factors favor a preliminary injunction." *A.H. v. French*, 985 F.3d 165, 184 (2d Cir. 2021). The loss of First Amendment freedoms "unquestionably constitutes irreparable injury." *New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145, 181 (2d Cir. 2020). And since "securing First Amendment rights is in the public interest," Plaintiff has shown that the balance of the equities and the public interest favor preliminary injunctive relief. *Hartford Courant Co. v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021).

Accordingly, a narrow preliminary injunction—limited to ensuring the noninfringement of Plaintiff's free-speech rights—will issue.

## CONCLUSION

For the foregoing reasons, Emilee Carpenter, LLC and Emilee Carpenter's renewed motion for a preliminary injunction (ECF No. 99) is GRANTED. Defendants, and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, are hereby ENJOINED from enforcing the following:

- New York's Accommodations (N.Y. Exec. Law § 296.2(a)) and Discrimination (N.Y. Civ. Rts. Law § 40-c(2)) Clauses to force Plaintiffs to offer to same-sex couples the same engagement- and wedding-photography services they provide to opposite-sex couples;

- New York's Accommodations (N.Y. Exec. Law § 296.2(a)) and Discrimination (N.Y. Civ. Rts. Law § 40-c(2)) Clauses to prevent Plaintiffs from adopting their desired Beliefs and Practices policy (Verified Complaint Exhibit 1);

- New York's Accommodations (N.Y. Exec. Law § 296.2(a)), Discrimination (N.Y. Civ. Rts. Law § 40-c(2)), and Publication (N.Y. Exec. Law § 296.2(a)) Clauses to prevent Plaintiffs from asking prospective clients questions sufficient to determine whether they seek photography services celebrating a same-sex wedding or engagement or from asking materially similar questions; and

- New York's Accommodations (N.Y. Exec. Law § 296.2(a)), Discrimination (N.Y. Civ. Rts. Law § 40-c(2)), and Publication (N.Y. Exec. Law § 296.2(a)) Clauses to prevent Plaintiffs from posting their desired statement (Verified Complaint Exhibit 2) on their website or from making materially similar statements on their website, social media sites, or directly to prospective clients.

Except in these limited respects, Plaintiffs otherwise remain subject to New York's Public Accommodation Laws, including the prohibition on refusing service based on a customer's sexual orientation. Likewise, except in these limited respects, Defendants remain empowered to enforce New York's Public Accommodation Laws against Plaintiffs to the full extent permitted by law. The Court waives the requirement of bond under Rule 65(c).

IT IS SO ORDERED.

Dated: May 22, 2025
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York